IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

MARIA MAHMOOD                  :
                               :
              Plaintiff,       :
                               :    CIVIL ACTION
        v.                     :
                               :
NATIONAL BOARD                 :    NO. 2:12-CV-01544-PD
OF MEDICAL EXAMINERS           :
                               :
              Defendants.      :

**ORDER**

AND NOW, this _____ day of _____, 2012, upon consideration of the Motion of Defendant National Board of Medical Examiners to Dismiss the Complaint Pursuant to Fed. R. Civ. P. 12(b)(6), or in the Alternative for Summary Judgment Under Fed. R. Civ. P. 56, and any response thereto, it is hereby ORDERED that the Motion is GRANTED.  The Complaint is DISMISSED, with prejudice.


BY THE COURT:


_____
      Paul S. Diamond, J.

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

MARIA MAHMOOD                        :
                                     :
                Plaintiff,           :
                                     :   CIVIL ACTION
        v.                           :
                                     :
NATIONAL BOARD                       :   NO. 2:12-CV-01544-PD
OF MEDICAL EXAMINERS                 :
                                     :
                Defendants.          :

**MOTION OF DEFENDANT NATIONAL BOARD OF MEDICAL
EXAMINERS TO DISMISS THE COMPLAINT PURSUANT TO
FED. R. CIV. P. 12(b)(6), OR IN THE ALTERNATIVE
FOR SUMMARY JUDGMENT UNDER FED. R. CIV. P. 56**

For the reasons set forth in the accompanying memorandum of law, defendant National Board of Medical Examiners moves under Fed. R. Civ. P. 12(b)(6) to dismiss the complaint, or in the alternative moves for summary judgment under Fed. R. Civ. P. 56.

Respectfully submitted,


/s/ Michael Sacks
Neil J. Hamburg
Michael E. Sacks
ID. Nos. 32175 and 39774
HAMBURG & GOLDEN, P.C.
1601 Market Street, Suite 3310
Philadelphia, PA  19103-1443
(215) 255-8590

Attorneys for Defendant
National Board of Medical
Examiners

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARIA MAHMOOD | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | |
| NATIONAL BOARD | : | NO. 2:12-CV-01544-PD |
| OF MEDICAL EXAMINERS | : | |
| | : | |
| Defendants. | : | |

---

**MEMORANDUM OF LAW OF DEFENDANT NATIONAL BOARD
OF MEDICAL EXAMINERS IN SUPPORT OF ITS MOTION TO DISMISS
THE COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6), OR IN THE
ALTERNATIVE FOR SUMMARY JUDGMENT UNDER FED. R. CIV. P. 56**

---

Neil J. Hamburg
Michael E. Sacks
ID. Nos. 32175 and 39774

HAMBURG & GOLDEN, P.C.
1601 Market Street, Suite 3310
Philadelphia, PA  19103-1443
(215) 255-8590

Attorneys for Defendant
National Board of Medical
Examiners

**TABLE OF CONTENTS**

                                                        PAGE

INTRODUCTION                                              1

I.    STATEMENT OF FACTS                                  2

      A.   Plaintiff Mahmood Intentionally Set a Fire     3
           During a USMLE Test on August 8, 2011

      B.   The   USMLE   Committee   for   Individualized 5
           Review Issued a Letter on February 23, 2012,
           Reporting   its   Decision   that   Mahmood   Had
           Engaged in Irregular Behavior

      C.   Facts Relating to Mahmood's Disability         6

      D.   Facts Establishing that the NBME is Not a      7
           State Actor

II.   ARGUMENT                                            8

      A.   Standard for Motion to Dismiss Under Rule      8
           12(b)(6)

      B.   Mahmood Has Not Stated a Claim Under 42        10
           U.S.C. §1983 Against the NBME Upon Which
           Relief May be Granted

           1.   Elements of a 1983 Action                10

           2.   The Courts of this Circuit have already   11
                determined that the NBME is Not a State
                Actor

      C.   Mahmood's Complaint Fails to State a Cause     16
           of Action for Cruel and Unusual Punishment

      D.   Mahmood's Complaint Does Not State a Cause     19
           of Action for Violation of Due Process

           1.   Procedural Due Process                   20

           2.   Substantive Due Process                  22

E.   Mahmood's Complaint Does Not State a Cause      25
     of Action for Commingling of Investigative
     and Adjudicatory Functions

F.   Mahmood Has Not Stated a Claim under the ADA    28

CONCLUSION                                           30

**INTRODUCTION**

Maria Mahmood (Mahmood) is a medical student who admitted to intentionally setting a fire at the Prometric Test Center where she was taking the United States Medical Licensing Examination (USMLE).  On March 27, 2012, she filed a complaint against the National Board of Medical Examiners (NBME), which together with the Federation of State Medical Boards develops and administers the USMLE.  Mahmood's complaint relates to a determination by the USMLE Committee for Individualized Review (the USMLE—CIR, or the Committee) that Mahmood had engaged in "irregular behavior" by setting a fire at the examination, and its recommendation to the USMLE Composite Committee that she be barred for a period of three years from taking any USMLE examinations.

Mahmood's complaint for equitable relief and damages asserts four causes of action:

1.   That the NBME violated her "constitutional rights ... to be free from cruel and unusual punishment";

2.   That the NBME violated her civil rights under 42 USC 1983 and violated her "right to procedural and substantive due process";

3.   That the NBME violated her civil rights by "commingl[ing] the investigative and adjudicative functions" involving the charges against her; and

4.    that the NBME violated the Americans with Disabilities Act (ADA) by failing to reasonably accommodate her disability. Exhibit 1, Complaint.

The NBME moves to dismiss the complaint in its entirety. The first three causes of action, alleging various types of deprivations of civil rights, should be dismissed because the NBME is neither the federal government, nor a state, nor a state actor, and therefore it is not subject to the standards of conduct that apply to such entities for allegedly violating an individual's civil rights.  Rather, as explained below, this Court and the Court of Appeals for the Third Circuit have found that the NBME is an independent, not-for-profit organization that exists to provide high quality medical examinations for the health professions, and it is not a state actor.

The NBME moves to dismiss the fourth cause of action because Mahmood has not stated a valid claim for relief under the Americans with Disabilities Act.

I.   STATEMENT OF FACTS

The following facts are taken from the complaint, Exhibit 1; the USMLE—CIR letter to Mahmood dated February 23, 2012, which Mahmood identified and attached as Exhibit A to the complaint, Exhibit 1-A; the August 8, 2011, police report, Exhibit 2; and court documents from the Circuit Court for Baltimore City, Maryland, Exhibit 3.   Exhibits 2 and 3 are

public records in the state of Maryland, and therefore may be considered by the Court on a motion to dismiss the complaint. Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196-97 (3d Cir. 1993).

The NBME also refers to facts stated in the report of Prometric, the testing center, regarding the arson incident, Exhibit 4; a letter from the USMLE to Mahmood dated August 24, 2011, Exhibit 5; follow up correspondence between the USMLE and Mahmood related to the USMLE-CIR review, Exhibit 6; documents relating to Mahmood's request for accommodations for her disability, Exhibit 7; USMLE Policies and Procedures Regarding Irregular Behavior, Exhibit 8; a print-out from the Commonwealth of Pennsylvania, Department of State, regarding the NBME's corporate status, Exhibit 9; and a print-out that includes the NBME mission statement, from the NBME website, Exhibit 10. Exhibits 4 - 10 are not part of the complaint or in the public record.   Therefore, if the Court deems it appropriate it may treat this motion as a motion for summary judgment under Fed. R. Civ. P. 56.  See, Fed. R. Civ. P. 12(d).

### A.   Plaintiff Mahmood Intentionally Set a Fire During a USMLE Test on August 8, 2011.

Maria Mahmood, a resident of Maryland, is a medical student at the University of Illinois at Chicago College of Medicine. Exhibit 1, ¶ 1.   Like most medical students in the United States, she must pass Step 1 and Step 2 of the USMLE

examinations to graduate and receive her M.D. degree.  Id., ¶ 12-13.  Mahmood registered to take the USMLE Step 2 CK (Clinical Knowledge) examination on August 8, 2011, at a testing center in Maryland.  Exhibit 4, Report of Prometric, p. 1.

Mahmood apparently experienced anxiety and panic leading up to the examination, and decided to create a diversion that would delay the examination.  Exhibit 1-A.  Mahmood set a fire in the ladies' bathroom with toilet paper soaked in flammable liquid and a string wick that she had brought with her to the testing center.  Exhibit 1, ¶ 17; Exhibit 2, Police Report; Exhibit 4, Prometric Report.  Employees from the testing center witnessed Mahmood's actions; one of them put the fire out and notified the authorities.  Exhibit 2; Exhibit 4.  The police arrived and arrested Mahmood.  Exhibit 1, ¶ 20; Exhibit 2.

The police charged Mahmood with Arson in the First Degree, Arson in the Second Degree, Reckless Endangerment and Malicious Destruction of Property.  Exhibit 3.  Mahmood pled guilty to Malicious Destruction of Property and received a sentence of probation.  The other charges were dismissed.  Exhibit 3.  Mahmood plans to petition to have her criminal record expunged after she completes her community service.  Exhibit 1, ¶ 21-22.

**B.    The USMLE Committee for Individualized Review Issued a Letter on February 23, 2012, Reporting its Decision that Mahmood Had Engaged in Irregular Behavior.**

After Mahmood's arrest on August 8, 2011, the USMLE's Committee for Individualized Review followed its procedures and considered whether Mahmood had engaged in irregular behavior by intentionally setting a fire at the testing center.  The Committee informed Mahmood of the procedures it would follow, and invited her to submit any materials she believed were relevant and to appear personally before the Committee if she chose to do so.  Exhibit 5.  At Mahmood's request, the Committee postponed its review so she could address the criminal charges before she submitted materials to the Committee.  Exhibit 6.

The Committee completed its review and informed Mahmood of its determination on February 23, 2012.  Exhibit 1-A.  It considered, among other things, the police report (Exhibit 2), the report from the testing center (Exhibit 4), information from the Court, and Mahmood's own letter of explanation with attached records.  Exhibit 1-A.

The Committee determined that Mahmood had, in fact, engaged in irregular behavior, which USMLE Policies and Procedures define to include disruptive or unprofessional behavior at a test center (Exhibit 8).  Exhibit 1-A.  As a consequence, pursuant to the Policies and Procedures, the USMLE informed Mahmood that her USMLE record will include an annotation showing

the finding of irregular behavior, as will her USMLE transcripts.  Exhibit 1-A.  Such information will also be reported to the Board Action Data Bank of the Federation of State Medical Boards.  Id.

The USMLE further informed Mahmood that because the Committee determined that her behavior was "egregious and/or deemed to threaten the integrity of the examination system," it would recommend to the USMLE Composite Committee that she be barred for three years from registering for future examinations. Id.  The Committee informed Mahmood that the USMLE Composite Committee would consider that recommendation at its June 2012 meeting, and further informed her that she had the right to file an appeal to the Composite Committee.  Exhibit 1-A.

C.   **Facts Relating to Mahmood's Disability.**

Mahmood is legally blind, and needed testing accommodations for her disability.  Exhibit 1, ¶ 26, 44-45.  According to Mahmood, she had requested special accommodations, but the facility did not have the proper accommodations on the day of the exam.  Exhibit 1, ¶ 27, 46.  However, the NBME had granted accommodations to Mahmood.

Mahmood had corresponded with the NBME, which administers disability services for the USMLE, about her disability.  The

NBME had agreed to all of the accommodations Mahmood requested for the USMLE Step 2 CK in August 2011.  Exhibit 7.[1]

Mahmood arrived shortly before the 9:00 a.m. start time for the August 8, 2011, examination.  She took a break and went to the ladies' room shortly after 9:00 a.m.  She committed arson in the bathroom at approximately 9:10 — 9:15 a.m.  Exhibit 4.

The NBME agreed to provide Mahmood with an extra large screen monitor to accommodate her visual disability.  The monitor was shipped by Federal Express to the center where Mahmood chose to take her examination.  The monitor was being moved to the station on which Mahmood was scheduled to test when its stand broke.  Mahmood requested a new monitor, and while the testing center personnel were trying to resolve the technical issue a witness identified Mahmood as the person who set the fire, leading to her questioning and arrest.  Exhibit 4, p. 2-3.

  **D.  Facts Establishing that the NBME is Not a State Actor.**

The NBME is an independent, not-for-profit organization. Exhibit 9.  The NBME provides high-quality examinations for the health professions.  Its mission is to protect the health of the public through state of the art assessment of health professionals, along with a major commitment to research and development in evaluation and measurement.  Exhibit 10.  The

---

[1]     Mahmood had been receiving accommodations from the NBME for USMLE testing since 2007.  Only those materials related to Mahmood's request for accommodation for the USMLE Step 2 CK in August 2011, the examination during which she set the fire, are included at Exhibit 7.

NBME was founded in 1915 because of the need for a voluntary, nationwide examination that medical licensing authorities could accept as the standard by which to judge candidates for medical licensure.   Since that time, it has continued without interruption to provide high quality examinations for this purpose and has become a model and a resource of international stature in testing methodologies and evaluation in medicine.

The NBME, together with the Federation of State Medical Boards of the United States, sponsor and provide for the administration of USMLE, a series of examinations taken by medical students and graduates of medical schools that assist state medical boards in making licensing decisions.

**II.  ARGUMENT**

**A.   Standard for Motion to Dismiss Under Rule 12(b)(6).**

When considering a motion to dismiss the complaint under Fed. R. Civ. P. 12(b)(6), the court must assume that all of the factual allegations of the complaint are true and should draw all reasonable inferences in favor of the plaintiff. Nevertheless, it is a plaintiff's obligation under Rule 8(a)(2) to set forth "a short and plain statement of the claim" to ensure that a defendant has "fair notice" of what the claim is and the grounds upon which it rests.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 554-55, 127 S.Ct. 1955, 1964 (2007).

The grounds upon which a claim rests must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Twombly</u>, 550 U.S. at 555, 127 S.Ct. at 1964.   Factual allegations in a complaint must be sufficient "to raise a right to relief above the speculative level."   <u>Id</u>.

A court is not bound by a plaintiff's legal conclusions or unwarranted factual inferences.   <u>Morse v. Lower Merion School Dist.</u>, 132 F. 3d 902, 906 (3d Cir. 1997).   "A court may also consider any document referenced in or integral to the complaint on which plaintiff's claim is based."   <u>In re Burlington Coat Factory Securities Lit.</u>, 114 F.3d 1410, 1426 (3d Cir. 1997). This includes "matters of public record, items appearing in the record of the case and exhibits attached to the complaint..." <u>Catagnus v. Aramark</u>, 235 F.Supp.2d 413, 416 (E.D. Pa. 2002).

In civil rights actions, the court must offer the plaintiff leave to amend a complaint where it lacks clarity and detail, even where a plaintiff does not seek leave to amend, if a complaint is vulnerable to a 12(b)(6) dismissal, **unless an amendment would be inequitable, futile or untimely.**   <u>Alston v. Parker</u>, 363 F.3d 229, 236 (3d Cir. 2004), citing <u>Grayson v. Mayview State Hosp.</u>, 293 F.3d 103, 108 (3d Cir. 2002).

**B.    Mahmood Has Not Stated a Claim Under 42 U.S.C. §1983 Against the NBME Upon Which Relief May be Granted.**

**1.    Elements of a 1983 Action**

42 U.S.C. § 1983, commonly referred to as "Section 1983" provides:

> Every person who under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, Suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983.

Section 1983 provides an action for violation of constitutional rights "under color of state law." Lugar v. Edmondson Oil Co., 457 U.S. 922, 924, 102 S.Ct. 2744, 2747 (1982). A Section 1983 claim cannot exist without state action. Id. Section 1983's requirement that the defendant have acted under the color of state law requires power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." West v. Atkins, 487 U.S. 42, 49, 108 S.Ct. 2250, 2256 (1988). The tests for state action and acts under color of law are the same. Annunziato v. The Gan, Inc., 744 F.2d 244, 249 (2d Cir. 1984).

10

Section 1983 is not itself a source of substantive rights. It provides a method for the vindication of rights elsewhere conferred in the United States Constitution and laws.  <u>Chapman v. Houston Welfare Rights Org.</u>, 441 U.S. 600, 618, 99 S.Ct, 1905, 1916 (1979).  In this case, each of Mahmood's Section 1983 claims — that NBME subjected her to cruel and unusual punishment, violated the due process clause, and commingled the investigative and adjudicatory functions — fails because Mahmood cannot make a threshold showing of state action.

### 2. The Courts of this Circuit have already determined that the NBME is Not a State Actor.

Mahmood asserts that the NBME is "a medical licensing institution acting under color of state law," but provides no facts to support that proposition.  Exhibit 1, ¶ 14.  Simply put, Mahmood is wrong.  The NBME is not a medical licensing institution, and it does not act under color of state law. <u>Boggi v. Medical Review and Accrediting Council</u>, 2009 WL 2951022 (E.D.Pa. 2009), aff'd, 415 Fed. Appx. 411 (3d. Cir. 2011).

In <u>Boggi</u>, the district court addressed the exact question at issue here: whether the NBME is a state actor or acts under color of state law.  In a detailed opinion, Judge Schiller determined that the NBME is neither a state actor nor a private party acting under color of state law, and the Court of Appeals affirmed and adopted his reasoning.  <u>Boggi</u> is directly on point, and therefore merits a detailed discussion here.

Boggi involved a physician whose license to practice medicine in Maryland had been revoked by the state medical board after an investigation into his mental competency. Years later, Dr. Boggi pursued testing from the NBME, and sought retraining from the Medical Review and Accrediting Council (MRAC) to reestablish his competency to practice. He later sued the NBME and MRAC, alleging that they acted under color of state law in testing him and determining that they could not retrain him.

On motions to dismiss the complaint, Judge Schiller analyzed the NBME under each of the tests developed by the Supreme Court to determine whether a private party acts under color of law, and found that the NBME did not fit within any of them. Specifically, the court found as follows:

### 1.   *Close nexus test*

Under [the close nexus] test, the state must have exercised coercive power or have provided such significant encouragement that the private actor's decision can be deemed that of the state. *Blum v. Yaretsky,* 457 U.S. 991, 1004, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982). This test looks at the connection between the state and the specific action that allegedly infringed on the plaintiff's rights ... This test is met only if it can be said that the state is responsible for the specific conduct about which the plaintiff complains. *Id.* (citing *Blum,* 457 U.S. at 1004.)

... MRAC is a private organization that merely offers testing and retraining services to assist doctors in getting their medical licenses back. The [state Medical Board], on the other hand, was the state actor that suspended Dr. Boggi's license and placed conditions on his ability to have his license reinstated. But there is no connection between the [state Medical Board] and MRAC. Under such

12

circumstances, a "close nexus" cannot be said to exist between MRAC and the State of Maryland. **The same can be said of NBME, which facilitates testing for medical professionals. There is no indication that the State of Maryland, or any other state, holds sway over the policies or procedures of NBME nor is there any evidence that Maryland plays any role in devising questions or medical tests for those seeking to become doctors.**

### 2.    *Symbiotic relationship test*

If a "symbiotic relationship" exists between the private party and the state, the private party's conduct may be held attributable to the state. *See Reitz v. County of Bucks,* 125 F.3d 139, 147-48 (3d Cir. 1997) ("[I]f the facts support a finding that the private parties acted as a 'joint participant' in the challenged activity with the state, then they can be found to have acted under color of state law and to be liable under § 1983."). Courts have held that this test is not satisfied – and thus the actions of a private institution cannot be attributed to the state – even upon a showing of state regulation in a particular area, even if such regulation is "pervasive, extensive, and detailed," nor is it satisfied due to extensive financial assistance. *Klavan,* 60 F.Supp.2d at 442 (citations omitted).

Dr. Boggi explicitly references the "symbiotic relationship" between the state, NBME, and MRAC. (Compl. at 3.) He contends that MRAC would not exist but for the state's need to have an institute to retrain doctors.  (*Id.*) He also relies on the fact that MRAC affirmed the findings of Maryland.  (*Id.*) **The Court concludes that no basis exists for finding a symbiotic relationship between the State of Maryland and Defendants. Maryland is under no duty to use MRAC or NBME. There is no evidence of any financial relationship or any legislative powers that Maryland maintains over these entities. At most, NBME and MRAC are companies with which certain states deal in the realm of medical licensing. But that interaction does not render them state actors.**

### 3.    *Public Function test*

13

> This approach reaches "only those activities that have
> been traditionally the *exclusive* prerogative of the
> State." *Groman,* 47 F.3d at 640.   Because few
> functions have traditionally been the sole domain of
> the states, this test is rarely satisfied. ...
> **Neither NBME nor MRAC is performing an activity left
> solely to the state.   Testing and test score reporting
> are not tasks left solely to the state. ... More
> broadly, the Third Circuit Court of Appeals has
> concluded that "[t]he evaluation and accreditation of
> medical education in this country is neither a
> traditional nor an exclusive state function."
> *McKeesport,* 24 F.3d at 525.   Neither entity is
> empowered to license physicians, a task left to the
> State of Maryland. ...**

2009 WL 2951022, *6, 7 (emphasis added).

Thus, in a decision directly on point here, Judge Schiller determined that the NBME was not a state actor and did not act under color of law in performing its testing services.   The court of appeals adopted Judge Schiller's analysis, affirming that the NBME and MRAC were not state actors.   415 Fed. Appx. 411.   That determination by itself disposes of Mahmood's first three causes of action which all presume, incorrectly, that the NBME is a state actor.

The courts of this circuit are not alone in finding that the NBME is not a state actor.   In <u>Brown v. Federation of State Medical Boards of U.S., et al.</u>, 1985 WL 1659, *4-5 (N.D.Ill. 1985), aff'd, 830 F.2d 1429, 1437 (7th Cir. 1987), <u>abrogated on other grounds</u>, 880 F.2d 928 (7th Cir. 1989), cited by the district court in <u>Boggi</u>, the Court likewise rejected a Section 1983 claim against the NBME and the Federation of State Medical

Boards, finding that both entities were private service providers, not state actors:

> Brown's §1983 action (along with his other constitutional claims) fail for lack of subject matter jurisdiction because no state action or acts under color of state law occurred. In order to claim an infringement of constitutional rights under the Fourteenth Amendment or § 1983, a plaintiff must allege that his injury was caused by state actors or persons acting under color of state law. <u>Rendell-Baker v. Kohn</u>, 457 U.S. 830, 835 (1982). ...
>
> **Federation, Commission and National [the NBME] are not state agencies. They do not license physicians. The actual state actors here are the state licensing boards, which have complete control over whether or not to use the defendants' tests, and if so, how to use these tests. Thus, the defendants are supplying a service used by candidates and state boards. This supplying of a testing service does not make defendants state actors any more than the company which provides the state with office supplies acts under color of state law. The state boards are at most defendants' consumers; defendants do not participate in a state activity.**

<u>Brown</u>, 1985 WL 1659 at *4-5 (emphasis added).

See also, <u>McKeesport Hospital v. Accreditation Council for Graduate Medical Education</u>, 24 F.3d 519, 524-526 (3d Cir. 1994) (ACGME, a private accrediting body, was not a state actor because it did not act in concert with the state, there was no "close nexus" between it and the state, and accreditation of graduate medical programs was not exclusively a state responsibility); <u>Munsif v. Cassel</u>, 331 Fed. Appx. 954, 959 (3d Cir. 2009) (complaint properly dismissed where there were no allegations supporting the claim that the American Board of

Internal Medicine, which sponsored a medical subspecialty certification examination that plaintiff failed, acted under color of state law; Goussis v. Kimball, 813 F.Supp. 352 (E.D.Pa. 1993) (same).

Accordingly, the courts in this circuit and elsewhere have explored the nature of the testing services of the NBME and determined that the NBME is not a state actor and does not act under color of state law.  Therefore, Mahmood's first, second and third causes of action, which all presume state action by the NBME, should be dismissed.

### C.  Mahmood's Complaint Fails to State a Cause of Action for Cruel and Unusual Punishment.

Even if the NBME were deemed to have acted under color of state law, which it did not, Mahmood's claim that the recommendation by the USMLE—CIR that she be barred for three years from taking additional USMLE examinations constitutes cruel and unusual punishment would fail to state a claim upon which relief could be granted.

It is well settled that the Eighth Amendment to the United States Constitution, prohibiting cruel and unusual punishment, applies to criminal proceedings, not civil cases.  In Ingraham v. Wright, 430 U.S. 651, 97 S.Ct. 1401 (1977), involving a challenge to the use of corporal punishment in public schools, the Supreme Court stated:

(1) The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." Bail, fines, and punishment traditionally have been associated with the criminal process, and by subjecting the three to parallel limitations the text of the Amendment suggests an intention to limit the power of those entrusted with the criminal-law function of government. An examination of the history of the Amendment and the decisions of this Court construing the proscription against cruel and unusual punishment confirms that it was designed to protect those convicted of crimes. We adhere to this longstanding limitation and hold that the Eighth Amendment does not apply to the paddling of children as a means of maintaining discipline in public schools.

430 U.S. 651, 664, 97 S.Ct. 1401, 1408-1409. See also, Browning-Ferris Industries of Vermont, Inc. v. Kelco Disposal, Inc., 492 U.S. 257, 262, 109 S.Ct. 2909, 2913 (1989) (Eighth Amendment's excessive fines clause has no application to punitive damages assessed in a civil case because the Eighth Amendment limits the power of the government to impose punishment in criminal cases).

Therefore, leaving aside the fact that the NBME is not a state actor capable of depriving another of rights protected under the United States constitution, Mahmood's claim that the suspension of her right to take additional USMLE examinations for a period of three years constitutes cruel and unusual punishment fails because such "punishment" was not imposed in any criminal proceeding.

17

The Supreme Court of Pennsylvania has taken a more expansive view, however, holding that the principle contained in the cruel and unusual punishment clause of the Pennsylvania Constitution[2] applies to all "proceedings."   In the civil context a complainant must show an abuse of discretion leading to cruel and unusual punishment.   Gombach v. Dept., Bureau of Com'ns, Elections & Legislation, 692 A.2d 1127, 1131 (Pa. Cmwlth. 1997).

That Pennsylvania recognizes the principle of cruel and unusual punishment in civil proceedings is no help to Mahmood, however, since all of the cases in which Pennsylvania courts have determined whether a "proceeding" resulted in cruel and unusual punishment have involved actions by Commonwealth agencies.   See, e.g, Gombach, supra (Department of State, Bureau of Commissions, Elections & Legislation); Carr v. Com. State Bd. of Pharmacy, 48 Pa. Cmwlth. 330, 409 A.2d 941 (1980) (Pharmacy Board); Conlon v. Com., State Bd. of Nurse Examiners, 68 Pa. Cmwlth. 349, 449 A.2d 108 (1982) (Nursing Board).

Moreover, even if the NBME were somehow clothed with the authority of a Commonwealth agency, which it is not, the cases demonstrate that a three-year suspension of the ability to take an examination related to licensing following a criminal conviction is not cruel and unusual punishment.   See, Gombach, supra (rejection of plaintiff's application for renewal of

---

[2]    Like the United States Constitution, the Pennsylvania Constitution bars excessive bail, excessive fines, and cruel and unusual punishment.   Pennsylvania Constitution, Art. 1, § 13.

notary license following conviction for tax evasion was not abuse of discretion or cruel and unusual punishment); <u>Carr v. Com. State Board of Pharmacy</u> (Pharmacy Board's decision to revoke plaintiff's pharmacy license where plaintiff engaged in distributing illegal narcotics was not cruel and unusual punishment); <u>Conlon v. Com., State Board of Nurse Examiners</u> (one-year suspension of nursing license by nursing board was not cruel and unusual punishment where plaintiff admitted misappropriation of narcotics).

In this case, because the USMLE-CIR review was not a criminal proceeding, and the NBME is not a Commonwealth agency conducting a civil proceeding, Mahmood's claim that the NBME subjected her to cruel and unusual punishment must be dismissed. Moreover, a three-year bar from taking examinations would not, in any event, constitute cruel and unusual punishment.[3]

**D.  Mahmood's Complaint Does Not State a Cause of Action for Violation of Due Process.**

---

[3]   It is worth noting that what Mahmood claims constitutes cruel and unusual punishment is not even a final action.  According to Exhibit 1-A, the USMLE—CIR "will recommend to the Composite Committee that you be barred for three years.... This recommendation will be reviewed by the USMLE Composite Committee at its June 2012 meeting. ... [Y]ou have the right to appeal this decision of the Committee for Individualized Review to the USMLE Composite Committee by sending a request for appeal within 90 days of the date of this letter ..." Exhibit 1-A." Mahmood has not indicated whether she has appealed or will appeal to the USMLE Composite Committee, and in any event it will not be determined until that Committee's June 2012 meeting whether the recommendation by the USMLE-CIR for a three year bar will be accepted. Mahmood's claim is therefore premature.

In her second cause of action, Mahmood asserts that the NBME violated her right to procedural and substantive due process by barring her from taking further USMLE examinations for three years.  Once again, this claim should be dismissed for lack of state action.  However, even if the NBME were deemed to have acted under color of law, which it did not, Mahmood's due process claim should be dismissed.

### 1.   Procedural Due Process.

The fourteenth Amendment to the United States Constitution provides that no state shall deny a person of life, liberty or property without due process of law.  To prevail on a procedural due process claim under Section 1983, a plaintiff must prove:

> (1) that he was deprived of a protected liberty or
> property interest; (2) that this deprivation was
> without due process; (3) that the defendant subjected
> the plaintiff, or caused the plaintiff to be subjected
> to, this deprivation without due process; (4) that the
> defendant was acting under color of state law; and (5)
> that the plaintiff suffered injury as a result of the
> deprivation without due process.

Rockledge Development Co. v. Wright Township, 767 F.Supp. 2d 499, 502 (M.D.Pa. 2011), citing Sample v. Diecks, 885 F.2d 1099, 1113 (3d Cir. 1989).

For multiple reasons, aside from the lack of state action, Mahmood has not made out a viable claim.  First, a plaintiff alleging a procedural due process violation must demonstrate that she has a protected liberty or property interest.  Property interests are not created by the Constitution, but rather they

20

exist from independent sources such as state law.   Board of
Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709.   In
this case, Mahmood has not specified the supposed liberty or
property interest of which the NBME deprived her.

Second, the essential requirements for due process are
notice and an opportunity to be heard, generally before the
deprivation, that is appropriate to the nature of the case.
Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542, 105
S.Ct. 1487, 1493 (1985).

The facts in this case demonstrate that Mahmood received
notice and an opportunity to be heard before the Committee
issued its decision.

In its letter of February 23, 2012, informing Mahmood of
the recommendation that she be barred for three years from
taking further examinations, the USMLE-CIR notes that Mahmood
had been corresponding with the Committee since shortly after
the August 8, 2011, event.

> In advance of the review, the Committee members were
> provided with copies of the following materials: (a)
> my letter to you dated August 24, 2011; (b) your
> response to my letter, dated October 10, 2011; (c)
> email communications between NBME staff and Prometric
> [testing center] staff, dated August 8 through August
> 18; (d) a report, written by Prometric, outlining the
> events that occurred at the Baltimore, MD Prometric
> Center on August 8, 2011; (e) a copy of the Baltimore
> Police Department's report, dated August 10, 2011; (f)
> case information from the Circuit Court for Baltimore
> City Criminal System; and (g) your letter to the
> Committee, dated January 22, 2012 and attachments.

21

Exhibit 1-A.

Moreover, the quoted section from the February 23, 2012, letter refers to an earlier letter to Mahmood, Exhibit 5, dated August 24, 2011, in which the USMLE provided Mahmood with the Committee's policies and procedures (Exhibit 8), advised her that she could submit relevant materials to the Committee, and invited her to appear before the Committee in person if she chose to.  Exhibit 5.

Accordingly, it is clear that regardless of the lack of state action, and regardless of the lack of specificity as to Mahmood's supposed liberty or property interest, the USMLE-CIR gave Mahmood <u>notice</u> that the Committee would meet to determine whether she had engaged in irregular behavior, and gave her the <u>opportunity to be heard</u>, either in writing, which she did, or in person, which she chose to decline.  Under these circumstances, Mahmood's claim of procedural due process violation should be dismissed.

## 2.  Substantive Due Process.

The Fourteenth Amendment "bar[s] certain government actions regardless of the fairness of the procedures used to implement them."  <u>Daniels v. Williams</u>, 474 U.S. 327, 331, 106 S.Ct. 662, 665 (1986).  Substantive due process encompasses the rights expressly set forth in the Bill of Rights and other fundamental rights.  To obtain relief under the substantive component of the

due process clause for a deprivation of property, a plaintiff must "establish as a threshold matter that he has a protected property interest to which the Fourteenth Amendment's due process protection applies." Woodwind Estates, Ltd. v. Gretkowski, 205 F.3d 118, 123 (3d Cir. 2000), abrogated in part on other grounds, 316 F.3d 392 (3d Cir 2003). Whether a claimed property interest is constitutionally protected "is not determined by reference to state law, but rather depends on whether that interest is 'fundamental' under the United States Constitution." Nicholas v. Pennsylvania State Univ., 227 F.3d 133, 140 (3d Cir. 2000), citing Regents of the Univ. of Michigan v. Ewing, 474 U.S. 214, 229, 106 S.Ct. 507 (1985).

The Third Circuit has been reluctant to expand substantive due process protection beyond the "venerable common-law rights of real property ownership." Nicholas, supra, 227 F.3d 133, 143. In Nicholas, for example, the Court held that the right to continued public employment as a tenured professor at a state university did not implicate substantive due process because it derived from state-created contract right, not from the constitution. Id.

Regents of University of Michigan v. Ewing, supra, is particularly instructive since it involved a claim by a medical school student after the University of Michigan dismissed him for academic reasons and would not permit him to retake an NBME

23

examination on which he did poorly.[4]   In a frequently cited
concurring opinion, Justice Powell stated:

> [N]ot every such right is entitled to the protection
> of substantive due process.   While property interests
> are protected by procedural due process even though
> the interest is derived from state law rather than the
> Constitution, Board of Regents v. Roth, 408 U.S. 564,
> 577, 92 S. Ct. 2701, 2709, 33 L.Ed.2d 548 (1972),
> substantive due process rights are created only by the
> Constitution.
>
> The history of substantive due process "counsels
> caution and restraint." Moore v. East Cleveland, 431
> U.S. 494, 502, 97 S.Ct. 1932, 1937, 52 L.Ed.2d 531
> (1977) (opinion of POWELL, J., for a plurality).   The
> determination that a substantive due process right
> exists is a judgment that "'certain interests require
> particularly careful scrutiny of the state needs
> asserted to justify their abridgment.'"   Ibid.,
> quoting Poe v. Ullman, 367 U.S. 497, 543, 81 S.Ct.
> 1752, 1776, 6 L.Ed.2d 989 (1961) (HARLAN, J.,
> dissenting). ...
>
> The interest asserted by respondent - an interest
> in continued enrollment from which he derives a right
> to retake the NBME - is essentially a state-law
> contract right.   It bears little resemblance to the
> fundamental interests that previously have been viewed
> as implicitly protected by the Constitution.   It
> certainly is not closely tied to "respect for the
> teachings of history, solid recognition of the basic
> values that underlie our society, and wise
> appreciation of the great roles that the doctrines of
> federalism and separation of powers have played in
> establishing and preserving American freedoms,"
> Griswold, supra, 381 U.S., at 501, 85 S.Ct., at 1690
> (HARLAN, J., concurring in judgment).

474 U.S. 214, 229-230, 105 S.Ct. 507, 515-516.

---

[4]     Unlike the present case, the plaintiff in Ewing sued a state
actor, the Regents of the University of Michigan, for an alleged
deprivation of a property right in the continuation in a state medical
school program.

Clearly, if there is no fundamental constitutional right to remained enrolled in a state-university medical school, as in Ewing, and no fundamental right to continued employment as a tenured professor at a state university, as in Nicholas, Mahmood has no fundamental right to not be barred for a three-year period from taking further USMLE examinations.

**E.    Mahmood's Complaint Does Not State a Cause of Action for Commingling of Investigative and Adjudicatory Functions.**

In her third cause of action, Mahmood asserts that the NBME violated her civil rights by commingling the investigative and adjudicatory functions related to its handling of the arson incident.  Exhibit 1.  Once again, this claim presumes, wrongly, that the NBME is a state actor capable of violating Mahmood's civil rights.  Because the NBME is not a state actor, this claim fails.  Assuming for present purposes that the NBME were a state actor, Mahmood still has not stated a valid claim for commingling of the investigative and adjudicatory functions.

The concept of violating due process by the commingling of functions relates to the potential for bias and unfairness of an administrative process in which the same person or persons have multiple roles, typically investigative or prosecutorial and adjudicatory.  For example, in Lyness v. Comm., State Bd. of Medicine, 529 Pa. 535, 605 A.2d 1204 (1992), the Pennsylvania Supreme Court found that the State Board of Medicine, a

25

Commonwealth agency, had impermissibly commingled prosecutorial and adjudicatory functions when the same board decided that a prosecution should be initiated, and later determined a violation to have occurred.

Significantly, the Lyness Court did not ban a single agency from having multiple functions.  Rather, the Court held that in such instances, "walls of division be constructed which eliminate the threat or appearance of bias."  Id., 529 Pa. 535, 546, 605 A.2d 1204, 1209.  See also, Stone and Edwards Ins. Agency, Inc. v. Com., Dept. of Insurance, 538 Pa. 276, 648 A.2d 304 (1994) (no improper commingling of prosecutorial and adjudicatory functions in the Commonwealth Insurance Department where the Department had created "walls of division" between the investigatory/prosecutorial function and the Insurance Commissioner's adjudicatory function).

In the present case, Mahmood has not made any specific allegations to support her conclusory claim of impermissible commingling, and the information available suggests the opposite.  The letter to Mahmood from the USMLE shortly after the arson incident, Exhibit 5, is from the "Office of the USMLE Secretariat," and informs Mahmood of the investigatory process that will occur.  Id.  The USMLE Policies and Procedures Regarding Irregular Behavior (Exhibit 8) describe a process in which "staff" of the USMLE gather information and make a

26

preliminary determination whether there is a reasonable basis to conclude reason that irregular behavior has occurred, and if so, then the matter is referred to the USMLE-CIR, an independent non-staff committee appointed by USMLE governance.

B.   Procedures

1.   After receipt of a report or other information suggesting irregular behavior on the part of an individual, ... staff will evaluate the information and will assess whether there is sufficient evidence of irregular behavior. When indicated and feasible, staff will conduct a follow up investigation to gather additional information ...

　　　　　*　　*　　*　　*

If, at the conclusion of such investigation and analysis of available information, staff finds that there exists a reasonable basis to conclude that an individual has engaged in irregular behavior, the matter will be referred to the Committee on Irregular Behavior, which has been appointed by the Composite Committee. ...

Exhibit 8, p. 2.[5]

Following the staff's gathering of information and referral to the Committee, the Committee made the decision reported to Mahmood in the letter dated February 23, 2012. Exhibit 1-A. Thus, there is absolutely no indication that the same person or persons within the NBME or USMLE conducted both investigatory and adjudicative functions, and therefore regardless of the lack of state action, Mahmood has not stated a claim related to commingling.

---

[5]   The "Committee on Irregular Behavior," referred to in Exhibit 8, has been renamed the Committee for Individualized Review.

**F.   Mahmood Has Not Stated a Claim under the ADA.**

Mahmood's averments concerning an alleged violation of the Americans with Disabilities Act are scant at best.  She avers that she is legally blind, that she had requested accommodations, and that the NBME failed to reasonably accommodate her, thereby violating the ADA.  Exhibit 1, ¶ 44 - 47.

As a private entity that offers examinations related to licensing or credentialing, the NBME is required to engage in an interactive process to offer accommodations to people who identify themselves as disabled under Section 309 of Title III of the ADA:

> Any person that offers examinations or courses related to applications, licensing, certification, or credentialing for secondary or post-secondary education, professional, or trade purposes shall offer such examinations or courses in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals."

42 U.S.C. § 12189.

To show a violation of the ADA, a plaintiff must show that she is disabled, that her requests for accommodations were reasonable, and that the requests were denied.  Ware v. Wyoming Bd. of Law Examiners.  973 F.Supp. 1339, 1356 (D.Wyo. 1997), aff'd., 161 F.3d 19 (10th Cir. 1998).  If the organization engages in an interactive process and makes an individualized decision on the request for accommodations, the denial of the

request will not necessarily constitute a violation of the ADA. 973 F.Supp. 1339, 1356-57.

The documents and correspondence in Exhibit 7 show that the NBME engaged in an interactive process with Mahmood concerning her request for accommodations, and that it agreed to provide the accommodations she requested.  Exhibit 7.  However, on the day of the examination, the stand for the extra large screen monitor the NBME provided for Mahmood broke as staff were moving it to the proper work station.  This does not mean that the NBME violated the ADA.  The obligation is to "offer alternative accessible arrangements," which the NBME did.  The report of the testing facility concerning the August 8, 2011, incident shows that the facility staff were trying to solve the problem of the broken stand when the police detained Mahmood for questioning and ultimately arrested her.  Exhibit 4.

Accordingly, Mahmood has not stated a claim under the ADA upon which this court can grant relief.

29

**CONCLUSION**

For all the foregoing reasons, the NBME requests that this Court dismiss all claims set forth in the complaint.

Respectfully submitted,

/s/ Michael E. Sacks
Neil J. Hamburg
Michael E. Sacks
ID. Nos. 32175 and 39774
HAMBURG & GOLDEN, P.C.
1601 Market Street, Suite 3310
Philadelphia, PA  19103-1443
(215) 255-8590

Attorneys for Defendant
National Board of Medical
Examiners

Dated:  April 24, 2012

30

## CERTIFICATE OF SERVICE

I, Michael Sacks, hereby certify that the foregoing Motion of Defendant the National Board of Medical Examiners to Dismiss the Complaint Pursuant to Fed. R. Civ. P. 12(b)(6), or in the Alternative for Summary Judgment Under Fed. R. Civ. P. 56, and supporting brief, has been filed electronically and is now available for viewing and downloading from the Court's Electronic Case Filing System. I further certify that a copy was served by regular mail on April 24, 2012, on the following:

William C. Reil, Esquire
42 S. 15th Street, Suite 210
Philadelphia PA 19102


/s/ Michael E. Sacks
Michael E. Sacks