IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARIA MAHMOOD | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | |
| NATIONAL BOARD | : | NO. 2:12-CV-01544-PD |
| OF MEDICAL EXAMINERS | : | |
| | : | |
| Defendants. | : | |

**ORDER**

AND NOW, this _____ day of _____, 2012, upon consideration of the motion of Plaintiff Maria Mahmood for a preliminary and/or permanent injunction, and the answer of defendant National Board of Medical Examiners, it is hereby ORDERED that the Motion for preliminary injunction is DENIED. Plaintiff's motion for a permanent injunction is DENIED.

BY THE COURT:

_____
J.

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| MARIA MAHMOOD | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | |
| NATIONAL BOARD | : | NO. 2:12-CV-01544-PD |
| OF MEDICAL EXAMINERS | : | |
| | : | |
| Defendants. | : | |

**ANSWER OF DEFENDANT, NATIONAL BOARD
OF MEDICAL EXAMINERS, TO PLAINTIFF'S MOTION
FOR PRELIMINARY AND/OR PERMANENT INJUNCTION**

Defendant, the National Board of Medical Examiners (NBME), for its answer to plaintiff Maria Mahmood's motion for a preliminary and/or permanent injunction:

1.   Admits the averments of paragraph 1 upon information and belief.

2.   Admits the averments of paragraph 2, and states that the NBME is an independent, not for profit organization that exists to protect the health of the public by providing high quality examinations for the health professions.

3.   Denies the averments of paragraph 3 as stated, and states that the NBME and the Federation of State Medical Boards, a separate not for profit organization, co-sponsor and provide for the administration of the United States Medical Licensing Examinations (USMLE) that are taken by medical students and

graduates of medical schools who seek to practice medicine in the United States.

4.   Admits in part and denies in part the averments of paragraph 4, denies all averments to the effect that the NBME violated Mahmood's constitutional rights or acted "illegally," denies that the NBME is a state actor, or that it acted under color of law, and denies the averments to the extent they constitute conclusions of law to which no response is required, except admits that plaintiff filed a complaint alleging that the NBME violated her constitutional rights by barring her for three years from taking any further USMLE examinations.

5.   Admits the averments of paragraph 5.

6.   Lacks knowledge or information sufficient to determine the truth of the averments of paragraph 6 and therefore denies such averments.

7.   Admits in part and denies in part the averments of paragraph 7, denies that the quoted paragraphs together set forth a fair summary of the complaint since those paragraphs omit the fact that plaintiff admitted setting a fire at a USMLE test center, and further:

- denies the averment in quoted paragraph 5 that it "illegally" suspended plaintiff;

- denies as stated the averment in quoted paragraph 6 of the complaint, and states that after Mahmood committed

arson at a USMLE testing center, the USMLE Committee for Individualized Review recommended to the USMLE Composite Committee that she should be barred from taking USMLE for three years, which review Mahmood had notice of and participated in;

- denies as stated the averment in quoted paragraph 7 of the complaint, and states that after completing the review in which Mahmood participated, the USMLE Committee for Individualized Review determined that Mahmood had engaged in Irregular Behavior, and recommended that the USMLE Composite Committee bar Mahmood from taking USMLE examinations for three years;

- lacks knowledge or information sufficient to determine the truth of the averment in quoted paragraph 8 of the complaint that if plaintiff is barred from taking the USMLE Step 2 CK for three years she will be dismissed from her medical school, and therefore denies such averment;

- lacks knowledge or information sufficient to determine the truth of the averment in quoted paragraph 9 of the complaint that if the phrase "irregular behavior" is placed on Mahmood's USMLE transcript, it will be

3

difficult or impossible for her to obtain a medical residency, and therefore denies such averment;

- admits the averment of quoted paragraph 10 of the complaint concerning the relief sought in Mahmood's lawsuit; and

- denies the averment in quoted paragraph 11 of the complaint.

8.    Denies the averments of paragraph 8, denies that the NBME deprived Mahmood of due process of law, denies arbitrary or capricious conduct, denies that the NBME is a state actor, or that it acted under color of law, or that it violated or is even capable of violating another party's constitutional rights, and denies the averments to the extent they constitute conclusions of law to which no response is required.

9.    Denies the averments of paragraph 9, denies that the NBME imposed a "penalty," except lacks knowledge or information sufficient to determine the truth of the averment that if Mahmood is barred from taking exams for the three year period she will never become a physician because passing the tests is a prerequisite for graduating from medical school, and therefore denies such averments, and states that not all medical schools require students to pass the USMLE Step 2 CK to graduate and become a physician.

10.   Lacks knowledge or information sufficient to determine the truth of the averments of paragraph 10 and therefore denies such averments.

11.   Denies the averments of paragraph 11, denies that a three-year bar from taking examinations for medical licensure is too harsh considering that Mahmood intentionally set a fire at a testing center thereby endangering the lives and safety of hundreds of people.

12.   Lacks knowledge or information sufficient to determine the truth of the averments of paragraph 12 and therefore denies such averments.

13.   Admits in part and denies in part the averments of paragraph 13, denies that the NBME failed to reasonably accommodate Mahmood, except admits that plaintiff is legally blind and has consistently received accommodations for her disability from the NBME.

14.   Denies the averments of paragraph 14, denies that "it is not necessary" to bar Mahmood from future tests, and states that the recommendation of the USMLE Committee for Individualized Review to the USMLE Composite Committee to bar Mahmood for a period of three years was made after careful consideration of all relevant materials, including explanatory and other materials submitted by Mahmood, and after offering

5

Mahmood the opportunity to appear personally before the Committee.

15. Denies the averments of paragraph 15, denies that Mahmood's right to relief is clear, and denies the averments to the extent they constitute conclusions of law to which no response is required.

16. Denies the averments of paragraph 16, denies that Mahmood is likely to prevail on the merits, and denies the averments to the extent they constitute conclusions of law to which no response is required.

17. Admits the averments of paragraph 17.

18. Admits the averments of paragraph 18.

WHEREFORE, the NBME respectfully requests that Mahmood's motion for a preliminary and/or permanent injunction be denied.

Respectfully submitted,

/s/ Michael E. Sacks
Neil J. Hamburg
Michael E. Sacks
ID. Nos. 32175 and 39774
HAMBURG & GOLDEN, P.C.
1601 Market Street, Suite 3310
Philadelphia, PA  19103-1443
(215) 255-8590

Attorneys for Defendant
National Board of Medical
Examiners

6

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

MARIA MAHMOOD                          :
                                       :
                Plaintiff,             :
                                       :    CIVIL ACTION
          v.                           :
                                       :
NATIONAL BOARD                         :    NO. 2:12-CV-01544-PD
OF MEDICAL EXAMINERS                   :
                                       :
                Defendants.            :

---

**MEMORANDUM OF LAW OF DEFENDANT NATIONAL BOARD
OF MEDICAL EXAMINERS IN OPPOSITION TO PLAINTIFF'S
MOTION FOR A PRELIMINARY AND/OR PERMANENT INJUNCTION**

---

Neil J. Hamburg
Michael E. Sacks
ID. Nos. 32175 and 39774

HAMBURG & GOLDEN, P.C.
1601 Market Street, Suite 3310
Philadelphia, PA  19103-1443
(215) 255-8590

Attorneys for Defendant
National Board of Medical
Examiners

**TABLE OF CONTENTS**

PAGE

INTRODUCTION                                                        1

I.   STATEMENT OF FACTS                                            2

     A.   Plaintiff Mahmood Intentionally Set A Fire
          To Create A "Diversion" In The Testing
          Center When She Was There To Take A USMLE
          Test On August 8, 2011                                   2

     B.   The USMLE Committee For Individualized
          Review Issued A Letter On February 23, 2012,
          Reporting Its Decision That Mahmood Had
          Engaged In Irregular Behavior                            4

     C.   Facts Relating to Mahmood's Disability                   6

     D.   Facts Showing That The NBME is Not a State
          Actor                                                    7

II.  ARGUMENT                                                      8

     A.   Standard For The Issuance Of A Preliminary
          Injunction                                               8

     B.   Mahmood Is Unlikely To Prevail On The Merits
          Of Her Claim                                            10

          1.   Mahmood Is Not Likely To Prevail On The
               Merits Of Any Claim Against The NBME
               Under 42 U.S.C. §1983 For A Supposed
               Constitutional Violation Because The
               NBME Is Not A State Actor                          11

               a.   Elements of a 1983 Action                     11

               b.   The Courts Of This Circuit Have
                    Already Determined That The NBME
                    Is Not A State Actor                          12

          2.   Mahmood's Complaint Fails To State A
               Cause Of Action For Cruel And Unusual
               Punishment                                         17

3.    Mahmood's Complaint Does Not State A
      Cause Of Action For Violation Of Due
      Process                                              21

      a.   Procedural Due Process                          21

      b.   Substantive Due Process                         24

4.    Mahmood's Complaint Does Not State a
      Cause of Action for Commingling of
      Investigative and Adjudicatory
      Functions                                            26

5.    Mahmood Has Not Stated A Claim Under
      The ADA                                              29

C.   Mahmood Has Not Shown That She Will Suffer
     Irreparable Harm If The Motion For
     Preliminary Injunction Is Denied                      31

D.   The Balance Of The Equities Do Not Favor
     Mahmood                                               34

E.   Mahmood's Requested Injunction Would Not
     Advance The Public Interest                           35

CONCLUSION                                                 36

**INTRODUCTION**

Maria Mahmood (Mahmood) is a medical student who admitted to intentionally setting a fire at the Prometric Test Center in Baltimore where she was taking the United States Medical Licensing Examination (USMLE) Step 2 CK (Clinical Knowledge). She pled guilty to criminal charges related to the arson.

The USMLE, which is sponsored by the National Board of Medical Examiners (NBME) and the Federation of State Medical Boards (FSMB),[1] followed its written policies by having its Committee for Individualized Review (the USMLE-CIR or the Committee)[2] conduct a review of Mahmood's actions after giving her ample notice and opportunity to be heard. The Committee determined that Mahmood had engaged in Irregular Behavior, and recommended to the USMLE Composite Committee[3] that she be barred for three years from taking USMLE examinations.

---

[1]    The NBME and the FSMB are each independent not for profit organizations. See Exhibit 11, Affidavit of Gerard F. Dillon, Ph.D.

[2]    The USMLE-CIR, formerly called the Committee on Irregular Behavior (CIB), is a standing committee appointed by the USMLE Composite Committee, consisting of between eight and twelve individuals, including two from the Composite Committee and representatives of The Education Commission for Foreign Medical Graduates (ECFMG), the FSMB, the NBME, and medical licensing authorities.

[3]    The USMLE Composite Committee was established jointly by the FSMB and the NBME to provide oversight for and direct the operation of the USMLE. Exhibit 11. The Composite Committee is responsible for, among other things, overseeing policies concerning score reporting and irregular behavior. Id. It is comprised of five FSMB representatives (plus one alternate), five NBME representatives (plus one alternate), three ECFMG representatives (plus one alternate) and one public member appointed by FSMB and NBME.

Mahmood sued the NBME for injunctive relief and damages on March 27, 2012, and now moves for a preliminary injunction seeking to prevent the NBME from barring her for a period of time from taking NBME examinations.  The NBME moved to dismiss Mahmood's complaint on April 24, 2012, and opposes Mahmood's motion for preliminary injunction.[4]

As set forth below, Mahmood's motion should be denied because she fails to make the required showing for preliminary relief.  Mahmood is unlikely to prevail on the merits for the reasons set forth in the NBME's motion to dismiss the complaint[5] and set forth in detail below; she will not suffer irreparable harm if preliminary injunctive relief is denied; the equities do not favor Mahmood; and the public interest is not served by enjoining the NBME.

I.   **STATEMENT OF FACTS**

**A.   Plaintiff Mahmood Intentionally Set A Fire To Create A "Diversion" In The Testing Center When She Was There To Take A USMLE Test On August 8, 2011.**

Maria Mahmood, a resident of Maryland, is a medical student at the University of Illinois at Chicago College of Medicine. Exhibit 1, ¶ 1.  Like most (but not all) medical students in the

---

[4]    Mahmood moved for a preliminary and/or permanent injunction. This memorandum addresses her request for preliminary injunction since a determination on her request for a permanent injunction would presumably be addressed in connection with a trial on the merits, if that occurs.
[5]    The NBME incorporates its motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6), or in the alternative for summary judgment under Fed. R. Civ. P. 56.

United States, she must pass Step 1 and Step 2 of the USMLE examinations to graduate and receive her M.D. degree.   Id., ¶ 12-13.  Mahmood registered to take the USMLE Step 2 CK (Clinical Knowledge) examination on August 8, 2011, at the Prometric Testing Center in Maryland.   Exhibit 4, Report of Prometric, p. 1.   The USMLE Step 2 CK is a multiple-choice examination delivered via computer that tests whether an applicant can apply medical knowledge and understanding of clinical science essential for the provision of patient care under supervision, and includes emphasis on health promotion and disease prevention.  Exhibit 11, ¶ 4.

Mahmood allegedly experienced anxiety and panic before the day of her examination, and decided to create a "diversion" that would delay the examination.[6]   Exhibit 1-A.  Mahmood asked the proctor if she could use the restroom before beginning the examination.   Mahmood then set a fire in the ladies' bathroom of a high rise building using toilet paper soaked in flammable liquid and a string wick that she had brought with her to the testing center.   Exhibit 1, ¶ 17; Exhibit 2, Police Report; Exhibit 4, Prometric Report.  Employees from the testing center witnessed Mahmood's actions.   One of the employees reacted quickly and was able to extinguish the fire and notified the

---

[6]   Mahmood could have rescheduled her examination for a small fee.

3

authorities.   Exhibit 2; Exhibit 4.   The police arrived and arrested Mahmood.   Exhibit 1, ¶ 20; Exhibit 2.

The police charged Mahmood with Arson in the First Degree, Arson in the Second Degree, Reckless Endangerment and Malicious Destruction of Property.   Exhibit 3.   Mahmood pled guilty to Malicious Destruction of Property and received a sentence of probation.   The other charges were dismissed.   Exhibit 3. Mahmood plans to petition to have her criminal record expunged after she completes her community service.   Exhibit 1, ¶ 21-22.

**B.   The USMLE Committee For Individualized Review Issued A Letter On February 23, 2012, Reporting Its Decision That Mahmood Had Engaged In Irregular Behavior.**

After Mahmood's arrest on August 8, 2011, the USMLE's Committee for Individualized Review followed its procedures and considered whether Mahmood had engaged in Irregular Behavior by intentionally setting a fire at the testing center.[7]   The Committee informed Mahmood of the procedures it would follow, and invited her to submit any materials she believed were relevant and to appear personally before the Committee if she chose to do so.   Exhibit 5.   At Mahmood's request, the Committee postponed its review so she could address the criminal charges before she submitted materials to the Committee.   Exhibit 6.

---

[7]     The USMLE Policies and Procedures Regarding Irregular Behavior define that term to include "all actions or attempted actions on the part of ... examinees ... that would or could subvert the examination process.   Examples of irregular behavior include, but are not limited to: ... engaging in disruptive or unprofessional behavior at a test center ..."   Exhibit 8.

Mahmood chose not to appear before the Committee, but submitted documents.

The Committee completed its review and informed Mahmood of its determination on February 23, 2012.   Exhibit 1-A.   It considered, among other things, the police report (Exhibit 2), the report from the testing center (Exhibit 4), information from the Court, and Mahmood's own letter of explanation with attached records.   Exhibit 1-A.

The Committee determined that Mahmood had, in fact, engaged in Irregular Behavior, which USMLE Policies and Procedures define to include disruptive or unprofessional behavior at a test center (Exhibit 8).   Exhibit 1-A.   As a consequence, pursuant to the Policies and Procedures, the USMLE informed Mahmood that her USMLE record will include an annotation showing the finding of irregular behavior, as will her USMLE transcripts.   Exhibit 1-A.   Such information will also be reported to the Board Action Data Bank of the Federation of State Medical Boards.   Id.

The USMLE further informed Mahmood that because the Committee determined that her behavior was "egregious and/or deemed to threaten the integrity of the examination system," it would recommend to the USMLE Composite Committee that she be barred for three years from registering for future examinations. Id.   The Committee informed Mahmood that the USMLE Composite

Committee would consider that recommendation at its June 2012 meeting, and further informed her that she had the right, within 90 days of the date of mailing of the Committee's notification, to file an appeal to the Composite Committee.  Exhibit 1-A.  To date, she has not filed an appeal.

    **C.   Facts Relating To Mahmood's Disability.**

Mahmood is legally blind, and needed testing accommodations for her disability.  Exhibit 1, ¶ 26, 44-45.  According to Mahmood, she had requested special accommodations, but the facility did not have the proper accommodations on the day of the exam.  Exhibit 1, ¶ 27, 46.  However, the NBME had granted accommodations to Mahmood.  Exhibit 12, Affidavit of Catherine Farmer, Psy.D.

Mahmood had corresponded with the NBME, which administers disability services for the USMLE, about her disability.  The NBME had agreed to all of the accommodations Mahmood requested for the USMLE Step 2 CK.  Exhibit 7[8]; Exhibit 12, ¶ 8-10, 15-19.

Mahmood arrived shortly before the 9:00 a.m. start time for her August 8, 2011, examination.  During the check-in process, she asked if she could use the restroom prior to the start of her examination.  The proctor said yes and Mahmood went to the

---

[8]    Mahmood had been receiving accommodations from the NBME for USMLE testing since 2007.  Only those materials related to Mahmood's request for accommodation for the USMLE Step 2 CK in August 2011, the examination during which she committed arson, are included at Exhibit 7.  See also Exhibit 12, which summarizes the accommodations Mahmood has received for USMLE examinations since 2007.

ladies' room shortly after 9:00 a.m.  She deliberately set the fire in the bathroom at approximately 9:10 – 9:15 a.m., using toilet paper with string and flammable liquid that she had brought to the center for the purpose.  Exhibit 4.

Prior to the administration, the NBME had agreed to provide Mahmood with the extra large screen monitor she requested to accommodate her visual disability.  Exhibit 12.  The monitor was shipped by Federal Express to the center where Mahmood chose to take her examination.  After Mahmood took the tutorial but before the examination commenced, test center staff discovered that the stand supporting the monitor was broken.  Mahmood requested a new monitor, and while the testing center personnel were trying to resolve the technical issue a witness identified Mahmood as the person who set the fire, leading to her questioning and arrest.  Exhibit 4, p. 2-3.

### D.  Facts Showing That The NBME Is Not A State Actor.

The NBME is an independent, not-for-profit organization. Exhibit 9; Exhibit 11.  The NBME provides high-quality examinations for the health professions.  Its mission is to protect the health of the public through state of the art assessment of health professionals, along with a major commitment to research and development in evaluation and measurement.  Exhibit 10; Exhibit 11.  The NBME was founded in 1915 because of the need for a voluntary, nationwide examination

7

that medical licensing authorities could accept as the standard by which to judge candidates for medical licensure. Since that time, it has continued without interruption to provide high quality examinations for this purpose and has become a model and a resource of international stature in testing methodologies and evaluation in medicine.

The NBME, together with the Federation of State Medical Boards of the United States, sponsor and provide for the administration of USMLE, a series of examinations taken by medical students and graduates of medical schools that assist state medical boards in making licensing decisions. Exhibit 11.

## II.  ARGUMENT

### A.  Standard For The Issuance Of A Preliminary Injunction.

In Winter v. National Resources Defense Council, Inc., 557 U.S. 7, 129 S. Ct. 365 (2008), the Supreme Court reiterated the standard for issuance of a preliminary injunction:

> A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.

557 U.S. 7, 20, 129 S. Ct. 365, 374. The Winter Court rejected the Ninth Circuit's holding that a strong showing on the likelihood of success on the merits relaxes the requirement to show a likelihood of irreparable harm. To the contrary, the Court held that a plaintiff must demonstrate both a likelihood

8

of success on the merits and a likelihood of irreparable harm. The mere possibility of irreparable harm is not sufficient. The Court emphasized that the issuance of an injunction is an extraordinary remedy:

> Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.

129 S. Ct. 365, 375-76.  See also, Sherley v. Sebelius, 644 F.3d 388, 393 (D.C. Cir. 2011) (pursuant to Winter, the likelihood of success is a free-standing requirement for a preliminary injunction, and does not modify the need to establish a likelihood of irreparable injury.)

A plaintiff's burden is even higher when the requested relief is mandatory in nature, as it is here.  Rather than maintain the status quo, Mahmood's requested injunction would provide her with the very relief that she would obtain if she were to prevail on the merits.  Such an injunction "should issue 'only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief.'"  Tom Doherty Associates, Inc. v. Saban Entertainment, Inc., 60 F.3d 27, 34 (2d Cir. 1995)(citations omitted).

**B.   Mahmood Is Unlikely To Prevail On The Merits Of Her Claim.**

The NBME has filed a motion to dismiss the complaint under Fed. R. Civ. P. 12(b)(6), or in the alternative for summary judgment under Fed. R. Civ. P. 56, and incorporates that motion in this memorandum opposing Mahmood's motion for preliminary injunction.

Mahmood's complaint asserts four causes of action:

1.   That the NBME violated her "constitutional rights ... to be free from cruel and unusual punishment";

2.   That the NBME violated her civil rights under 42 USC 1983 and violated her "right to procedural and substantive due process";

3.   That the NBME violated her civil rights by "commingl[ing] the investigative and adjudicative functions" involving the charges against her; and

4.   That the NBME violated the Americans with Disabilities Act (ADA) by failing to reasonably accommodate her disability. Exhibit 1, Complaint.

Mahmood is not likely to prevail on the first three causes of action in the complaint, alleging various types of deprivations of civil rights, because the NBME is neither the state, nor a state actor, nor did it act under color of state law, and therefore it is not subject to the standards of conduct that apply to such entities for allegedly violating an

10

individual's civil rights.   As explained below, this Court and the Court of Appeals for the Third Circuit have found that the NBME is an independent, not-for-profit organization that exists to provide high quality medical examinations for the health professions, and it is <u>not</u> a state actor.

Mahmood is not likely to prevail on the fourth cause of action because she has not stated a valid claim for relief under the Americans with Disabilities Act.

> **1.   Mahmood Is Not Likely To Prevail On The Merits Of Any Claim Against The NBME Under 42 U.S.C. §1983 For A Supposed Constitutional Violation Because The NBME Is Not A State Actor.**
>
>       **a.   Elements of a 1983 Action**

42 U.S.C. § 1983, commonly referred to as "Section 1983" provides:

> Every person who under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, Suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983.

Section 1983 provides an action for violation of constitutional rights "under color of state law." <u>Lugar v. Edmondson Oil Co.</u>, 457 U.S. 922, 924, 102 S.Ct. 2744, 2747 (1982).  A Section 1983 claim cannot exist without state action.

<u>Id.</u>  Section 1983's requirement that the defendant have acted under the color of state law requires power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law."  <u>West v. Atkins</u>, 487 U.S. 42, 49, 108 S.Ct. 2250, 2256 (1988).  The tests for state action and acts under color of law are the same.  <u>Annunziato v. The Gan, Inc.</u>, 744 F.2d 244, 249 (2d Cir. 1984).

Section 1983 is not itself a source of substantive rights. It provides a method for the vindication of rights elsewhere conferred in the United States Constitution and laws.  <u>Chapman v. Houston Welfare Rights Org.</u>, 441 U.S. 600, 618, 99 S.Ct, 1905, 1916 (1979).  In this case, each of Mahmood's Section 1983 claims — that NBME subjected her to cruel and unusual punishment, violated the due process clause, and commingled the investigative and adjudicatory functions — fails because Mahmood cannot make a threshold showing of state action.

### b.   The Courts Of This Circuit Have Already Determined That The NBME Is Not A State Actor.

Mahmood asserts in the complaint that the NBME is "a medical licensing institution acting under color of state law," but provides no facts to support that proposition.  Exhibit 1, ¶ 14.  Simply put, Mahmood is wrong.  As this court has found, the NBME is not a medical licensing institution, and it does not act under color of state law.  <u>Boggi v. Medical Review and</u>

12

Accrediting Council, 2009 WL 2951022 (E.D.Pa. 2009), aff'd, 415 Fed. Appx. 411 (3d. Cir. 2011).

In Boggi, the district court addressed the threshold question at issue here: whether the NBME is a state actor or acts under color of state law.  In a detailed opinion, Judge Schiller determined that the NBME is neither a state actor nor a private party acting under color of state law, and the Court of Appeals affirmed and adopted his reasoning.  Boggi is directly on point, and therefore merits a detailed discussion here.

Boggi involved a physician whose license to practice medicine in Maryland had been revoked by the state medical board after an investigation into his mental competency.  Years later, Dr. Boggi pursued testing from the NBME, and sought retraining from the Medical Review and Accrediting Council (MRAC) to reestablish his competency to practice.  He later sued the NBME and MRAC, alleging that they acted under color of state law in testing him and determining that they could not retrain him.

On motions to dismiss the complaint, Judge Schiller analyzed the NBME under each of the tests developed by the Supreme Court to determine whether a private party acts under color of law, and found that the NBME did not fit within any of them.  Specifically, the court found as follows:

### 1.   Close nexus test

Under [the close nexus] test, the state must have exercised coercive power or have provided such

13

significant encouragement that the private actor's decision can be deemed that of the state. *Blum v. Yaretsky,* 457 U.S. 991, 1004, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982). This test looks at the connection between the state and the specific action that allegedly infringed on the plaintiff's rights ... This test is met only if it can be said that the state is responsible for the specific conduct about which the plaintiff complains. *Id.* (citing *Blum,* 457 U.S. at 1004.)

... MRAC is a private organization that merely offers testing and retraining services to assist doctors in getting their medical licenses back. The [state Medical Board], on the other hand, was the state actor that suspended Dr. Boggi's license and placed conditions on his ability to have his license reinstated. But there is no connection between the [state Medical Board] and MRAC. Under such circumstances, a "close nexus" cannot be said to exist between MRAC and the State of Maryland. **The same can be said of NBME, which facilitates testing for medical professionals. There is no indication that the State of Maryland, or any other state, holds sway over the policies or procedures of NBME nor is there any evidence that Maryland plays any role in devising questions or medical tests for those seeking to become doctors.**

### 2.   *Symbiotic relationship test*

If a "symbiotic relationship" exists between the private party and the state, the private party's conduct may be held attributable to the state. *See Reitz v. County of Bucks,* 125 F.3d 139, 147-48 (3d Cir. 1997) ("[I]f the facts support a finding that the private parties acted as a 'joint participant' in the challenged activity with the state, then they can be found to have acted under color of state law and to be liable under § 1983."). Courts have held that this test is not satisfied - and thus the actions of a private institution cannot be attributed to the state - even upon a showing of state regulation in a particular area, even if such regulation is "pervasive, extensive, and detailed," nor is it satisfied due to extensive financial assistance. *Klavan,* 60 F.Supp.2d at 442 (citations omitted).

14

Dr. Boggi explicitly references the "symbiotic relationship" between the state, NBME, and MRAC. (Compl. at 3.) He contends that MRAC would not exist but for the state's need to have an institute to retrain doctors. (*Id.*) He also relies on the fact that MRAC affirmed the findings of Maryland. (*Id.*) **The Court concludes that no basis exists for finding a symbiotic relationship between the State of Maryland and Defendants. Maryland is under no duty to use MRAC or NBME. There is no evidence of any financial relationship or any legislative powers that Maryland maintains over these entities. At most, NBME and MRAC are companies with which certain states deal in the realm of medical licensing. But that interaction does not render them state actors.**

**3.   *Public Function test***

This approach reaches "only those activities that have been traditionally the *exclusive* prerogative of the State." *Groman,* 47 F.3d at 640. Because few functions have traditionally been the sole domain of the states, this test is rarely satisfied. ... **Neither NBME nor MRAC is performing an activity left solely to the state. Testing and test score reporting are not tasks left solely to the state. ... More broadly, the Third Circuit Court of Appeals has concluded that "[t]he evaluation and accreditation of medical education in this country is neither a traditional nor an exclusive state function."** ***McKeesport,*** **24 F.3d at 525. Neither entity is empowered to license physicians, a task left to the State of Maryland. ...**

2009 WL 2951022, *6, 7 (emphasis added).

Thus, in a decision directly on point here, Judge Schiller determined that the NBME was not a state actor and did not act under color of law in performing its testing services. The court of appeals adopted Judge Schiller's analysis, affirming that the NBME and MRAC were not state actors. 415 Fed. Appx. 411. That determination by itself disposes of Mahmood's first

three causes of action which all presume, incorrectly, that the NBME is a state actor.

The courts of this circuit are not alone in finding that the NBME is not a state actor. In <u>Brown v. Federation of State Medical Boards of U.S., et al.</u>, 1985 WL 1659, *4-5 (N.D.Ill. 1985), aff'd, 830 F.2d 1429, 1437 (7th Cir. 1987), <u>abrogated on other grounds</u>, 880 F.2d 928 (7th Cir. 1989), cited by the district court in <u>Boggi</u>, the Court likewise rejected a Section 1983 claim against the NBME and the Federation of State Medical Boards, finding that both entities were private service providers, not state actors:

> Brown's §1983 action (along with his other constitutional claims) fail for lack of subject matter jurisdiction because no state action or acts under color of state law occurred. In order to claim an infringement of constitutional rights under the Fourteenth Amendment or § 1983, a plaintiff must allege that his injury was caused by state actors or persons acting under color of state law. <u>Rendell-Baker v. Kohn</u>, 457 U.S. 830, 835 (1982). ...
>
> **Federation, Commission and National [the NBME] are not state agencies. They do not license physicians. The actual state actors here are the state licensing boards, which have complete control over whether or not to use the defendants' tests, and if so, how to use these tests. Thus, the defendants are supplying a service used by candidates and state boards. This supplying of a testing service does not make defendants state actors any more than the company which provides the state with office supplies acts under color of state law. The state boards are at most defendants' consumers; defendants do not participate in a state activity.**

<u>Brown</u>, 1985 WL 1659 at *4-5 (emphasis added).

16

See also, <u>McKeesport Hospital v. Accreditation Council for Graduate Medical Education</u>, 24 F.3d 519, 524-526 (3d Cir. 1994) (ACGME, a private accrediting body, was not a state actor because it did not act in concert with the state, there was no "close nexus" between it and the state, and accreditation of graduate medical programs was not exclusively a state responsibility); <u>Munsif v. Cassel</u>, 331 Fed. Appx. 954, 959 (3d Cir. 2009) (complaint properly dismissed where there were no allegations supporting the claim that the American Board of Internal Medicine, which sponsored a medical subspecialty certification examination that plaintiff failed, acted under color of state law; <u>Goussis v. Kimball</u>, 813 F.Supp. 352 (E.D.Pa. 1993) (same).

Accordingly, the courts in this circuit and elsewhere have explored the nature of the testing services of the NBME and determined that the NBME is not a state actor and does not act under color of state law.  Therefore, Mahmood's first, second and third causes of action, which all presume state action by the NBME, should be dismissed.

### 2. Mahmood's Complaint Fails To State A Cause Of Action For Cruel And Unusual Punishment.

Even if the NBME were deemed to have acted under color of state law, which it did not, Mahmood's claim that the recommendation by the USMLE—CIR that she be barred for three years from taking additional USMLE examinations constitutes

17

cruel and unusual punishment would fail to state a claim upon which relief could be granted.

It is well settled that the Eighth Amendment to the United States Constitution, prohibiting cruel and unusual punishment, applies to criminal proceedings, not civil cases.   In Ingraham v. Wright, 430 U.S. 651, 97 S.Ct. 1401 (1977), involving a challenge to the use of corporal punishment in public schools, the Supreme Court stated:

> (1) The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  Bail, fines, and punishment traditionally have been associated with the criminal process, and by subjecting the three to parallel limitations the text of the Amendment suggests an intention to limit the power of those entrusted with the criminal-law function of government.  An examination of the history of the Amendment and the decisions of this Court construing the proscription against cruel and unusual punishment confirms that it was designed to protect those convicted of crimes.  We adhere to this longstanding limitation and hold that the Eighth Amendment does not apply to the paddling of children as a means of maintaining discipline in public schools.

430 U.S. 651, 664, 97 S.Ct. 1401, 1408-1409.  See also, Browning-Ferris Industries of Vermont, Inc. v. Kelco Disposal, Inc., 492 U.S. 257, 262, 109 S.Ct. 2909, 2913 (1989) (Eighth Amendment's excessive fines clause has no application to punitive damages assessed in a civil case because the Eighth Amendment limits the power of the government to impose punishment in criminal cases).

18

Therefore, leaving aside the fact that the NBME is not a state actor capable of depriving another of rights protected under the United States constitution, Mahmood's claim that the suspension of her right to take additional USMLE examinations for a period of three years constitutes cruel and unusual punishment fails because such "punishment" was not imposed in any criminal proceeding.

The Supreme Court of Pennsylvania has taken a more expansive view, however, holding that the principle contained in the cruel and unusual punishment clause of the Pennsylvania Constitution[9] applies to all "proceedings." In the civil context a complainant must show an abuse of discretion leading to cruel and unusual punishment. Gombach v. Dept., Bureau of Com'ns, Elections & Legislation, 692 A.2d 1127, 1131 (Pa. Cmwlth. 1997).

That Pennsylvania recognizes the principle of cruel and unusual punishment to apply in civil proceedings is no help to Mahmood, however, since all of the cases in which Pennsylvania courts have determined whether a "proceeding" resulted in cruel and unusual punishment have involved actions by Commonwealth agencies. See, e.g, Gombach, supra (Department of State, Bureau of Commissions, Elections & Legislation); Carr v. Com. State Bd. of Pharmacy, 48 Pa. Cmwlth. 330, 409 A.2d 941 (1980) (Pharmacy

---

[9]    Like the United States Constitution, the Pennsylvania Constitution bars excessive bail, excessive fines, and cruel and unusual punishment. Pennsylvania Constitution, Art. 1, § 13.

Board); Conlon v. Com., State Bd. of Nurse Examiners, 68 Pa. Cmwlth. 349, 449 A.2d 108 (1982) (Nursing Board).

Moreover, even if the NBME were somehow clothed with the authority of a Commonwealth agency, which it is not, the cases demonstrate that a three-year suspension of the ability to take an examination related to licensing following a criminal conviction is not cruel and unusual punishment. See, Gombach, supra (rejection of plaintiff's application for renewal of notary license following conviction for tax evasion was not abuse of discretion or cruel and unusual punishment); Carr v. Com. State Board of Pharmacy (Pharmacy Board's decision to revoke plaintiff's pharmacy license where plaintiff engaged in distributing illegal narcotics was not cruel and unusual punishment); Conlon v. Com., State Board of Nurse Examiners (one-year suspension of nursing license by nursing board was not cruel and unusual punishment where plaintiff admitted misappropriation of narcotics).

In this case, because the USMLE-CIR review was not a criminal proceeding, and the NBME is not a Commonwealth agency conducting a civil proceeding, Mahmood's claim that the NBME subjected her to cruel and unusual punishment must be dismissed. Moreover, barring an admitted arsonist from taking medical

licensing examinations for three years would not, in any event, constitute cruel and unusual punishment.[10]

### 3. Mahmood's Complaint Does Not State A Cause Of Action For Violation Of Due Process.

In her second cause of action, Mahmood asserts that the NBME violated her right to procedural and substantive due process by barring her from taking further USMLE examinations for three years.  Once again, this claim should be dismissed for lack of state action.  However, even if the NBME were deemed to have acted under color of law, which it did not, Mahmood's due process claim should be dismissed.

### a. Procedural Due Process.

The fourteenth Amendment to the United States Constitution provides that no state shall deny a person of life, liberty or property without due process of law.  To prevail on a procedural due process claim under Section 1983, a plaintiff must prove:

> (1) that he was deprived of a protected liberty or property interest; (2) that this deprivation was without due process; (3) that the defendant subjected the plaintiff, or caused the plaintiff to be subjected

---

[10]   It is worth noting that what Mahmood claims constitutes cruel and unusual punishment is not even a final action.  According to Exhibit 1-A, the USMLE—CIR "will recommend to the Composite Committee that you be barred for three years. ... This recommendation will be reviewed by the USMLE Composite Committee at its June 2012 meeting. ... [Y]ou have the right to appeal this decision of the Committee for Individualized Review to the USMLE Composite Committee by sending a request for appeal within 90 days of the date of this letter ..."  Exhibit 1-A."  Mahmood has not indicated whether she has appealed or will appeal to the USMLE Composite Committee, and in any event it will not be determined until that Committee's June 2012 meeting whether the recommendation by the USMLE-CIR for a three year bar will be accepted.  Mahmood's claim is therefore premature.

to, this deprivation without due process; (4) that the defendant was acting under color of state law; and (5) that the plaintiff suffered injury as a result of the deprivation without due process.

Rockledge Development Co. v. Wright Township, 767 F.Supp. 2d 499, 502 (M.D.Pa. 2011), citing Sample v. Diecks, 885 F.2d 1099, 1113 (3d Cir. 1989).

For multiple reasons, aside from the lack of state action, Mahmood has not made out a viable claim.  First, a plaintiff alleging a procedural due process violation must demonstrate that she has a protected liberty or property interest.  Property interests are not created by the Constitution, but rather they exist from independent sources such as state law.  Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709 (1972). In this case, Mahmood has not specified the supposed liberty or property interest of which the NBME deprived her.

Second, an essential requirement of due process is that a deprivation of life, liberty or property "be preceded by notice and opportunity for hearing appropriate to the nature of the case."  Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542, 105 S.Ct. 1487, 1493 (1985).

The facts in this case demonstrate that Mahmood received notice and an opportunity to be heard before the Committee issued its decision.

In its letter of February 23, 2012, informing Mahmood of the recommendation that she be barred for three years from

22

taking further examinations, the USMLE-CIR notes that Mahmood had been corresponding with the Committee since shortly after the August 8, 2011, event.

> In advance of the review, the Committee members were provided with copies of the following materials: (a) my letter to you dated August 24, 2011; (b) your response to my letter, dated October 10, 2011; (c) email communications between NBME staff and Prometric [testing center] staff, dated August 8 through August 18; (d) a report, written by Prometric, outlining the events that occurred at the Baltimore, MD Prometric Center on August 8, 2011; (e) a copy of the Baltimore Police Department's report, dated August 10, 2011; (f) case information from the Circuit Court for Baltimore City Criminal System; and (g) your letter to the Committee, dated January 22, 2012 and attachments.

Exhibit 1-A.

Moreover, the quoted section from the February 23, 2012, letter refers to an earlier letter to Mahmood, dated August 24, 2011, Exhibit 5, in which the USMLE provided Mahmood with the Committee's policies and procedures (Exhibit 8), advised her that she could submit relevant materials to the Committee, and invited her to appear before the Committee in person if she chose to.  Exhibit 5.

Accordingly, it is clear that regardless of the lack of state action, and regardless of the lack of specificity as to Mahmood's supposed liberty or property interest, the USMLE-CIR gave Mahmood <u>notice</u> that the Committee would meet to determine whether she had engaged in irregular behavior, and gave her the <u>opportunity to be heard</u>, either in writing, which she did, or in

23

person, which she declined.   Under these circumstances,
Mahmood's claim of procedural due process violation should be
dismissed.

**b.   Substantive Due Process.**

The Fourteenth Amendment "bar[s] certain government actions
regardless of the fairness of the procedures used to implement
them." Daniels v. Williams, 474 U.S. 327, 331, 106 S.Ct. 662,
665 (1986).   Substantive due process encompasses the rights
expressly set forth in the Bill of Rights and other fundamental
rights.   To obtain relief under the substantive component of the
due process clause for a deprivation of property, a plaintiff
must "establish as a threshold matter that he has a protected
property interest to which the Fourteenth Amendment's due
process protection applies."   Woodwind Estates, Ltd. v.
Gretkowski, 205 F.3d 118, 123 (3d Cir. 2000), abrogated in part
on other grounds, 316 F.3d 392 (3d Cir 2003).   Whether a claimed
property interest is constitutionally protected "is not
determined by reference to state law, but rather depends on
whether that interest is 'fundamental' under the United States
Constitution." Nicholas v. Pennsylvania State Univ., 227 F.3d
133, 140 (3d Cir. 2000), citing Regents of the Univ. of Michigan
v. Ewing, 474 U.S. 214, 229, 106 S.Ct. 507 (1985).

The Third Circuit has been reluctant to expand substantive
due process protection beyond the "venerable common-law rights

24

of real property ownership." <u>Nicholas</u>, <u>supra</u>, 227 F.3d 133, 143. In <u>Nicholas</u>, for example, the Court held that the right to continued public employment as a tenured professor at a state university did not implicate substantive due process because it derived from state-created contract right, not from the constitution. <u>Id</u>.

<u>Regents of University of Michigan v. Ewing</u>, <u>supra</u>, is particularly instructive since it involved a claim by a medical school student after the University of Michigan dismissed him for academic reasons and would not permit him to retake an NBME examination on which he did poorly.[11] In a frequently cited concurring opinion, Justice Powell stated:

> [N]ot every such right is entitled to the protection of substantive due process. While property interests are protected by procedural due process even though the interest is derived from state law rather than the Constitution, <u>Board of Regents v. Roth</u>, 408 U.S. 564, 577, 92 S. Ct. 2701, 2709, 33 L.Ed.2d 548 (1972), substantive due process rights are created only by the Constitution.
>
> The history of substantive due process "counsels caution and restraint." <u>Moore v. East Cleveland</u>, 431 U.S. 494, 502, 97 S.Ct. 1932, 1937, 52 L.Ed.2d 531 (1977) (opinion of POWELL, J., for a plurality). The determination that a substantive due process right exists is a judgment that "'certain interests require particularly careful scrutiny of the state needs asserted to justify their abridgment.'" <u>Ibid</u>., quoting <u>Poe v. Ullman</u>, 367 U.S. 497, 543, 81 S.Ct.

---

[11]   Unlike the present case, the plaintiff in <u>Ewing</u> sued a state actor, the Regents of the University of Michigan, for an alleged deprivation of a property right in the continuation in a state medical school program.

1752, 1776, 6 L.Ed.2d 989 (1961) (HARLAN, J., dissenting). ...

The interest asserted by respondent - an interest in continued enrollment from which he derives a right to retake the NBME - is essentially a state-law contract right. It bears little resemblance to the fundamental interests that previously have been viewed as implicitly protected by the Constitution. It certainly is not closely tied to "respect for the teachings of history, solid recognition of the basic values that underlie our society, and wise appreciation of the great roles that the doctrines of federalism and separation of powers have played in establishing and preserving American freedoms," Griswold, supra, 381 U.S., at 501, 85 S.Ct., at 1690 (HARLAN, J., concurring in judgment).

474 U.S. 214, 229-230, 105 S.Ct. 507, 515-516.

Clearly, if there is no fundamental constitutional right to remained enrolled in a state-university medical school, as in Ewing, and no fundamental right to continued employment as a tenured professor at a state university, as in Nicholas, Mahmood has no fundamental right to take further USMLE examinations within the next three years.

> ### 4. Mahmood's Complaint Does Not State A Cause Of Action For Commingling Of Investigative And Adjudicatory Functions.

In her third cause of action, Mahmood asserts that the NBME violated her civil rights by commingling the investigative and adjudicatory functions related to its handling of the arson incident. Exhibit 1. Once again, this claim presumes, wrongly, that the NBME is a state actor capable of violating Mahmood's civil rights. Because the NBME is not a state actor, this claim

26

fails.  Assuming for present purposes that the NBME were a state actor, Mahmood still has not stated a valid claim for commingling of the investigative and adjudicatory functions.

The concept of violating due process by the commingling of functions relates to the potential for bias and unfairness of an administrative process in which the same person or persons have multiple roles, typically investigative or prosecutorial and adjudicatory.  For example, in Lyness v. Comm., State Bd. of Medicine, 529 Pa. 535, 605 A.2d 1204 (1992), the Pennsylvania Supreme Court found that the State Board of Medicine, a Commonwealth agency, had impermissibly commingled prosecutorial and adjudicatory functions when the same board decided that a prosecution should be initiated, and later determined a violation to have occurred.

Significantly, the Lyness Court did not ban a single agency from having multiple functions.  Rather, the Court held that in such instances, "walls of division be constructed which eliminate the threat or appearance of bias."  Id., 529 Pa. 535, 546, 605 A.2d 1204, 1209.  See also, Stone and Edwards Ins. Agency, Inc. v. Com., Dept. of Insurance, 538 Pa. 276, 648 A.2d 304 (1994) (no improper commingling of prosecutorial and adjudicatory functions in the Commonwealth Insurance Department where the Department had created "walls of division" between the

investigatory/prosecutorial    function    and    the    Insurance Commissioner's adjudicatory function).

In  the  present  case,  Mahmood  has  not  made  any  specific allegations  to  support  her  conclusory  claim  of  impermissible commingling,  and  the  information  available  suggests  the opposite.   The  letter  to  Mahmood  from  the  USMLE  shortly  after the  arson  incident,  Exhibit  5,  is  from  the  "Office  of  the  USMLE Secretariat,"  and  informs  Mahmood  of  the  investigatory  process that  will  occur.   Id.   The  USMLE  Policies  and  Procedures Regarding  Irregular  Behavior  (Exhibit  8)  describe  a  process  in which  "staff"  gather  information  and  make  a  preliminary determination  whether  there  is  a  reasonable  basis  to  conclude reason  that  irregular  behavior  has  occurred,  and  if  so,  then  the matter  is  referred  to  the  USMLE-CIR,  an  independent  non-staff committee  appointed  by  USMLE  governance.

B.   <u>Procedures</u>

1.   After  receipt  of  a  report  or  other  information suggesting  irregular  behavior  on  the  part  of  an individual,  ...  staff  will  evaluate  the  information and  will  assess  whether  there  is  sufficient  evidence of  irregular  behavior.   When  indicated  and  feasible, staff  will  conduct  a  follow  up  investigation  to  gather additional  information  ...

*     *     *     *

If,  at  the  conclusion  of  such  investigation  and analysis  of  available  information,  staff  finds  that there  exists  a  reasonable  basis  to  conclude  that  an individual  has  engaged  in  irregular  behavior,  the matter  will  be  referred  to  the  Committee  on  Irregular

28

Behavior,  which  has  been  appointed  by  the  Composite
Committee.  ...

Exhibit 8, p. 2.[12]

Following  the  staff's  gathering  of  information  and  referral
to  the  Committee,  the  Committee  made  the  decision  reported  to
Mahmood  in  the  letter  dated  February  23,  2012.   Exhibit  1-A.
Thus,  there  is  absolutely  no  indication  that  the  same  person  or
persons  within  the  NBME  or  USMLE  conducted  both  investigatory
and  adjudicative  functions,  and  therefore  regardless  of  the  lack
of  state  action,  Mahmood  has  not  stated  a  claim  related  to
commingling.

### 5.   Mahmood Has Not Stated A Claim Under The ADA.

Mahmood's  averments  concerning  an  alleged  violation  of  the
Americans  with  Disabilities  Act  are  scant  at  best.   She  avers
that  she  is  legally  blind,  that  she  had  requested
accommodations,  and  that  the  NBME  failed  to  reasonably
accommodate  her,  thereby  violating  the  ADA.   Exhibit  1,  ¶  44  -
47.

As  a  private  entity  that  offers  examinations  related  to
licensing  or  credentialing,  the  NBME  is  required  to  engage  in  an
interactive  process  to  offer  accommodations  to  people  who
identify  themselves  as  disabled  under  Section  309  of  Title  III
of  the  ADA:

---

[12]   The "Committee on Irregular Behavior," referred to in Exhibit 8,
has been renamed the Committee for Individualized Review.

29

Any person that offers examinations or courses related to applications, licensing, certification, or credentialing for secondary or post-secondary education, professional, or trade purposes shall offer such examinations or courses in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals."

42 U.S.C. § 12189.

To show a violation of the ADA, a plaintiff must show that she is disabled, that her requests for accommodations were reasonable, and that the requests were denied. Ware v. Wyoming Bd. of Law Examiners. 973 F.Supp. 1339, 1356 (D.Wyo. 1997), aff'd., 161 F.3d 19 (10th Cir. 1998). If the organization engages in an interactive process and makes an individualized decision on the request for accommodations, the denial of the request will not necessarily constitute a violation of the ADA. 973 F.Supp. 1339, 1356-57.

The documents and correspondence in Exhibit 7, and the summary of accommodations in Exhibit 12, show that the NBME engaged in an interactive process with Mahmood concerning her request for accommodations, and that it agreed to provide the accommodations she requested. Exhibit 7; Exhibit 12. However, on the day of the examination, the stand for the extra large screen monitor the NBME provided for Mahmood was discovered to be broken before she began the exam. This does not mean that the NBME violated the ADA. The obligation is to "offer alternative accessible arrangements," which the NBME did. The

30

report of the testing facility concerning the August 8, 2011, incident shows that the facility staff were working to resolve the problem of the broken stand when the police detained Mahmood for questioning and ultimately arrested her.   Exhibit 4.

For all of the reasons discussed above, Mahmood is highly unlikely to prevail on the merits of any of her claims.   On this basis alone, Mahmood's motion for a preliminary injunction should be denied.

> **C.   Mahmood Has Not Shown That She Will Suffer Irreparable Harm If The Motion For Preliminary Injunction Is Denied.**

To support a request for injunctive relief, a plaintiff must prove that she will suffer irreparable harm unless an injunction issues.   Winter v. National Resources Defense Council, Inc., 129 S. Ct. 365, 375-76.   Irreparable harm means more than just hardship to a party:

> [I]rreparable harm, as a concept to be considered in the context of a preliminary injunction, is related to, but not the equivalent of, the hardship-to-the-parties [T]he requisite is that the feared injury or harm be irreparable-not merely serious or substantial. 'The word means that which cannot be repaired, retrieved, put down again, atoned for ....'

Philadelphia Housing Authority v. United States Dept. of Housing and Urban Development, 553 F.Supp. 2d 433, 441 (E.D. Pa. 2008), citing A.O. Smith Corp. v. F.T.C., 530 F.2d 515, 525 (3d Cir. 1976).

In this case, Mahmood has not articulated in her brief why she would suffer irreparable harm if the Court denied her request for a preliminary injunction. Presumably, however, she relies on the statement in paragraph 9 of her motion to the effect that barring her for three years would prevent her from ever becoming a physician "due to the fact that passing these tests within a given time is a prerequisite for graduating from medical school." Motion for preliminary injunction, ¶ 9.

Mahmood has not offered any evidence in support of her assertion that the USMLE-CIR's action in recommending a three-year bar on taking the USMLE will permanently prevent her from becoming a physician. For example, Mahmood has not divulged whether she has attempted to obtain an extension from her medical school of its time limit to successfully complete the USMLE examinations, and if so, what the status is of such request. Nor has Mahmood stated whether she has explored the possibility of transferring to another medical school, either within or outside the United States.

Not all U.S. medical schools require students to pass Step 2 CK to graduate. Of the 131 medical schools in the United States, 129, or 98 percent, require students to **take** the USMLE Step 2 CK to graduate medical school, while 99, or 76% of the total, require a student to **pass** the USMLE Step 2 CK to graduate. See Exhibit 11-B Chart of USMLE requirements at U.S.

medical schools.   Therefore, 32 medical schools in the United States do not require a student to pass USMLE Step 2 CK to graduate.   Exhibit 11, Dillon Affidavit, at ¶ 7.

Mahmood has already taken the USMLE Step 2 CK twice, and failed.[13]   Therefore, she has already fulfilled the graduation requirement for 32 medical schools in the United States (not to mention many additional schools outside the United States). Mahmood cannot show irreparable harm because she can request a transfer to any of the 32 schools that do not require students to pass the USMLE Step 2 CK to graduate.   Assuming she fulfills other requirements, she could graduate from her new school with her doctorate in medicine and take and pass Step 2 CS, Step 2 CK and Step 3 when she wishes to become licensed to practice medicine.

To the extent that the most likely outcome for Mahmood is a delay in completing her education and taking the USMLE, such a result is not irreparable harm.

In Boehm v. University of Pennsylvania School of Veterinary Medicine, 392 Pa. Super 502, 522-523, 573 A.2d 575, 586, app. denied, 589 A.2d 687 (1990), the Superior Court reversed the decision of the Court of Common Pleas, which granted a preliminary injunction against the University of Pennsylvania's attempt to enforce a one year suspension of two Veterinary

_____

[13]   This information is within the knowledge of the NBME.   Mahmood has also taken the USMLE Step 2 CS twice and failed.

33

students for academic dishonesty, holding that the suspension and consequent delay did not constitute irreparable harm.

See also, <u>Marsh v. Delaware State Univ.</u>, 2006 WL 141680 (D.Del. 2006) ("Plaintiff alleges that his education is being delayed; however, the Court is not persuaded that any delay amounts to irreparable harm."); <u>Sohmer v. Kinnard</u>, 535 F. Supp. 50, 52 (D. Md. 1982) (plaintiff, who had been expelled from a school of pharmacy because of a drug abuse incident, would not be irreparably harmed by reason of a delay in his studies); <u>Bleicker v. Board of Trustees of Ohio State</u>, 485 F. Supp. 1381, 1388-1389 (S.D. Ohio 1980) (One year delay in course of study at veterinary school is not irreparable harm because plaintiff will not be foreclosed from improving her professional skills and working with patients during the prelicense period."); <u>Timmerman v. University of Toledo</u>, 421 F. Supp. 464, 466 (N.D. Ohio, 1976) (Law student would not suffer irreparable injury by delay in attendance at law school.)

Accordingly, Mahmood has not made out the second required element for obtaining a preliminary injunction because she cannot show that she will be irreparably harmed by the three year bar that the USMLE-CIR has recommended.

**D.   The Balance Of The Equities Do Not Favor Mahmood.**

While one may feel sympathy for a person who alleges that she is psychiatrically impaired and who claims to have a

difficult home life, the balance of the equities does not favor issuing an injunction to reverse the determination of the USMLE-CIR regarding the appropriate response for Mahmood's Irregular Behavior.

Mahmood is one candidate out of thousands each year who use the USMLE system to achieve their professional goals.  There is no reason that she should be favored in that process by having her egregious and dangerous conduct (committing arson at a testing center on the 13th floor of a high rise building) excused by the court so she can more quickly become a licensed physician.

It is difficult to envision how granting an injunction to reverse the considered decision of the USMLE-CIR is more equitable than refraining from doing so.  The NBME respectfully submits that the equities favor maintaining the status quo, and encouraging Mahmood to use the time to work through the psychiatric and familial issues that purportedly led to her attempt to set the testing center on fire in the first place.

**E.  Mahmood's Requested Injunction Would Not Advance The Public Interest.**

The NBME's mission and purpose is the protection of the public by providing high quality, state-of-art assessment of healthcare professionals, and providing such assessment information to state medical boards and educational institutions.  Exhibit 10; Exhibit 11.  The integrity of the

35

USMLE provides the public a high degree of confidence that licensed physicians have achieved a minimum, common standard of competence.

The USMLE-CIR plays an integral role in affirming the reliability and integrity of the USMLE examination system. By deciding the merits of allegations of Irregular Behavior, the Committee assures that candidates observe standards of honesty and professionalism. Exhibit 8.

Simply put, while Mahmood's personal interests might be advanced by excusing her conduct and hoping that she has sufficiently recovered psychiatrically in the last eight months to avoid a repeat of her bizarre and dangerous conduct, there is no basis to say that the public interest would be served by such a result. Becoming a licensed physician is a privilege that affects the public, and requires an unquestioned adherence to standards of competence and conduct to protect that public trust. Helping Mahmood rush through the process so she can become licensed on her preferred schedule does not serve that public purpose.

**CONCLUSION**

The NBME respectfully submits that Mahmood is not likely to succeed on the merits, she will not suffer irreparable harm in the absence of a preliminary injunction, the balance of equities does not favor granting Mahmood's request, and issuing the

36

injunction requested by Mahmood will not serve the public interest. For all these reasons, the NBME respectfully requests that the motion for preliminary injunction be denied.


Respectfully submitted,


/s/ Michael Sacks
Neil J. Hamburg
Michael E. Sacks
ID. Nos. 32175 and 39774
HAMBURG & GOLDEN, P.C.
1601 Market Street, Suite 3310
Philadelphia, PA  19103-1443
(215) 255-8590

Attorneys for Defendant
National Board of Medical Examiners

## CERTIFICATE OF SERVICE

I, Michael Sacks, hereby certify that the foregoing Answer and Memorandum of Law of Defendant National Board of Medical Examiners in Opposition to Plaintiff's Motion for Preliminary and/or Permanent Injunction has been filed electronically and is now available for viewing and downloading from the Court's Electronic Case Filing System.  I further certify that a copy was served by regular mail on May 25, 2012, on the following:

William C. Reil, Esquire
42 S. 15th Street, Suite 210
Philadelphia PA 19102

/s/ Michael E. Sacks
Michael E. Sacks