| | | |
|---|---|---|
| MARIA MAHMOOD | : | UNITED STATES DISTRICT |
| 14717 Exbury Lane | : | COURT FOR THE EASTERN |
| Laurel, MD 20707 | : | DISTRICT OF PENNSYLVANIA |
| | : | |
| vs. | : | |
| | : | |
| NATIONAL BOARD OF | : | 2:12-cv-01544-TR |
| MEDICAL EXAMINERS | : | |
| 3750 Market Street | : | |
| Philadelphia, PA 19104 | : | JURY TRIAL DEMANDED |

## ORDER

AND NOW, this _____ day of _____, 2012, upon consideration of defendant's motion to dismiss and for summary judgment, and plaintiff's response thereto, it is hereby ORDERED and DECREED that defendant's motion is DENIED.

BY THE COURT:

_____
Magistrate Judge Timothy R. Rice
United States District Court Judge

```
LAW OFFICES OF WILLIAM C. REIL
BY: William C. Reil, Esquire
Identification No. 26833
42 S. 15th Street, Suite 210
Philadelphia, PA 19102
215-564-1635                                      ATTORNEY FOR PLAINTIFF
```

| | | |
|---|---|---|
| MARIA MAHMOOD | : | UNITED STATES DISTRICT |
| 14717 Exbury Lane | : | COURT FOR THE EASTERN |
| Laurel, MD 20707 | : | DISTRICT OF PENNSYLVANIA |
| | : | |
| vs. | : | |
| | : | |
| NATIONAL BOARD OF | : | 2:12-cv-01544-TR |
| MEDICAL EXAMINERS | : | |
| 3750 Market Street | : | |
| Philadelphia, PA 19104 | : | JURY TRIAL DEMANDED |

### **PLAINTIFF'S ANSWER TO DEFENDANT'S MOTION TO DISMISS**

Plaintiff, Maria Mahmood, through her undersigned counsel, hereby answers defendant's motion to dismiss, and in support thereof, it is averred as follows:

**I.  OVERVIEW OF THE CASE**

Initially, plaintiff should point out that defendants have not specifically affirmed or denied the averments of the complaint in a formal motion, but rather have submitted a memorandum of law as the response to plaintiff's complaint. Accordingly, it is argued without specific affirmation or denial of the averments of plaintiff's complaint, that the well-pleaded factual averments are admitted. Defendant has filed a memorandum of law without a motion with specific factual averments to be affirmed or denied.

For example, defendants have not denied paragraph 16 of the complaint, which asserts that plaintiff was in a public restroom, a substantial distance from where the testing was taking place. Also, defendants have not addressed the assertion in the complaint that there is no evidence that anyone taking the test was aware of plaintiff's

actions. Accordingly, it is argued that this factual averment in the complaint should be deemed as admitted. There is no denial of paragraph 19 in the complaint, which states that the facility where plaintiff took the USMLE did not have the proper disability accommodations under the ADA for plaintiff to take the test. Finally, there is no denial of paragraph 11. See complaint at Exhibit "A" and plaintiff's affidavit at Exhibit "B".

The complaint can best be summarized through the summary and general allegations, which are set out as follows:

> 5. This case arises out of the illegal suspension of plaintiff for a term of 3 years by defendant.
>
> 6. The suspension in question occurred after an incident on or about 08/08/11 at the Prometric Testing Center in Baltimore.
>
> 7. Plaintiff was suspended by defendant for "irregular behavior".
>
> 8. If plaintiff is barred from taking the USMLE CK Part II (US Medical Licensing Examination , Clinical Knowledge Part II) for this period of time, then she will be dismissed from her medical school.
>
> 9. The letter from the NBME, attached and incorporated as Exhibit "A", indicates that in addition to the 3-year suspension, the phrase "irregular behavior" will occur on plaintiff's future transcripts, which designation will make it difficult, if not impossible, to obtain a medical residency.
>
> 10. Plaintiff is bringing this lawsuit for injunctive relief and damages, including but not limited to, reinstatement with the NBME and the opportunity to take the next medical board exam (USMLE Clinical Knowledge Part II.).
>
> 11. Plaintiff was not allowed to take the USMLE Clinical Knowledge Part II Examination, but her attempt was counted.
>
> 12. At all times material herein, Maria Mahmood was a medical student at the University of Illinois at Chicago and has completed the academic requirements of medical studies.
>
> 13. Plaintiff will not be awarded her MD (Graduate Degree) unless she passes her USMLE Clinical Knowledge Part II Examinatiion.

14.     At all times material herein, the NBME was a medical licensing institution acting under color of state law.

15.     When plaintiff took her last USMLE Clinical Knowledge Part II in 08/08/11, there was an alleged incident which occurred in the ladies' room of the building where the testing center was located.

16.     The ladies' room was a public bathroom some distance from the testing room, which was used by anyone who was in the building where the medical test was being given.

17.     Plaintiff lit a small amount of toilet paper in the ladies' room which was quickly extinguished. No fire alarm was activated at any time.

18.     The medical exam was in no way affected by plaintiff's actions. Plaintiff was not allowed to take her USMLE Clinical Knowledge Part II on that day by Prometric Testing Center at Baltimore.

19.     There was no evidence that anyone who was taking the medical exam saw plaintiff perform any irregular conduct or that anyone in the exam room was even aware of what plaintiff did.

20.     As a result of this incident, plaintiff was arrested.

21.     Plaintiff is completing a sentence of community service in which she is to serve 250 hours of community service.

22.     When plaintiff completes her community service, she will petition the court to have her record expunged.

23.     The NBME suspended plaintiff on the basis of "irregular behavior", even though no irregular behavior occurred or was perceived in the examining room.

24.     As a result of this 3-year suspension, plaintiff is unable to complete her medical education in the required 7 years, which is mandated by the University of Illinois, College of Medicine at Chicago.

25.     Plaintiff is prohibited by the action of defendant from taking her United States Medical Licensing Exam, Clinical Knowledge Part II and United States Medical Licensing Exam Clinical Skill.

26.     Plaintiff is legally blind and she needed special equipment to take her licensing exam.

>   27.  The facility where plaintiff took her licensing exam did not have the proper disability accommodations under the ADA for plaintiff to take her exam.

Factually, this case is as follows: Plaintiff was a medical student at the University of Illinois at Chicago (UIC). She is 32 years old and has completed all coursework for graduation. The only qualification that plaintiff needs to receive her medical degree is to pass certain tests which are under the supervision of defendant National Board of Medical Examiners (NBME). Plaintiff was dismissed from UIC because of the report sent to her university by the NBME. Plaintiff went to take an examination under the auspices of the NBME on 08/08/11.

Plaintiff is legally blind and she had asked for an accommodation of her disability, which was approved. However, when plaintiff arrived at the examination site, she found that another candidate had also requested special accommodation and the magnifying device which she needed was not in working order. After this, plaintiff went to the public bathroom of the examination site. To vent her frustration, she lit a couple of pieces of toilet paper. No damage of any type was done, nor were the people who were taking the examination some distance away even aware of what transpired.

At the behest of the NBME, plaintiff was arrested by police and sentenced to probation and community service. She has a hearing on 06/19/12 to receive expungement of her record. Plaintiff does not seek to make excuses for her conduct, but points out that no damage was done, no one was injured, and her actions were unknown to the people taking the examination. As a result of this, the NBME suspended plaintiff for 3 years, and she was given a permanent admonition concerning this incident on her record. Accordingly, with the 3-year suspension, plaintiff would be unable to graduate within the

7-year time frame required by the UIC. Because of the communication from the NBME, plaintiff was dismissed without any degree. The practical effect of this is that plaintiff will be deprived of receiving a medical license, even though she has completed all required courses at UIC. De facto, defendant gave plaintiff a lifetime ban.

Procedurally, plaintiff filed a complaint against the NBME only. Even though the NBME may contract to a third-party to administer the test for them, it is the NBME who sets the rules and regulations for the test. Thus, the NBME stands in the shoes of the state to decide whether plaintiff will receive a medical license. In addition, the state was involved in this case because the NBME or its agents summoned police officers. As a result of the conduct of the NBME, as a practical matter, plaintiff will lose the opportunity to ever get a medical license. This lifetime ban is one of the things which distinguish plaintiff's situation from the other cases cited by defendant.

A complaint was filed against the NBME and a motion for preliminary injunction was also filed. The Court gave both parties until 05/25/12 to reply. Defendants are to reply to the motion for injunction, and plaintiff is to reply to the motion to dismiss. Plaintiff will be seeking an expungement of her conviction on 06/19/12, and on 06/22/12, she intends to appear before the UIC appeals board to appeal her dismissal.

## II. ARGUMENT AND CONCLUSIONS OF LAW

### Standard for Motion to Dismiss

A court should only dismiss a suit under F.R.C.P. 12(b)(6) if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, (1957). Similarly, "The district court must construe the complaint in a light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief. … When an allegation is capable of more than one inference, it must be construed in the plaintiff's favor. … Hence, a judge may not grant a Rule 12(b)(6) motion based on a disbelief of a complaint's factual allegations." *Columbia Nat Resources, Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir.1995)."

The *Conley* standard above was replaced by the United States Supreme Court in the case of *Bell Atlantic Corporation v. Twombly*, 127 S.Ct. 1955, 550 (2007). *Twombly* is somewhat more restrictive but still requires that the Court take the well-pleaded allegations of the complaint as true, along with any reasonable inferences thereof. The Court is required to determine whether the complaint alleges facts which give rise to relief, as opposed to mere speculation. *See* Federal Rule of Civil Procedure 12(b)(6). Looking at the complaint itself, it is averred that plaintiff has set forth a cause of action.

### Standard for Summary Judgment

Defendant's request, in addition to their motion to dismiss, summary judgment as well. It is argued that it is premature in this case to request summary judgment before the complaint has even been answered or before any discovery has been taken.

In order to prevail on a motion for summary judgment, defendants must show, taking facts and inferences in the light most favorable to plaintiff, that no reasonable fact finder could find for the plaintiff on an issue which is a case determinative. *Thomas v. Transamerica Accidental Life Insurance Company*, 761 F. Supp. (D.Or. 1991). Summary Judgement is inappropriate when credibility is at issue or different ultimate inferences can be reached. FRCP 56 (c). In addition to the evidence cited in Rule 56 (c), a court may take into account any material that would be admissible or usable at trial. Wright and Miller, Federal Practice and Procedure Section 2721 at 40 (2d. Ed. 1983). In evaluating a summary judgment motion, the record will be viewed in the light most favorable to the plaintiff. Summary judgment is appropriate only if there is no genuine issue of material fact such that a reasonable fact finder could find for the non-moving party. (Owens decision at 373). Much of defendants' arguments actually amount to the proffer of counter-evidence on a disputed factual issue. That defendants believe that they have evidence to convince a jury to see an issue their way, is to be distinguished from the tenet that no reasonable jury can fail to see an issue as defendants do.

It would be unfair to decide this case on summary judgment, since defendant has access to all of the information concerning the NBME. Furthermore, there are factual issues under the ADA concerning the accommodation of plaintiff, and the NBME's role involving the police and plaintiff's state university.

**NBME Is a State Actor Under These Circumstances**

Whether the NBME is to be considered a state actor under the circumstances of the Mahmood case, depends upon what this body did and authorized. The NBME was responsible for the administration of the medical test which plaintiff needed as a

prerequisite for graduation as a physician. This body, in a sense, stepped into the shoes of the state, which is ultimately responsible for licensing physicians. The NBME also had the final authority under the ADA, a federal statute, to provide reasonable accommodation for the infirmity of Ms. Mahmood. Finally, there is a further intersection between the NBME and the state, because plaintiff was arrested by municipal police officers and prosecuted by the State of Maryland. Parenthetically, the Court did not find plaintiff's actions to be serious, since it sentenced her to community service with the prospect of clearing her record. Plaintiff was never convicted of arson.

Defendant, in its Brief at pages 7 and 8, characterizes the NBME as a private organization which administers medical examinations that "assist state medical boards in making licensing decisions". That is not what the NBME did in the Mahmood case. Defendant's cite no enabling statute which allows the NBME to bar someone from testing for 3 years, let alone for a lifetime. If the state is the entity which actually licenses individuals as physicians, then logically only the state can prohibit someone from taking the USMLE. So either the NBME stood in the shoes of the state in barring plaintiff from taking the examination, or the action of the NBME was *ultra vires*, and thus null and void.

*Boggi*, which is frequently cited in defendant's Brief, is factually different from the instant case. It did not involve an issue of a medical student taking an examination, but rather it involved the rights of someone who was already a physician to require the Medical Review and Accrediting Council to retrain him. This case is distinguishable from the instant case. In *Boggi*, it was the State of Maryland which suspended the doctor's license for a year. In *Mahmood*, we have what amounts to a lifetime ban on

plaintiff taking the USMLE, without state intervention. To perform such an act, it is argued that the NBME either stood in the shoes of the state or exceeded its authority. No source of authority is cited by defendant to give the NBME the power it exercised in this case.

### Irregular Behavior

The NBME found that plaintiff committed the offense of "irregular behavior". Certainly, such a designation is not only overbroad, but void for vagueness. See *Connally v. General Construction Co.*, 269 U.S. 385 (1926). While plaintiff may have conducted herself in a manner which does not comport with the expected conduct of an NBME test-taker, in the end, no harm was done, except to plaintiff herself.

### Cause of Action Stated Under the ADA

Plaintiff was supposed to receive equipment with which she could comfortably view the test questions. Instead, another test-taker received the accommodation designed for plaintiff, and test officials were left trying to modify, unsuccessfully, equipment for plaintiff. Thus plaintiff was frustrated because she could not read the test. While plaintiff's response to this situation may have been incorrect, no harm resulted. See plaintiff's affidavit at Exhibit "B".

To prove a violation of the ADA, a plaintiff must show that she is disabled, that her requests for accommodation were reasonable and that the requests were denied. *Ware v. Wyoming Board of Law Examiners*, 973 F.Supp 1339, 1356 (1977). Plaintiff's affidavit, at Exhibit "B", sets forth that the ADA was violated.

**Commingling of Functions**

Mahmood also contends that the NBME proceedings violated her right to due process in another way. The judicial and investigative functions were commingled, because the NBME was in charge of both. This violates not only her right to due process, but also to an impartial tribunal. See *Lyness v. State Board of Medicine*, 605 A.2d 1204, 1210 (Pa. 1992).

**Amended Complaint**

If the complaint is insufficient due to a dearth of factual allegations, then there is a strong policy favoring the allowance of an amended complaint. "If a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. County of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008) (citation omitted). Furthermore, Federal Rule of Civil Procedure 15(a) directs the Court to "freely give leave when justice so requires." This principle applies equally in situations where a Plaintiff does not affirmatively seek a leave to amend, though a court may ultimately dismiss if the Plaintiff does not submit such an amended pleading. *Phillips*, 515 F.3d at 245."

**Civil Rights Cause of Action**

To state a cause of action under § 1983 for a deprivation of her constitutional rights, Ms. Mahmood must show that her injury resulted from an "official custom or policy" which was a driving force behind its or an official's actions. *Monell v. Dep't of Soc. Serv. Of City of NewYork*, 436 U.S. 658, 690-92, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In other words, Ms. Mahmood must plead and prove that: (1) there was a violation of her constitutional rights pursuant to an official policy, custom, or practice;

and (2) the NBME's policy or custom caused the violation. Id. Absent unusual circumstances, "proof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incidents includes proof that it was caused by an existing, unconstitutional municipal policy" attributable to a municipal policymaker or makers. *Turner v. City of Phila.*, 22 F. Supp. 2d 434, 437 (E.D.Pa. 1998) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 823-23, 105 S.Ct. 2427, 85 L. Ed. 2d 791 (1985)).

### Deliberate Indifference

In order to show reckless or deliberate indifference, it must be shown that officials knew or should have known that plaintiff had a particular need or vulnerability. *Colburn v. Upper Darby*, 838 F.2d 663 (3rd Cir. 1988). It is not necessary to find that the defendant had any specific intent to deprive the plaintiff of their civil rights in order to find in favor of the plaintiff. The plaintiff is entitled to relief if the defendant intended the actions which resulted in a violation of the plaintiff's rights. *Gomez v. Toledo*, 100 S. Ct. 1920 (1980); *Monroe v. Pape*, 365 U.S. 167 (1961); *Skehan v. Board of Trustees*, 538 F.2d 53 (3rd. Cir. 1976) (en banc). There is no dispute that the NBME was aware of plaintiff's disability.

### Gershenfeld

Plaintiff directs the Court to the case of *George Gershenfeld v. Supreme Court of Pennsylvania*, 641 F. Supp. 1419 (E.D.Pa. 08/19/1986). The *Gershenfeld* case dealt with the factual scenario where George Gershenfeld, an attorney, was disbarred by the Pennsylvania Supreme Court without proper due process. While *Gershenfeld* dealt with the suspension of an attorney and his license to practice law, the distinction between

*Gershenfeld* and the instant case is not significant. It is not significant because the action of the defendant in suspending plaintiff was a de facto taking of her potential to acquire a license to practice medicine.

The *Gershenfeld* Court issued a preliminary injunction and found that the failure to have a proper hearing was in violation of the due process clause of the Fourteenth Amendment. See *Gershenfeld* at paragraph 13.

The *Gershenfeld* Court states at paragraph 43: "It is undisputed that plaintiff's license to practice law, which has been in place for 35 continuous years, is a property interest sufficient to invoke due process protections. See *Barry v. Barchi*, 443 U.S. 55, 64, 61 L. Ed. 2d 365, 99 S. Ct. 2642 (1979)." The Court went on to say: "Once it is determined that due process applies, the question remains what process is due." See *Gershenfeld* at paragraph 43.

In *Barry v. Barchi*, a jockey was suspended by the state racing commission. In paragraph 49 of *Gershenfeld*: "In *Barchi*, supra, a case almost identical to the present action, the Supreme Court construed a New York statute which defined the disciplinary powers of the state harness racing commission. Under the statutory scheme, the commission was empowered, in the event that a post-race urinalysis indicated that a horse had been drugged, to summarily suspend the trainer of that horse who held his license from the state. The statute entitled the suspended licensee to a postsuspension hearing, but further provided that 'pending such hearing and final determination thereon, the action of the [Board] in . . . suspending a license . . . shall remain in full force and effect.'"

It is argued that the NBME's sanction of plaintiff amounted to a permanent ban on her receiving a license to practice medicine. Even under the best case scenario, plaintiff would be out of medical school for 3 years before she could take the USMLE. Even that is questionable given that plaintiff was dismissed from the UIC medical school, as a result of the report of the NBME.

**Defendants' Brief**

There are a number of inaccuracies concerning defendant's Brief which should be pointed out. At page 1 of defendant's Brief, it is stated that plaintiff set a fire at the test center. This is incorrect. Plaintiff was in a public bathroom some distance from the test center, and none of the examinees at the test center was even aware of plaintiff's actions. There is certainly a factual issue here. Furthermore, defendant states at several places in its Brief that plaintiff committed arson. First of all, procedurally there is nothing about arson mentioned in the complaint. Secondly, discovery will reveal that the charge of arson was dropped against plaintiff. Defendant states that plaintiff "set a fire at the examination" and that is simply wrong.

Defendant attempts to make this into a motion for summary judgment without allowing plaintiff to do the requisite discovery to rebut defendant's assertions. A police report would likely be inadmissible hearsay at trial. Furthermore, for a motion to dismiss, the general focus is on plaintiff's complaint and not on extraneous evidence. Defendant also states that Ms. Mahmood will be barred from taking any USMLEs for a period of 3 years. In reality, plaintiff was dismissed from her state medical college, the University of Illinois at Chicago, because the NBME sent information to the University. As a practical matter, this will bar plaintiff from ever becoming a physician because the dismissal, and

the reasons for that will be on her University record, and plaintiff will not be able to finish medical school within the required 7-year time period. In point of fact, plaintiff had finished all of her coursework, and the only thing she needed to graduate was to finish the 2 tests with the NBME.

It should also be noted that plaintiff was under psychiatric care at the time of this incident, and her problems were exacerbated by the failure of the testing center to make reasonable accommodation for Ms. Mahmood, who is legally blind. Discovery will reveal that this is not the first time that this lack of accommodation at the NBME has happened to plaintiff.

Defendant's also rely on the *Boggi* case in their Brief to state that defendant is not a state actor. Whether defendant is a state actor depends on what actions defendant has taken. First of all, *Boggi* is distinguishable from the instant case. *Boggi* involved a medical issue. Dr. Boggi sought medical retraining and in this context it was held that the NBME was not a state actor. In the *Mahmood* case, the NBME should be considered a state actor because of its interplay with the state in this incident. Not only did the NBME administer the United States Medical Licensing Examination, but through their agents, they involved the municipal police and caused the defendant to be dismissed from a state university. These issues are non-medical and they will ultimately result in plaintiff being barred from ever receiving a medical license from any state. After spending almost $400,000 for medical school loans, plaintiff will be unable to get financial aid for another medical school, even if she could be accepted.

The NBME found plaintiff to have committed so-called "irregular behavior". Even defendant put that in quotation marks in its Brief. Irregular behavior is void for

vagueness and such a finding violates plaintiff's constitutional rights. Irregular behavior essentially amounts to anything which the NBME does not like. Nowhere is there any description of harm or disruption that plaintiff caused to the test.

Defendant in its Brief requests summary judgment without having answered the complaint and without any depositions or interrogatories. Rule 56 of Civil Procedure allows the non-movant to make a declaration. Plaintiff has not had the opportunity to depose anyone from the NBME and certainly, the material that defendant has attempted to enter for summary judgment purposes is by and large within the exclusive purview of the defendant. In short, plaintiff should be given the opportunity to take discovery before summary judgment is considered. Furthermore, there are certainly a number of factual issues in this case, not the least of which is whether plaintiff was discriminated against by the defendant under the ADA. Defendant admits that it did not have the proper equipment to accommodate plaintiff at the testing site. There is certainly an issue of material fact as to whether defendant comported with the ADA in this instance. It should be noted that with what the police charged Mahmood is irrelevant. The charge of arson was dropped and on 06/19/12 Mahmood has a court hearing to have her record expunged.

Defendant at page 8 of its Brief, again mentions that Mahmood set a fire at the testing center. This is simply not true. Discovery will reveal that the incident happened in a public bathroom, not at all connected to the testing center, and some distance from it.

Defendant points out, at page 8 of its Brief, that the NBME informed Mahmood that her USMLE record will include an annotation showing a finding of "irregular behavior", as will her UIC transcripts. Such information will also be reported to the federation of state medical boards. It would appear from this statement that this incident,

which of course only happened one time, will be permanently recorded in Mahmood's medical records for every state, even if the offense is ultimately expunged by the court.

At page 9 of defendant's Brief, it is admitted out that the facility did not have the proper accommodations for Mahmood on the day of the examination. There is no explanation as to why the testing center did not have a backup monitor in the event that the monitor at the site did not work, which was the case. Mahmood will testify that this is not the first time she has had difficulty with accommodation by the NBME. The defendant quotes the *Boggi* case, but this is distinguishable because it deals with a purely medical issue. Furthermore, this case is sui generis because the NBME's actions occurred before the legal process had been completed, and secondly, this so-called 3-year suspension amounts to a lifetime ban on Mahmood because of the 7-year deadline to complete her medical degree. Mahmood is required to pass the 3 medical licensing tests to receive her degree from UIC. The NBME is not just a gatekeeper in terms of a medical license, but in this particular case the NBME has the power to ban Mahmood from the medical profession for life. The NBME must have known that most medical schools require one to complete a medical degree within 7 years, and that a 3-year ban coupled with the requirement that one has to pass the 3 NBME tests, together with 4 years of medical school, would make that impossible for Mahmood to complete medical school. In effect, the NBME's ban deprived Mahmood from the opportunity of ever becoming a physician.

This is why, what is in effect, a permanent ban for one incident which caused no harm constitutes "cruel and unusual" punishment for Mahmood. If the courts see fit to expunge Mahmood's record as expected, then this seems at odds with the idea that the

NBME can impose a lifetime ban on Mahmood. A central issue in this case is whether the NBME in effect posed a lifetime ban from becoming a physician on Mahmood. The defendant certainly must have known that its so-called 3-year ban would be a lifetime ban on plaintiff. Certainly, the defendant knows that medical school is 4 years and that putting a 3-year ban on Mahmood would make it impossible to pass the 3 tests required to get a medical degree within a 7-year period. That the defendant chose to make the ban 3 years, certainly was not an accident. Defendant made the ban 3 years to obscure the fact that, with great probability, Mahmood would be banned from the medical profession. When the defendant can ban plaintiff for life from being a physician under the guise of a 3-year ban, defendant functions as a state actor, since the NBME has deprived plaintiff of ever receiving a state medical license. One of the fundamental factual issues in this case is whether the 3-year ban by the defendant is a temporary ban or a de facto licensing ban.

At page 26 of the Brief, defendant addresses the argument of plaintiff that there was an impermissible commingling of functions by defendant. Defendant answers that *Lyness* does not apply as long as appropriate walls of separation are erected within the organization in question. There is no evidence that such walls of separation exist in the NBME. Furthermore, this is a factual issue to be determined in the case and does not lend itself to summary judgment.

Finally, on page 28, defendant addresses violations of the ADA. There is certainly no dispute that Mahmood was legally blind and entitled to reasonable accommodation. The NBME failed to provide that reasonable accommodation, and discovery will reveal that this is not the first occurrence. It is not asking much for the defendant to check whether the monitor was working before the day of the test. Whether the NBME engaged

in the interactive process that defendant believes it did, is not a matter to be determined by summary judgment.

### III.  SUMMARY AND CONCLUSION

Taking the well-pleaded facts in the complaint in the light most favorable to the plaintiff, the motion to dismiss of defendant should be denied for the following reasons:

1. Plaintiff's actions did not create any harm, so as to warrant her probable exclusion for life as a physician by the NBME.

2. The charge of "irregular behavior" by the NBME was overbroad and void for vagueness.

3. Plaintiff did not receive reasonable accommodation for her legal blindness at the test center which was the agent of the NBME.

4. The NBME was a state actor under these circumstances: it administered the United States Medical Licensing Examination; its actions deprived plaintiff of ever receiving a state medical license; it caused plaintiff to be arrested by municipal police; and it caused the University of Illinois to dismiss plaintiff, even though she successfully completed all courses for graduation.

5. The actions of the NBME taken against plaintiff constitute cruel and unusual punishment because they are excessive, and constitute a lifetime exclusion, and the NBME impermissibly commingled its judicial and investigatory functions.

WHEREFORE, plaintiff submits that defendants' motion be denied.

Respectfully submitted,

*William C. Reil*

William C. Reil, Esquire
Attorney for Plaintiff
05/25/12

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the attached document (s) was served upon all other parties or their counsel of record by:

|   |   |
|---|---|
| X _____ | Regular First Class Mail |
| _____ | Facsimile |
| _____ | Certified Mail |
| _____ | Hand-Delivered |
| X _____ | Electronic Filing |

*William C. Reil*
William C. Reil, Esquire
Attorney for Plaintiff
42 S. 15th Street, Suite 210
Philadelphia, PA 19102
05/25/12