IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARIA MAHMOOD | : |
| | : |
| Plaintiff, | : |
| | : CIVIL ACTION |
| v. | : |
| | : |
| NATIONAL BOARD | : NO. 2:12-CV-01544-PD |
| OF MEDICAL EXAMINERS | : |
| | : |
| Defendants. | : |

**REPLY MEMORANDUM OF LAW OF DEFENDANT NATIONAL BOARD
OF MEDICAL EXAMINERS IN SUPPORT OF ITS MOTION TO DISMISS
THE COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6), OR IN THE
ALTERNATIVE FOR SUMMARY JUDGMENT UNDER FED. R. CIV. P. 56**

Neil J. Hamburg
Michael E. Sacks
ID. Nos. 32175 and 39774

HAMBURG & GOLDEN, P.C.
1601 Market Street, Suite 3310
Philadelphia, PA  19103-1443
(215) 255-8590

Attorneys for Defendant
National Board of Medical
Examiners

The National Board of Medical Examiners (NBME) files this reply memorandum in support of its motion to dismiss the complaint because some of the points raised by Maria Mahmood in her answer and brief are so inaccurate or misleading as to require a response. The NBME does not here attempt to respond to all of the assertions in Mahmood's brief. The absence of a response should not be construed as acquiescence to any point made by Mahmood.

1. **Mahmood's Attempt To Minimize The Seriousness Of Her Actions Is Misleading And Highly Disturbing.**

Throughout her brief, Mahmood minimizes her actions in intentionally setting a fire. For example, she says on page 4 of her brief[1] that she "lit a couple pieces of toilet paper" and that no damage was done nor were people aware of what transpired. On page 8 of the brief, Mahmood states that because the Court sentenced her to community service, it "did not find plaintiff's actions to be serious[.]"[2]

As noted in the NBME's principal brief, Mahmood brought a wick made of string and flammable liquid with her to the testing site, which she then used to set a fire. Exhibit 2, Police Report; Exhibit 4, Prometric Report. That she was not a more successful arsonist is something that she and others in the high

---

[1]  Mahmood did not number the pages of her brief.
[2]  There are many reasons why the Court may have sentenced Mahmood to community service. It is doubtful that the sentencing court would agree with the statement that it "did not find plaintiff's actions to be serious[.]"

rise building can be grateful for, but it does not change what she did. Her suggestion that her actions were no big deal is wrong and a shocking position for her to take before this Court.

Moreover, Mahmood's statement that she set pieces of toilet paper on fire "to vent her frustration" (Mahmood brief, p. 4) is inconsistent with the with the premeditated need to bring the wick and flammable liquid to the testing center. It also contradicts her position before the USMLE-CIR. In the letter from the USMLE that Mahmood attached to the complaint as Exhibit 1-A, the USMLE quoted her as saying that because of the anxiety and panic she experienced leading up to the day of the exam, she lit a fire "to create a diversion that would delay" the exam. Exhibit 1-A. While the factual discrepancy is not legally significant for present purposes, it reinforces that Mahmood is minimizing and mischaracterizing her actions to mislead the court.

    2.   **Each Of Mahmood's Arguments Relating To State Action Should Be Rejected.**

        A.   **Mahmood's Statement That The NBME "Stands In The Shoes Of The State" And Is A State Actor Because It Administers The USMLE Is Wrong, And Is Contradicted By <u>Boggi</u>.**

Mahmood asserts that because the NBME administers the USMLE, which state medical boards look to in their licensing of physicians, the NBME stood "in the shoes of the state" by barring Mahmood from taking USMLE exams for three years. See,

e.g, Mahmood brief, p. 5, 8.  Mahmood is wrong.  The issue is controlled by Boggi v. Medical Review and Accrediting Council, 2009 WL 2951022 (E.D.Pa. 2009), aff'd, 415 Fed. Appx. 411 (3d. Cir. 2011), discussed at length in the NBME's principal brief.

In Boggi, the court held that the NBME is not a state actor by virtue of developing and administering tests for health professionals that are used by states in regard to licensing. The following statement from Boggi, is equally applicable here:

> Plaintiff's Complaint contains no allegation that NBME does anything other than write the test and establish standards.  This is consistent with NBME's description of its role as an independent, non-profit company that provides tests for health professions. **NBME performs tests and evaluates doctors. It does not license physicians and has no power over any state with respect to who may or may not practice medicine in a given jurisdiction. Simply because states may choose to rely on NBME's evaluation does not render them state actors.**

2009 WL 2951022, *8, emphasis added.

Mahmood's attempt to distinguish Boggi by noting that in Boggi the State of Maryland had suspended the plaintiff, while in this case, according to Mahmood, "we have what amounts to a lifetime ban on plaintiff taking the USMLE without state intervention" (Mahmood brief, p. 8-9) is misguided.  In Boggi, the plaintiff's medical license had been suspended by the State of Maryland years earlier.  In his lawsuit against the NBME and the Medical Review and Accrediting Council (MRAC), the court found no state action on the part of the NBME for actions which,

3

according to Boggi, prevented him from becoming re-licensed. The similarity between the present case and Boggi is apparent: in both cases, the state makes the licensing decision, but is not involved with the testing, which the NBME, a private actor, administers. Administering the testing does not make NBME a state actor.

      **B. Mahmood's Assertion That If The State Is The Entity That Actually Licenses Individuals As Physicians, Then Only The State Can Prohibit Someone From Taking The USMLE, Is Illogical And Incorrect.**

Mahmood argues that if the state is the entity that actually licenses individuals as physicians, then only the state can prohibit someone from taking the USMLE. Mahmood brief, p. 8. That statement is neither logical nor correct. The USMLE has eligibility criteria that define who may take examinations, and those criteria are set by the USMLE Composite Committee, not by individual states.[3] To use a hypothetical example, a student caught cheating on USMLE might be barred for years (or permanently) from taking further examinations, and no state is involved in the process. Such a determination is made by the USMLE to maintain the integrity of the examination system that

---

[3] The NBME provided an affidavit from Gerard Dillon, Ph.D., who is employed by the NBME as the Vice President, USMLE, as Exhibit 11 to the NBME's memorandum of law in opposition to Mahmood's motion for preliminary injunction, and that affidavit is also attached hereto as Exhibit 11. Dr. Dillon addresses, among other things, USMLE eligibility criteria.

4

it administers and on which states rely.  It is incorrect to conflate such activities with state action.

        **C.**    **The NBME Did Not Become A State Actor When The Police Were Called To Investigate The Arson.**

Mahmood's argument that state action is somehow implicated "because the NBME or its agents summoned police officers" (Mahmood brief, p. 5), or that there is an "intersection between the NBME and the state, because plaintiff was arrested by municipal police officers and prosecuted by the State of Maryland" (Mahmood brief, p. 8), is absurd.[4]  Simply put, calling the police for assistance after an accident, crime or other incident does not make the caller a state actor.  Not surprisingly, Mahmood cites no authority for this assertion about state action.

Even if Mahmood's further suggestion that the NBME "caused the defendant [sic] to be dismissed from a state university" (Mahmood brief, p. 14) were correct, it fails to show state action by the NBME.  <u>Each medical school establishes its own curriculum and the timetable in which it must be completed.  The NBME plays no role in establishing such timelines, and they are not considered for purposes of the USMLE-CIR's recommendations regarding cases of irregular behavior.</u>

---

[4]    To the extent that Mahmood claims that the NBME called the police, she is wrong.  The Property Manager of the building where the Prometric Testing Center is located called the police.  Exhibit 2, Police Report.

5

None of these alleged actions by the NBME make it a state actor for purposes of Section 1983, and Mahmood does not even attempt to place such arguments within the legal framework that the courts use to analyze the issue, which are discussed at length in Boggi and quoted at length in the NBME's principal brief.[5]

> D. Mahmood's Suggestion That The NBME's "Final Authority" Under The Americans With Disabilities Act Makes It A State Actor is Wrong.

On page 8 of her brief, among her other arguments that the NBME is a state actor, Mahmood suggests that the NBME's authority to provide accommodations under the ADA makes it a state actor. That suggestion is also preposterous, as if any entity that obeys a federal law thereby becomes a state actor. The pertinent section of the ADA is applicable to "any person" that offers "examinations or courses related to applications, licensing, certification, or credentialing for secondary or post-secondary education, professional, or trade purposes ..." 42 U.S.C. § 12189. The fact that a private entity follows the ADA does not make it a state actor, any more than a bank, hospital or factory that complies with a federal law becomes a state actor.

---

[5] For reasons that are unclear, Mahmood also discusses the doctrine of Monell v. Dept. of Social Services of City of New York, 436 U.S. 658, 98 S.CT 2018 (1978), as part of her argument related to state action. Monell stands for the proposition that a municipality may be held liable under Section 1983. That issue is not relevant to the present controversy.

6

### 3. Mahmood's Discussion Of The Gershenfeld Case Is Misplaced.

Mahmood discusses at length the case of Gershenfeld v. Justices of the Supreme Court of Pennsylvania, 641 F. Supp. 1419 (E.D.Pa. 1986), arguing that Gershenfeld means that the NBME violated her due process rights. The critical distinction between Gershenfeld and the present case is that Gershenfeld involved state action. In Gershenfeld, the Commonwealth of Pennsylvania, through the Supreme Court of Pennsylvania, attempted to summarily suspend the plaintiff's law license.

Leaving aside the issue of state action, the issue in Gershenfeld involved procedural due process — that is, whether the Commonwealth's process of summary suspension of a law license without a clear time-table for a post-deprivation hearing violated due process.

As set forth in the NBME's principal brief, even if there were state action, Mahmood does not state a cause of action for a violation of procedural due process. Mahmood received notice and an opportunity to be heard. She had the opportunity to submit documents, which she did, and to participate personally in a hearing before the USMLE Committee for Individualized Review, which she declined. Therefore, even if the NBME were a state actor, Mahmood cannot show that it deprived her of procedural due process.

### 4. Mahmood's Argument That The NBME Violated The Americans With Disabilities Act Should Be Rejected.

Mahmood's argument on page 9 of her brief that the NBME violated the Americans with Disabilities Act because of problems with the computer monitor is incorrect. Mahmood's affidavit, submitted to support this claim, suggests no more than technical difficulties, and not a denial of a request for accommodations.

As set forth in the NBME's principal brief, to prevail on an ADA claim, a plaintiff must show that her request for reasonable accommodations was denied. The extensive history of the NBME providing accommodations to Mahmood for multiple USMLE exams, including for the Step 2 CK test at issue, shows that her requests were not denied. They were granted. See Exhibit 7.[6] Taking Mahmood's allegations at face value, problems with the stand for a computer monitor simply do not mean that Mahmood's

---

[6] In its answer and brief in opposition to Mahmood's request for preliminary injunction, the NBME provided an affidavit from Catherine Farmer, Psy.D., who is employed by the NBME as the Director of Disability Services. She summarizes in her affidavit the many times she granted accommodations to Mahmood for USMLE exams. Dr. Farmer's affidavit also demonstrates that, contrary to the implication in Mahmood's affidavit, Mahmood never requested, and therefore was never entitled to be seated in a separate testing room within the testing center as an accommodation. Prometric staff erroneously placed her enlarged monitor in the separate testing room which was reserved for another examinee. Mahmood was initially placed in the separate testing room to take her tutorial. During the tutorial, a proctor came into the room to tell her she would need to move to another station within the main testing center to begin her examination. The proctor told her she would be moved after she finished the tutorial. The stand for the special monitor broke after the tutorial and before Mahmood began taking the actual examination. Mahmood set the fire before she began the tutorial and before she was told she would have to change testing stations.

request for accommodations was denied, or that the NBME violated the ADA.

**5.   Mahmood's Argument That The Term "Irregular Behavior" Is Overbroad Or Vague Should be Rejected.**

The term "irregular behavior" is defined in the USMLE's Policies and Procedures Regarding Irregular Behavior, Exhibit 8. The term is not vague. It relates to behavior on the part of examinees that would or could subvert the examination process. Among the examples given is "disruptive or unprofessional behavior at a test center." It is ludicrous to suggest that lighting a fire in the restroom at the test center is not such behavior.

**CONCLUSION**

For all the foregoing reasons, and those set forth in the NBME's motion and principal brief, the NBME requests that this Court dismiss all claims set forth in the complaint.

                                Respectfully submitted,

                                /s/ Michael E. Sacks
                                Neil J. Hamburg
                                Michael E. Sacks
                                ID. Nos. 32175 and 39774
                                HAMBURG & GOLDEN, P.C.
                                1601 Market Street, Suite 3310
                                Philadelphia, PA  19103-1443
                                (215) 255-8590

                                Attorneys for Defendant
                                National Board of Medical
Dated:  June 5, 2012            Examiners

**CERTIFICATE OF SERVICE**

I, Michael Sacks, hereby certify that the foregoing Reply Memorandum in Support of the Motion of Defendant the National Board of Medical Examiners to Dismiss the Complaint Pursuant to Fed. R. Civ. P. 12(b)(6), or in the Alternative for Summary Judgment Under Fed. R. Civ. P. 56, has been filed electronically and is now available for viewing and downloading from the Court's Electronic Case Filing System. I further certify that a copy was served by regular mail on June 5, 2012, on the following:

>William C. Reil, Esquire
>42 S. 15th Street, Suite 210
>Philadelphia PA 19102

>/s/ Michael E. Sacks
>Michael E. Sacks