**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MARIA MAHMOOD, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| NATIONAL BOARD OF | : | No. 12-1544 |
| MEDICAL EXAMINERS, | : | |
| Defendant. | : | |

**MEMORANDUM**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant National Board of

Medical Examiners ("NBME") seeks to dismiss Plaintiff Maria Mahmood's claims of cruel and

unusual punishment, violation of due process, commingling of investigative and adjudicatory

functions, and failure to accommodate a disability.  Alternatively, pursuant to Rule 56(a), NBME

seeks summary judgment on these claims.  Mahmood, meanwhile, seeks a preliminary or

permanent injunction requiring NBME to allow her to take the U.S. Medical Licensing Exam,

Clinical Knowledge Part II ("USMLE CK-II").  For the following reasons, NBME's motion to

dismiss is GRANTED on Counts I-III and DENIED on Count IV, and Mahmood's motion for a

preliminary or permanent injunction is DENIED.

I.      **BACKGROUND**[1]

Mahmood attended medical school at the University of Illinois at Chicago ("UIC").

Compl. ¶ 12, Mahmood v. Nat'l Bd. Med. Exam'rs, No. 12-1544 (E.D. Pa. Mar. 27, 2012).  One

---

[1] I accept all of Mahmood's well-pled factual allegations as true.  See Grammar v. John J.
Kane Reg'l Ctrs.-Glen Hazel, 570 F.3d 520, 523 (3d Cir. 2009).

of UIC's graduation requirements is the successful completion of the USMLE CK-II, for which

Mahmood registered.  Id. ¶ 13.

    Mahmood is legally blind and required special equipment to take the examination.  Id. ¶

26.  On the day of the examination, NBME "did not have the proper disability accommodations

under the ADA" that Mahmood required.  Id. ¶ 27.  She then started a small fire in a restroom in

the examination building, which led to her arrest.  Id. ¶¶ 17, 20.  She pled guilty to malicious

destruction of property.[2]  NBME subsequently suspended Mahmood from taking the USMLE

CK-II for three years on the basis of "irregular behavior."  Id. ¶ 23.

    Mahmood filed her complaint on March 27, 2012.  In Count I, she maintains NBME

violated her "constitutional rights . . . to be free from cruel and unusual punishment."  In Count

II, she alleges NBME violated her Fourteenth Amendment right to procedural and substantive

due process.  In Count III, she argues NBME violated her civil rights by "commingl[ing] the

investigative and adjudicative functions involving the charges against" her.  Finally, in Count IV,

Mahmood claims NBME violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. §

12101 et seq., by failing to reasonably accommodate her blindness.  On April 19, 2012,

Mahmood moved for a preliminary or permanent injunction requiring that NBME permit her to

take the USMLE CK-II.

    NBME maintains it is not a state actor and thus not subject to suit under 42 U.S.C § 1983

for Counts I-III.  Mot. Dismiss, Mahmood v. Nat'l Bd. Med. Exam'rs, No. 12-1544 (E.D. Pa.

Apr. 24, 2012).  It further maintains Mahmood fails to state a claim under which relief can be

---

    [2] This fact is not included in Mahmood's complaint but may be found in the criminal
docket for her case.  Docket, Maryland v. Mahmood, No. 5B02131722 (Cir. Ct. Md. Balt. Jan.
13, 2012).

granted pursuant to the ADA.  Id.

## II.   LEGAL STANDARD

   A.   Motion to Dismiss[3]

   A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint.  Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993).  "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. (citing Twombly, 550 U.S. at 556).

   I must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  Grammar, 570 F.3d at 523; see also Byers v. Intuit, Inc., 600 F.3d 286, 291 (3d Cir. 2010).  I need not, however, credit a plaintiff's legal conclusions or "threadbare recitals of the elements of a cause of action supported by mere conclusory statements."  Iqbal, 556 U.S. at 678.

---

   [3] NBME moves, in the alternative, for summary judgment.  No discovery has been taken in this matter, and NBME has not filed an answer to the complaint.  Thus, summary judgment would be premature.  See Doe v. Abington Friends Sch., 480 F.3d 252, 257 (3d Cir. 2007) ("[I]t is well established that a court is obliged to give a party opposing summary judgment an adequate opportunity to obtain discovery. This is necessary because, by its very nature, the summary judgment process presupposes the existence of an adequate record.") (quotations and citations omitted).

B.     Motion for Preliminary Injunction[4]

"A plaintiff seeking a preliminary injunction must establish that [s]he is likely to succeed

on the merits, that [s]he is likely to suffer irreparable harm in the absence of preliminary relief,

that the balance of equities tips in [her] favor, and that an injunction is in the public interest."

Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008).  A mere possibility of

irreparable harm is insufficient.  "'[I]njunctive relief [is] an extraordinary remedy that may only

be awarded upon a clear showing that the plaintiff is entitled to such relief.'"  Chester ex rel.

N.L.R.B. v. Grane Health Co., 666 F.3d 87, 95 (3d Cir. 2011) (quoting Winter, 555 U.S. at 22).

**III. DISCUSSION**

A.     Counts I-III

Counts I, II, and III allege constitutional violations under § 1983, which requires action

under color of state law.  See Lugar v. Edmondson Oil Co., 457 U.S. 922, 924 (1982).  Mahmood

maintains NBME acted under color of state law when it suspended her from taking the USMLE

CKE-II for three years.  Pl.'s Answer Def.'s Mot. Dismiss at 9, Mahmood v. Nat'l Bd. Med.

Exam'rs, No. 12-1544 (E.D. Pa. May 25, 2012) [hereinafter Pl.'s Answer].  She further claims

that NBME's suspension effectively will be a "lifetime ban" on her attempt to become a

physician, thus making the suspension an action under color of state law.[5]  Id. at 6.

---

[4] Mahmood moves for either a preliminary or permanent injunction.  A permanent
injunction would be premature because the appropriate time for such an injunction would be after
a trial on the merits.  See Univ. Tex. v. Camenisch, 451 U.S. 390, 396 (1981) ("Where . . . a
federal district court has granted a permanent injunction, the parties will already have had their
trial on the merits.").

[5] Mahmood also claims NBME acted under color of law when one of its employees
contacted the police, which ultimately resulted in Mahmood's arrest for starting the fire.  Pl's
Answer at 9.  I disagree.  Following this rationale, anyone who reports criminal activity to the

There are various approaches to evaluate whether an action is under color of state law. First, the exclusive government function approach assesses whether a state delegated a power "'traditionally exclusively reserved to the state.'"  Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 157 (1978) (quoting Jackson v. Metro. Edison Co., 419 U.S. 345, 352 (1974)).  Second, the joint participation or symbiotic relationship test examines whether the "State has so far insinuated itself into a position of interdependence with [a defendant] that it must be recognized as a joint participant in the challenged activity."  Burton v. Wilmington Parking Auth., 365 U.S. 715, 752 (1961).  Third, the close nexus approach analyzes "whether there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself."  Jackson, 419 U.S. at 351.

These tests are not mutually exclusive, but the overarching requirement is "'that the defendant in a § 1983 action . . . exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'"  Groman v. Twp. of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995) (quoting West v. Atkins, 487 U.S. 42, 49 (1988)).  This is a question of law.  See Barber v. Sheppleman, No. 10-3620, 2011 WL 4465840, at *2 (E.D. Pa. Sept. 26, 2011) (describing "color of state law" requirement as a legal issue).

NBME is not a state actor.  Boggi v. Med. Rev. & Accrediting Council, No. 08-4941, 2009 WL 2951022, at *5-9 (E.D. Pa. Sept. 15, 2009) (Schiller, J.), aff'd 415 F. App'x 411 (3d Cir. 2011).[6]  The plaintiff in Boggi lost his medical license and sought re-licensing through

---

police becomes a potential state actor.

[6] The phrase "state actor," as used here and in Boggi for the § 1983 determination, should not be confused with the "state action" requirement of the Fourteenth Amendment.  The tests for the two "are identical in most contexts," Groman, 47 F.3d at 638 n.15, but my analysis is limited

NBME and MRAC, another private licensing institution.  Id. at *1.  The plaintiff subsequently

filed a § 1983 claim, claiming both institutions violated his Fourteenth Amendment property

right in his medical license.  Id.  The court dismissed the claim, finding NBME was not a state

actor.  Id. at *5-7.  Applying the "close nexus" test, the court noted "[t]here is no indication that

the State of Maryland, or any other state, holds sway over the policies or procedures of NBME

nor is there any evidence that Maryland plays any role in devising questions or medical tests for

those seeking to become doctors."  Id. at *6.  The court also rejected the claim of a "symbiotic

relationship," explaining that, "[a]t most, NBME and MRAC are companies with which certain

states deal in the realm of medical licensing.  But that interaction does not render them state

actors."  Id.  Finally, the court noted NBME was not performing a "traditionally exclusive

government function" because "[t]esting and test score reporting are not tasks left solely to the

state."  Id. at *7; see also McKeesport v. Accreditation Council Graduate Med. Educ., 24 F.3d

519, 525 (3d Cir. 1994) ("The evaluation and accreditation of medical education in this country

is neither a traditional nor an exclusive state function.").  The court concluded:

> The State of Maryland, through the Board, is responsible for licensing doctors.
> [The plaintiff] cannot file a civil rights lawsuit seeking to reinstate his license
> against those not involved in the decision-making process regarding his ability to
> practice medicine.  None of his allegations gives [sic] rise to an inference that
> Maryland acted with Defendants, controlled Defendants, instructed Defendants, or
> were even aware of Defendants interactions with [the plaintiff].  The actions of
> NBME and MRAC are not attributable to Maryland and thus neither Defendant,
> nor any of the persons working for either Defendant, can be deemed a state actor.

Boggi, 2009 WL 2951022, at *9.

NBME did not act under color of state law in suspending Mahmood.  NBME does not

_____

to § 1983's "color of state law" requirement.

license physicians; rather, it provides testing services and exam results that states may choose to use.  See id. at *6.  There is no "close nexus" because Maryland plays no role in developing NBME's exams or disciplinary procedures.  Furthermore, there is no "symbiotic relationship" between Maryland and NBME.  Rather, NBME acted independently in suspending Mahmood; what Maryland does with this information is another matter within the state's discretion.  Finally, as described in Boggi, the medical testing services provided by NBME are not an "exclusive state function."  Id. at *7.  Accordingly, Counts I-III must be dismissed.

   B.  <u>Count IV</u>

   Mahmood claims NBME violated the ADA by failing to provide her an accommodation. "Any person that offers examinations or courses related to applications, licensing, certification, or credentialing for secondary or post-secondary education, professional, or trade purposes shall offer such examinations or courses in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals."  42 U.S.C. § 12189.  "To succeed on a failure-to-accommodate claim, a plaintiff must prove: '(1) that she is disabled, (2) that her requests for accommodations are reasonable, and (3) that those requests have been denied.'"  Mucci v. Rutgers, No. 08-4806, 2011 WL 831967, at *21 (D.N.J. Mar. 3, 2011) (quoting D'Amico v. N.Y. State Bd. Law Exam'rs, 813 F. Supp. 217, 221 (W.D.N.Y. 1993)).

   Mahmood's complaint alleges few details to support her claim that NBME failed to reasonably accommodate her blindness.  She claims she is legally blind and "needed special equipment to take her licensing exam."  Compl. at ¶ 26.  Her claim that NBME "did not have the proper disability accommodations under the ADA," id. ¶ 27, however, is not supported by any factual background and resembles a mere "recitation of the elements" of a cause of action, see

Iqbal, 556 U.S. at 681.  For example, she does not attempt to describe the accommodation she requested or NBME's response to such a request.  The paucity of factual allegations supporting the ADA claim makes determination of its plausibility difficult.

Mahmood requests leave to file an amended complaint "[i]f the complaint is insufficient due to a dearth of factual allegations."  Pl.'s Answer at 11.  I must "permit a curative amendment unless such an amendment would be inequitable or futile."  Phillips v. Cnty. of Allegheny, 515 F.3d 224, 245 (3d Cir. 2008).  Although its filings show NBME clearly disputes Mahmood's allegations, NBME cannot show that an amendment would be inequitable or futile -- especially when I must rely upon the complaint.  Accordingly, I will deny NBME's motion to dismiss Count IV and grant Mahmood leave to file an amended complaint within twenty-eight days solely with respect to this count of the original complaint.[7]

C.       Preliminary Injunction

Mahmood's ADA claim does not warrant a preliminary injunction.  She cannot show a likelihood of success on the merits, the likelihood of irreparable harm is speculative, and she cannot show that a balance of equities or the public interest favors granting an injunction.[8]

The merits of Mahmood's ADA claim are subject to debate.  Documents provided by NBME show it was trying to repair her custom-ordered monitor when Mahmood started the fire.

---

[7] Mahmood may amend the complaint or, if she does not desire to do so, may "assert[] [her] intent to stand on the complaint."  See Borelli v. City of Reading, 532 F.2d 950, 951 n.1 (3d Cir. 1976).  If she does not file an amended complaint within twenty-eight days of this memorandum opinion, NBME may renew its motion to dismiss with respect to Count IV.  Id.

[8] I need not address the preliminary injunction with respect to Counts I-III.  See Temple Univ. Commonwealth Sys. Higher Educ. v. Brown, No. 00-1063, 2001 WL 185535, at *12 (E.D. Pa. Feb. 23, 2001) (dismissing plaintiff's motion for preliminary injunction as moot where underlying claim was dismissed).

See Mot. Dismiss at Ex. 4.  Mahmood's affidavit acknowledges NBME staff attempted to prop her monitor into position without the stand and called other offices in the building seeking a suitable replacement monitor.  See Pl.'s Answer at Ex. B.  The police report and NBME internal report both note Mahmood lit the fire at approximately 9:10 A.M. -- less than twenty minutes after staff signed Mahmood in at 8:52 A.M.  See Mot. Dismiss at Exs. 2, 4.  The timing of the fire supports NBME's position that it was attempting to provide Mahmood with an adequate monitor and that its efforts were interrupted by Mahmood setting the fire.  The police report also notes flammable material was used to start the fire, id. at Ex. 2, largely undermining Mahmood's claim that the fire was an impromptu response to the NBME's failure to accommodate, see Pl.'s Answer at 5.  Thus, most of the documents provided by NBME, though not applicable to the motion to dismiss, undermine Mahmood's claim and suggest she has a low likelihood of success on the merits.  Even if I were to ignore those documents, the dearth of factual support for Mahmood's claims in the complaint does not suggest a strong likelihood of success on the ADA complaint.

Where the plaintiff has not shown a likelihood of success on the merits, I need not consider the issue of irreparable harm.  See The Pitt News v. Fisher, 215 F.3d 354, 366 (3d Cir. 2000).  Nevertheless, Mahmood has not made a strong showing of irreparable harm.  Although she claims a three-year suspension effectively precludes her ability to graduate from medical school within seven years, she does not fully explore or explain alternatives.  For example, she does not discuss whether her school might grant her an extension on the seven-year requirement and provides no evidence of an inability to transfer schools.  Finally, Mahmood does not discuss the ways in which adverse decisions by her university or NBME might be appealed to higher

adjudicatory bodies.

Additionally, delays in testing or education services do not constitute irreparable harm. See Boehm v. Univ. Pa. Sch. Veterinary Med., 573 A.2d 575, 586 (Pa. Super. Ct. 1990), app. denied, 589 A.2d 687 (Pa. 1990) (no showing of irreparable harm where two veterinary students were suspended for a year and given permanent transcript notations for cheating on examinations); Sohmer v. Kinnard, 535 F. Supp. 50, 52 (D. Md. 1982) (pharmacy school expulsion not irreparable harm where plaintiff had possibility of re-applying to the school after showing behavioral improvements). But see Jones v. Bd. Governors Univ. N.C., 557 F. Supp. 263, 266 (D.N.C. 1983) (finding student could not be adequately compensated for delay in obtaining nursing degree). Mahmood has even less of a claim to irreparable harm than the plaintiffs in Boehm and Sohmer because she has not been suspended or expelled from her university. Unlike the plaintiff in Jones, furthermore, Mahmood has not yet been suspended from her school. Rather, the alleged harm to Mahmood, i.e., that NBME's three-year suspension constitutes a "de facto ban" on her becoming a physician, remains speculative.

Although Mahmood's education likely will be harmed if NBME maintains its three-year suspension, equity undermines her claim based on the fire she started. Moreover, any public interest in qualified persons becoming physicians is inapplicable. Mahmood's subjective opinion about her own qualifications is insufficient, and NBME has a countervailing public interest in keeping its testing services professional and reliable. Answer of Def., NBME, to Pl.'s Mot. Prelim. and/or Permanent Inj. at 35-36, Mahmood v. Nat'l Bd. Med. Exam'rs, No. 12-1544 (E.D. Pa. May 25, 2012).

Accordingly, I deny Mahmood injunctive relief. An appropriate order follows.

10