IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARIA MAHMOOD | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | |
| NATIONAL BOARD | : | NO. 2:12-CV-01544-TR |
| OF MEDICAL EXAMINERS | : | |
| | : | |
| Defendants. | : | |

**ORDER**

AND NOW, this _____ day of _____, 2012, upon consideration of the Motion of Defendant National Board of Medical Examiners to Dismiss the Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6), or in the Alternative for Summary Judgment Under Fed. R. Civ. P. 56, and any response thereto, it is hereby ORDERED that the Motion is GRANTED. The Amended Complaint is DISMISSED, with prejudice.


BY THE COURT:


_____
HONORABLE TIMOTHY R. RICE
United States Magistrate Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

```
_____
MARIA MAHMOOD                      :
                                   :
                    Plaintiff,     :
                                   :     CIVIL ACTION
          v.                       :
                                   :
NATIONAL BOARD                     :     NO. 2:12-CV-01544-TR
OF MEDICAL EXAMINERS               :
                                   :
                    Defendants.    :
_____
```

**MOTION OF DEFENDANT NATIONAL BOARD OF MEDICAL
EXAMINERS TO DISMISS THE AMENDED COMPLAINT PURSUANT
TO FED. R. CIV. P. 12(b)(6), OR IN THE ALTERNATIVE
FOR SUMMARY JUDGMENT UNDER FED. R. CIV. P. 56**

For the reasons set forth in the accompanying memorandum of law, defendant National Board of Medical Examiners moves under Fed. R. Civ. P. 12(b)(6) to dismiss the amended complaint, or in the alternative moves for summary judgment under Fed. R. Civ. P. 56.

Respectfully submitted,


/s/ Michael E. Sacks
_____
Neil J. Hamburg
Michael E. Sacks
ID. Nos. 32175 and 39774
HAMBURG & GOLDEN, P.C.
1601 Market Street, Suite 3310
Philadelphia, PA  19103-1443
(215) 255-8590

Attorneys for Defendant
National Board of Medical
Examiners

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARIA MAHMOOD | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | |
| NATIONAL BOARD | : | NO. 2:12-CV-01544-TR |
| OF MEDICAL EXAMINERS | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM OF LAW OF DEFENDANT NATIONAL BOARD
OF MEDICAL EXAMINERS IN SUPPORT OF ITS MOTION TO DISMISS
THE AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6), OR
IN THE ALTERNATIVE FOR SUMMARY JUDGMENT UNDER FED. R. CIV. P. 56**

Neil J. Hamburg
Michael E. Sacks
ID. Nos. 32175 and 39774

HAMBURG & GOLDEN, P.C.
1601 Market Street, Suite 3310
Philadelphia, PA  19103-1443
(215) 255-8590

Attorneys for Defendant
National Board of Medical
Examiners

# TABLE OF CONTENTS

PAGE

INTRODUCTION                                                              1

I.   STATEMENT OF FACTS                                                   2

     A.   Plaintiff Mahmood Intentionally Set a Fire              3
          During Her USMLE Administration on August 8,
          2011

     B.   The USMLE Committee for Individualized                 4
          Review Issued a Letter on February 23, 2012,
          Reporting its Decision that Mahmood Had
          Engaged in Irregular Behavior

     C.   Facts Relating to Mahmood's Disability                 6

     D.   Mahmood's Affidavit Demonstrates that the              7
          NBME and Prometric Provided Plaintiff with
          Functioning Equipment on August 8, 2011

     E.   Facts Relating to the So-Called "History and           8
          Course of Conduct" by the NBME

II.  ARGUMENT                                                           10

     A.   Standard for Motion to Dismiss Under Rule             10
          12(b)(6)

     B.   Mahmood Has Not Stated a Claim under the ADA         12

          1.   Under the ADA, the NBME Must Engage in          13
               an Interactive Process to Offer
               Reasonable Accommodations to
               Individuals with Disabilities

          2.   Mahmood Has Not Shown a Pattern of              19
               Problems with the Accommodations
               Provided by NBME.

CONCLUSION                                                              21

**INTRODUCTION**

Maria Mahmood (Mahmood) is a medical student who admitted to intentionally setting a fire at the Prometric Test Center where she was taking the United States Medical Licensing Examination (USMLE) on August 8, 2011.[1]

This is the National Board of Medical Examiners' (NBME's) second motion to dismiss.  On June 21, 2012, following briefing by Mahmood and the NBME on the NBME's motion to dismiss the complaint and Mahmood's motion for preliminary injunction, the Court dismissed Counts I-III of Mahmood's original complaint. The dismissed counts alleged civil rights violations in connection with a determination by the USMLE's Committee for Individualized Review (the USMLE—CIR) that Mahmood had engaged in "irregular behavior" by setting a fire at the testing center, and its recommendation to the USMLE Composite Committee that she be barred for a period of three years from taking any USMLE examinations.

Mahmood's amended complaint asserts a single cause of action alleging that the NBME violated the Americans with Disabilities Act (ADA) by failing to reasonably accommodate her disability.  Exhibit 1, Amended Complaint.

---

[1]    The National Board of Medical Examiners develops and administers the USMLE together with the Federation of State Medical Boards.   Prometric is the vendor for computerized delivery of USMLE.

The NBME moves to dismiss the complaint because Mahmood has not stated a valid claim for relief under the Americans with Disabilities Act.

## I.   STATEMENT OF FACTS

The following facts are taken from the amended complaint, Exhibit 1; the USMLE—CIR letter to Mahmood dated February 23, 2012, which Mahmood identified and attached as Exhibit A to the original complaint, Exhibit 2; the August 8, 2011, police report, Exhibit 3; and court documents from the Circuit Court for Baltimore City, Maryland, Exhibit 4.  Exhibits 3 and 4 are public records in the state of Maryland, and therefore may be considered by the Court on a motion to dismiss the complaint. Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196-97 (3d Cir. 1993).

The NBME also refers to facts stated in the report of Prometric, the testing center, regarding the arson incident, Exhibit 5; documents relating to Mahmood's request for accommodations for her disability, Exhibit 6; and the declaration of Catherine Farmer, Psy.D., Exhibit 7.  Exhibits 5 - 7 are not part of the complaint or in the public record. Therefore, if the Court deems it appropriate it may treat this motion as a motion for summary judgment under Fed. R. Civ. P. 56.  See, Fed. R. Civ. P. 12(d).

**A.   Plaintiff Mahmood Intentionally Set a Fire During Her USMLE Administration on August 8, 2011.**

Maria Mahmood, a resident of Maryland, is a medical student at the University of Illinois at Chicago College of Medicine. Exhibit 1, ¶ 1.   Like most medical students in the United States, she must pass Step 2 of USMLE to graduate and receive her M.D. degree.  Id., ¶ 19-20.  (Mahmood has already passed the USMLE Step 1.)  Mahmood registered to take the USMLE Step 2 CK (Clinical Knowledge) on August 8, 2011, at a testing center in Maryland.  Exhibit 5, Report of Prometric, p. 1.

Mahmood claimed to have experienced anxiety and panic in advance of the examination, and decided to create a diversion that would delay the examination.  Exhibit 2.  Mahmood set a fire in the ladies' bathroom located on the 13th floor of the building, using toilet paper soaked in flammable liquid and a string wick that she had brought with her to the testing center. Exhibit 1, ¶¶ 21-24; Exhibit 3, Police Report; Exhibit 5, Prometric Report.  Employees from the testing center witnessed Mahmood's actions; one of them put the fire out and notified the authorities.  Exhibit 3; Exhibit 5.   The police arrived and arrested Mahmood.  Exhibit 1, ¶ 27; Exhibit 3.

Contrary to Mahmood's assertion in her amended complaint, she did not start the fire in the bathroom because she was "distraught … because of the lack of proper equipment needed to accommodate her disability," Exhibit 1, ¶ 41, or because her

3

"depression and anxiety were exacerbated" by actions of the NBME.  Exhibit 1, ¶ 51.  Rather, Mahmood set the fire in the bathroom at approximately 9:00 a.m., <u>before</u> she entered the testing room, <u>before</u> starting the "tutorial" that precedes the examination, <u>before</u> any problem occurred with the enlarged computer monitor provided to her as part of the accommodations for her disability.  See Exhibit 5, Prometric Report.  Notably, in Mahmood's written statement that she sent to the USMLE Committee for Individualized Review, Mahmood stated that she felt anxiety and panic leading up to the examination, and that she acted to "create a diversion that would delay" the exam. Exhibit 2.  That statement directly contradicts her assertions in her amended complaint.

The police charged Mahmood with Arson in the First Degree, Arson in the Second Degree, Reckless Endangerment and Malicious Destruction of Property.  Exhibit 3.  Mahmood pled guilty to Malicious Destruction of Property and received a sentence of probation.  The court dismissed the other charges.  Exhibit 4. Mahmood believes that her criminal record will be expunged. Exhibit 1, ¶ 27.

> **B.   The USMLE Committee for Individualized Review Issued a Letter on February 23, 2012, Reporting its Decision that Mahmood Had Engaged in Irregular Behavior.**

After Mahmood's arrest on August 8, 2011, the USMLE's Committee for Individualized Review followed its procedures and

considered whether Mahmood had engaged in irregular behavior by intentionally setting a fire at the testing center. Mahmood participated in the USMLE-CIR process submitting, among other things, a written statement with attachments.

The Committee completed its review and informed Mahmood of its determination on February 23, 2012. Exhibit 2. It considered, among other things, the police report (Exhibit 3), the report from the testing center (Exhibit 5), information from the Court, and Mahmood's own letter of explanation. Exhibit 2.

The Committee determined that Mahmood had, in fact, engaged in irregular behavior, which USMLE Policies and Procedures define to include disruptive or unprofessional behavior at a test center. Exhibit 2. As a consequence, pursuant to the Policies and Procedures, the USMLE informed Mahmood that her USMLE record will include an annotation showing the finding of irregular behavior, as will her USMLE transcripts. Exhibit 2. Such information will also be reported to the Board Action Data Bank of the Federation of State Medical Boards. Id.

The USMLE further informed Mahmood that because the Committee determined that her behavior was "egregious and/or deemed to threaten the integrity of the examination system," it would recommend to the USMLE Composite Committee that she should

be barred for three years from registering for future
examinations. Id.[2]

    **C.   Facts Relating to Mahmood's Disability.**

    Mahmood is legally blind, and needs testing accommodations
for her disability. Exhibit 1, ¶ 31, 36-37. Mahmood had been
requesting and been granted accommodations from the NBME since
2007. See Exhibit 7, Declaration of Catherine Farmer, Psy.D.[3]
Over the years, Mahmood had requested, and received,
accommodations for the USMLE Step 1, Step 2 CS and Step 2 CK.
The NBME never denied Mahmood an accommodation she requested.
Exhibit 7.

    With respect to the testing date in question, August 8,
2011, the NBME again agreed to all of the accommodations Mahmood
had requested, namely extended (double) time, a monocular
telescope (visual aid), an enlarged monitor, and "Zoom Text"
software.[4] Exhibits 6, 7. Mahmood admits that the NBME had
agreed to such accommodations, but she claims that "Prometric,
[NBME's] agent, failed to provide them on the testing date."
Exhibit 1, ¶ 38.

---

[2]    Mahmood did not appeal the Committee's finding, which has
since been adopted by the USMLE Composite Committee.
[3]    The declaration of Dr. Farmer attached as Exhibit 7 was
submitted in connection with the NBME's opposition to Mahmood's
motion for preliminary injunction.
[4]    Mahmood did not ask to test in a private testing room.

**D.    Mahmood's Affidavit Demonstrates that the NBME and Prometric Provided Plaintiff with Functioning Equipment on August 8, 2011.**

Mahmood attached her own affidavit as Exhibit E to the amended complaint.  Taking the first paragraph of her affidavit as true, Mahmood admits that on August 8, 2011, after being seated in the "booth" with a computer, she began the tutorial section of the exam.  She states that "about ten minutes into the tutorial," a staff person came in and informed her that she might need to be seated elsewhere, and requested that she step outside when she could.[5]  Mahmood states that she finished the tutorial and "readjusted" the monitor before going outside the booth.  Exhibit E to the amended complaint.

Mahmood's affidavit therefore establishes that on the day of the examination, the equipment provided for her by NBME functioned properly, or else she would not have been able to work on the tutorial.  The stand for the computer monitor broke after Mahmood had already been using the monitor, and after she had been informed that she had to move to a location in the main

---

[5]    The Prometric Report explains that Mahmood was not scheduled to test in the private "S/A room" (to which Mahmood refers as the "booth"), but rather was supposed to use her special equipment at a normal workstation.  Mahmood was inadvertently seated in the S/A room, which another candidate was scheduled to use; when that candidate arrived, the staff were going to move Mahmood and her equipment to the main testing area.  During that move, the monitor stand was discovered by Prometric to be broken.  See Exhibit 5, p. 3.  According to Mahmood's affidavit, this was after Mahmood had "readjusted" the monitor.  Exhibit E to the Amended Complaint.

testing room.   Mahmood requested a new monitor, and while the testing center personnel were trying to resolve the technical issue a witness identified Mahmood as the person who set the fire, leading to her questioning by police and arrest.   Exhibit 5, p. 2-3.   Therefore, contrary to Mahmood's assertion in paragraph 39 of her amended complaint, her inability to take the examination on August 8, 2011, did not result from any problem with the accommodations provided for her disability, but rather resulted from her arrest by the police for arson.

**E.   Facts Relating to the So-Called "History and Course of Conduct" by the NBME.**

Mahmood alleges that "on several prior occasions" the NBME's testing facilities lacked proper accommodations, and that the NBME's "history of failing to accommodate" and "course of conduct" violates the ADA.   Amended complaint, ¶¶ 5, 33, 41, 53. In support of her claim of a pattern of problems with her accommodations, Mahmood attaches as Exhibit A to the amended complaint correspondence between herself and the NBME relating to three separate testing dates.

The first letter included in Exhibit A is from the NBME to Mahmood, dated September 18, 2007.   In the second paragraph of the letter the NBME's representative writes:

> I understand that you were originally scheduled to test on August 2 and 3, 2007, at the Prometric center in Columbia, Maryland.   We shipped an LCD monitor to Columbia for that date.   However, I understand that you rescheduled the exam for August 7 and 8 at a

Prometric center in Bethesda, Maryland. Unfortunately, we were not informed of the change in test center location. Therefore, the LCD monitor and enlarged text software were not available for you on August 7. As a result, I understand that you were rescheduled to the Columbia test center for August 13 and 14 and tested both days with the approved accommodations.

The episode captured in the September 18, 2007, correspondence shows that the NBME agreed to provide accommodations to Mahmood, and shipped the requested equipment to the location where Mahmood was supposed to test. However, because Mahmood had changed test sites and dates without alerting the NBME, the equipment was delivered to her original testing location. Those facts do not show a failure by the NBME to reasonably accommodate Mahmood's disability, or a problem with the equipment itself. Moreover, the letter shows that the entire issue was resolved within one week when Mahmood tested with the proper accommodations.

The second correspondence, an email dated October 12, 2009, refers to a technical computer problem that prevented Mahmood from taking her exam on October 5-6, 2009. Specifically, NBME shipped the enlarged monitor to the Prometric site where Mahmood was scheduled to test. However, the Prometric staff was unable to launch the exam because of technical difficulties. The NBME apologized, extended the eligibility period for Mahmood to take the test, and did not charge her for the re-test. Exhibit A to amended complaint.

9

The third example cited by Mahmood, referred to in an email dated February 16, 2011, has nothing whatsoever to do with disability accommodations.  Mahmood claims in the email that she had trouble when she typed in her Candidate ID number, which is required to begin the test.  Mahmood claims that the number provided to her did not work, that tech support became involved, and that when she got an alternate number that worked she decided to defer the exam to another day because of the "uncertainty" she felt.  See Exhibit A to amended complaint. Assuming that Mahmood's recitation of facts is true, it is not evidence that NBME denied her accommodations.  In fact, it has nothing to do with her disability accommodations.  Every candidate, disabled or not, must input a Candidate ID number. Mahmood does not allege that the problem involved her special equipment, only that the number she was using to access her examination did not work.

Therefore, Mahmood has cited, at most, one instance, over five years and multiple tests, of a technical problem with her accommodations that delayed her from taking an exam on the day she wished to test.  One instance is not a "course of conduct."

## II.  ARGUMENT

### A.  Standard for Motion to Dismiss Under Rule 12(b)(6).

When considering a motion to dismiss the complaint under Fed. R. Civ. P. 12(b)(6), the court must assume that all of the

factual allegations of the complaint are true and should draw all reasonable inferences in favor of the plaintiff. Nevertheless, it is a plaintiff's obligation under Rule 8(a)(2) to set forth "a short and plain statement of the claim" to ensure that a defendant has "fair notice" of what the claim is and the grounds upon which it rests. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 554-55, 127 S.Ct. 1955, 1964 (2007).

The grounds upon which a claim rests must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555, 127 S.Ct. at 1964. Factual allegations in a complaint must be sufficient "to raise a right to relief above the speculative level." Id.

A court is not bound by a plaintiff's legal conclusions or unwarranted factual inferences. Morse v. Lower Merion School Dist., 132 F. 3d 902, 906 (3d Cir. 1997). A court may also consider any document referenced in or integral to the complaint on which plaintiff's claim is based. In re Burlington Coat Factory Securities Lit., 114 F.3d 1410, 1426 (3d Cir. 1997). This includes "matters of public record, orders, items appearing in the record of the case and exhibits attached to the complaint..." Catagnus v. Aramark, 235 F.Supp.2d 413, 416 (E.D. Pa. 2002).

**B.    Mahmood Has Not Stated a Claim under the ADA.**

In her original complaint, Mahmood averred in general terms that she had requested accommodations, and that the NBME failed to reasonably accommodate her, thereby violating the ADA.  This Court found Mahmood's allegations insufficient ("a mere 'recitation of the elements' of a cause of action"), but granted Mahmood's request to file an amended complaint.

In her amended complaint, Mahmood alleges that she is legally blind and needed special vision equipment to take the examination (¶ 31, 37); that the testing facility, Prometric, to which she refers as the NBME's agent (¶ 11, 38), failed to provide the accommodations for her disability, although the NBME had authorized them (¶ 32, 38); and that on several prior occasions the NBME's testing facilities lacked proper and reasonable accommodations.  (¶ 33, 43)

Mahmood further claims that she became distraught "when it appeared that she again would be unable to take the USMLE because of the lack of proper equipment needed to accommodate her disability" (¶ 41), and that "[a]s a result of the discrimination by defendant at the testing center, plaintiff's depression and anxiety were exacerbated, resulting in the aforementioned incident ..." (¶ 51)

## 1. Under the ADA, a Delay in Providing Accommodations is Not a Denial of Accommodations.

As a private entity that offers examinations related to licensing or credentialing, the NBME is required to offer accommodations to persons with disabilities to make such examinations accessible:

> Any person that offers examinations or courses related to applications, licensing, certification, or credentialing for secondary or post-secondary education, professional, or trade purposes shall offer such examinations or courses in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals."

42 U.S.C. § 12189.

To show a violation of the ADA, a plaintiff must show that she is disabled, that her requests for accommodations were reasonable, and that the requests were denied. <u>Ware v. Wyoming Bd. of Law Examiners</u>. 973 F.Supp. 1339, 1356 (D.Wyo. 1997), aff'd., 161 F.3d 19 (10th Cir. 1998).

The documents and correspondence in Exhibit 6 show that the NBME agreed to provide the accommodations Mahmood requested for the August 2011 examination, and the declaration of Catherine Farmer, Psy.D., establishes that the NBME actually provided such accommodations to Mahmood for the USMLE consistently between 2007 and 2011. Exhibit 7.

Mahmood does not claim that the NBME denied her request for reasonable accommodations for the August 2011 examination. To

the contrary, she admits that the NBME agreed to grant the accommodations she requested, but she claims that Prometric failed to provide them on the testing date.  Exhibit 1, Amended Complaint, ¶ 38.  Mahmood states in her affidavit that the special computer monitor provided for her broke after she completed the tutorial, and both her affidavit and the Prometric Report indicate that while the Prometric staff were trying to resolve the issue, the police questioned and arrested Mahmood. Exhibit E to Amended Complaint; Exhibit 5.

Accordingly, by Mahmood's own account, if she had not been arrested for arson, she would have incurred a delay in testing while Prometric either resolved the monitor problem that day, or she would have tested on another day shortly thereafter.  There is no claim that the NBME or Prometric refused to resolve the situation and provide the proper accommodations.

Mahmood's amended complaint would state a claim for relief under the ADA only if, as a matter of law, a testing entity such as NBME could be found liable for violating the ADA based upon a brief delay in the delivery of accommodations, notwithstanding such entity's agreement and actual attempt to provide the accommodations.  Logically, such a cause of action makes no sense, and the NBME is aware of no case holding a testing entity liable in such circumstances.

14

Numerous cases have held that a delay in providing an accommodation is not a denial of accommodations that subjects a defendant to liability under the ADA. In <u>Anderson v. Ross Stores, Inc.</u>, 2000 WL 1585269 (N.D. Cal. 2000), the plaintiff, a blind clothing store customer, sought to have her husband come with her into the women's only dressing room but store personnel refused based on store policy. After approximately one hour of negotiating with increasingly higher level personnel, the store accommodated plaintiff by allowing her to use the men's dressing room with her husband present. Granting the defendant's motion for summary judgment on plaintiff's ADA claim, the Court held that the <u>delay</u> in access to the dressing room was not an actual or constructive <u>denial</u> of access. Id., *4. The Court stated:

> ... [W]here an entity acts in good faith to determine the best way to accommodate a person's disability, and the disabled person suffers some delay as a result of that process, that entity has not denied altogether the disabled person's request for a reasonable accommodation. In the retail setting, a store that takes approximately one hour to determine how to accommodate a disabled patron in light of incompatible store policies designed to protect its customers has not denied that customer's request for an accommodation. ... Absent evidence that the retail facility acted in bad faith or took an excessive amount of time to decide how to accommodate the disabled individual, a court should not find that the store denied the person access to its facilities or denied her request for an accommodation.

Id., *9. See also, <u>O'Connor v. Scottsdale Healthcare Corp.</u>, 2012 WL 1717934 (D.Ariz. 2012)(plaintiff suffered no injury in fact, and therefore lacked standing under the ADA, where the

15

defendant delayed before allowing her to enter hospital with her service dog.)

The same principle — that a delay in providing an accommodation is not a denial of such accommodation that gives rise to liability under the ADA — has likewise been applied in employment cases. In Delgado v. Triborough Bridge and Tunnel Authority, 485 F.Supp.2d 453 (S.D.N.Y. 2007), the plaintiff suffered headaches that impaired her vision, and asked to keep her 19 inch computer monitor when the office changed to new 17 inch monitors. Her employer granted her request but was delayed in providing a new large monitor. Finding that plaintiff failed to plead a denial of accommodations under the ADA the Court stated:

> Even if Delgado were determined to be disabled under the meaning of the ADA, she still must plead an adverse employment action taken by reason of her disability. The only action which can be construed from Delgado's allegations as an adverse one due to her disability is the delay, because of the supplier's back-orders, in providing her accommodation by means of a newer or larger computer monitor. The submissions of both parties show that Delgado was allowed to retain her larger monitor when a smaller one was scheduled to replace it. The submissions further show that Delgado eventually received a larger monitor than many of her co-workers and both of her supervisors. The new monitor was ordered one month after Delgado provided the doctor's note indicating that she required a large monitor. Because the monitor was back-ordered, it was delivered and installed two months after Delgado provided that note. The Court does not find these circumstances sufficient to plead a lack of accommodation by TBTA.

485 F.Supp.2d 453, 460.  See also Ungerleider v. Fleet Mortgage

Group of Fleet Bank, 329 F.Supp.2d 343, 354-55 (D.Conn. 2004)(delay in providing the specific accommodation plaintiff requested did not constitute a refusal to provide reasonable accommodations, particularly where defendant was working to provide the accommodation and provided interim accommodation.)

Thus, based upon the facts alleged by Mahmood in her amended complaint, which amount to no more than a possible delay in providing her requested accommodation, she has not stated a claim for violation of the ADA.

Moreover, even if there were case law support for the idea that a brief delay in providing accommodations could be a violation of the ADA, Mahmood's complaint would still fail for two reasons. First, the equipment provided by the NBME worked on the test date and broke after Mahmood had already been using it; and second, the reason Mahmood could not test on the day in question was because of her arrest for arson, not broken equipment.

Mahmood's own affidavit, attached as Exhibit E to the amended complaint, shows that the equipment sent to the Prometric testing center by the NBME for her use on August 8, 2011, worked when it arrived. In the first paragraph of her affidavit, Mahmood states that on August 8, 2011, after being seated in the "booth" she began the tutorial section of the exam. She states that "about ten minutes into the tutorial," a

17

staff person came in and informed her that she might need to be seated elsewhere, and requested that she step outside when she could. Mahmood states that she finished the tutorial and "readjusted" the monitor before going outside the booth.

Accordingly, Mahmood admits that the equipment functioned properly at first, or else she would not have been able to work on the tutorial. The stand for the computer monitor broke after Mahmood had already been using the monitor, and after she had been informed that she had to move to a location in the main testing room because someone else was scheduled to test in the private testing area.

These facts show that the NBME and Prometric had working equipment for Mahmood to use that day, and that whatever caused the stand of Mahmood's special monitor to break occurred after she had already been using it. Therefore, even if a delay could give rise to an ADA violation, the facts as alleged by Mahmood show that the delay only arose that morning, after Mahmood had already been using the monitor, when the stand broke. It simply cannot be the law that a piece of equipment that breaks and causes a delay in testing creates a violation of the ADA.

The Prometric Report further shows that after the stand for the monitor broke, Mahmood requested a new monitor, and testing center personnel were trying to address her request when a witness identified Mahmood as the person who had set the fire,

18

leading to her questioning and arrest. Exhibit 5, p. 2-3. Thus, in the most direct and immediate sense, Mahmood's inability to take the examination on August 8, 2011, resulted from her arrest by the police for arson, and not from NBME's failure to accommodate.

### 2. Mahmood Has Not Shown a Pattern of Problems with the Accommodations Provided by NBME.

Mahmood tries to bolster her complaint by alleging a so-called pattern or course of conduct by NBME involving accommodations that have been granted but then are not actually provided. However, these allegations do not withstand even mild scrutiny. Of the three examples that Mahmood relies upon, attached as Exhibit A to her amended complaint, only one arguably shows a problem with the promised accommodations.

The first letter from the NBME included in Exhibit A is dated September 18, 2007. As noted above, the letter demonstrates that the NBME agreed to provide accommodations to Mahmood, shipped special equipment to the location where Mahmood had arranged to test, but Mahmood changed test site and date without alerting the NBME, resulting in the equipment being delivered to her original testing location. Within one week, the issue was resolved and Mahmood tested with the proper accommodations. Certainly that instance cannot be considered part of any "pattern" of the NBME failing to accommodate, or providing non-functioning equipment.

19

The third example cited by Mahmood, referred to in an email dated February 16, 2011, involves Mahmood's claim that she tried to type in her Candidate ID number to begin the exam, but that it did not work. With Tech Support's help the test center administrators remedied Mahmood's error and got the test to work by 9:30 a.m.; Mahmood could have, but chose not to test that day because she felt "uncertainty." <u>The issue had nothing whatsoever to do with disability accommodations</u>. Even in Mahmood's account, there is nothing in the episode that relates to her disability. Therefore, like the first example cited by Mahmood, the third does not suggest a problem, much less a pattern of problems, involving the functionality of the equipment or accommodations provided to Mahmood by the NBME.

Only the second example Mahmood cites, referred to in an email dated October 12, 2009, refers to a technical problem that prevented Mahmood from taking an exam. In that instance, the NBME apologized, extended the eligibility period for Mahmood to take the test, and did not charge her for the re-test. Exhibit A to amended complaint.

Therefore, even if Mahmood were able to point to a relevant case holding that a testing entity that repeatedly fails to deliver the reasonable accommodations it agreed to provide could be found to have violated the ADA, Mahmood could not prevail because no such pattern exists in this case.

20

**CONCLUSION**

For all the foregoing reasons, the NBME respectfully submits that Mahmood has not stated a viable claim for relief under the Americans with Disability Act. The NBME, therefore, requests that this Court dismiss plaintiff Maria Mahmood's amended complaint with prejudice.

Respectfully submitted,


/s/ Michael E. Sacks
Neil J. Hamburg
Michael E. Sacks
ID. Nos. 32175 and 39774
HAMBURG & GOLDEN, P.C.
1601 Market Street, Suite 3310
Philadelphia, PA  19103-1443
(215) 255-8590

Attorneys for Defendant
National Board of Medical
Examiners

Dated:  August 8, 2012

## CERTIFICATE OF SERVICE

I, Michael Sacks, hereby certify that the foregoing Motion of Defendant the National Board of Medical Examiners to Dismiss the Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6), or in the Alternative for Summary Judgment Under Fed. R. Civ. P. 56, and supporting brief, has been filed electronically and is now available for viewing and downloading from the Court's Electronic Case Filing System.  I further certify that a copy is being served by regular mail on August 8, 2012, on the following:

William C. Reil, Esquire
42 S. 15th Street, Suite 210
Philadelphia PA 19102


/s/ Michael E. Sacks
Michael E. Sacks