| | | |
|---|---|---|
| MARIA MAHMOOD | : | UNITED STATES DISTRICT |
| 14717 Exbury Lane | : | COURT FOR THE EASTERN |
| Laurel, MD 20707 | : | DISTRICT OF PENNSYLVANIA |
| | : | |
| vs. | : | |
| | : | |
| NATIONAL BOARD OF | : | 2:12-cv-01544-TR |
| MEDICAL EXAMINERS | : | |
| 3750 Market Street | : | |
| Philadelphia, PA 19104 | : | JURY TRIAL DEMANDED |

## ORDER

AND NOW, this _____ day of _____, 2012, upon consideration of the Motion of Defendant National Board of Medical Examiners to Dismiss the Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6), or in the Alternative for Summary Judgement Under Fed. R. Civ. P. 56, and plaintiff's response thereto, it is hereby ORDERED that the Motion is DENIED and that defendant has 21 days to answer plaintiff's Amended Complaint.

BY THE COURT:

_____
Magistrate Judge Timothy R. Rice
United States District Court Judge

LAW OFFICES OF WILLIAM C. REIL
BY: William C. Reil, Esquire
Identification No. 26833
42 S. 15th Street, Suite 210
Philadelphia, PA 19102
215-564-1635                                           ATTORNEY FOR PLAINTIFF

| | |
|---|---|
| MARIA MAHMOOD : | UNITED STATES DISTRICT |
| 14717 Exbury Lane : | COURT FOR THE EASTERN |
| Laurel, MD 20707 : | DISTRICT OF PENNSYLVANIA |
| : | |
| vs. : | |
| : | |
| NATIONAL BOARD OF : | 2:12-cv-01544-TR |
| MEDICAL EXAMINERS : | |
| 3750 Market Street : | |
| Philadelphia, PA 19104 : | JURY TRIAL DEMANDED |

**PLAINTIFF'S ANSWER TO DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT**

Plaintiff, Maria Mahmood, through her undersigned counsel, hereby answers defendant's motion to dismiss, and in support thereof, it is averred as follows:

**I.   OVERVIEW OF THE CASE**

The amended complaint can best be summarized through the summary and general allegations, which are set out as follows:

> 5. This case arises out of a pattern of discrimination against plaintiff by defendant's repeated violation of the ADA. See medical documentation and correspondence between the parties attached as Exhibit "A".

> 6. The Court has previously issued an Opinion in this case, and dismissed all counts of the original complaint with the exception of Count IV, which is a cause of action under the ADA. See Opinion of the Court attached as Exhibit "B".

> 7. This amended complaint is filed in response to the Court's Order of 06/21/12.

> 8. This case arises out of the illegal suspension of plaintiff for a term of 3 years by defendant, which is de facto a lifetime ban, since plaintiff will be unable to finish her medical degree in the required 7 years. See plaintiff's transcript from UIC, attached as Exhibit "C".

9. The only requirement which plaintiff must fulfill for her degree is the testing with the NBME. She has completed all other requirements at UIC for her medical degree.

10. The suspension in question occurred after an incident on or about 08/08/11 at the Prometric Testing Center in Baltimore.

11. Prometric is an agent of the NBME, and it administers examinations for medical students.

12. Plaintiff was suspended by defendant for "irregular behavior".

13. If plaintiff is barred from taking the USMLE CK Part II (US Medical Licensing Examination, Clinical Knowledge Part II) for three years, then she will be unable to graduate from her medical school at UIC.

14. The letter from the NBME, attached and incorporated as Exhibit "D", indicates that in addition to the 3-year suspension, the phrase "irregular behavior" will occur on plaintiff's future transcripts.

15. This designation will make it difficult, if not impossible, to obtain a medical residency.

16. Plaintiff is bringing this lawsuit for damages under the ADA and equitable relief.

17. She also requests relief which allows her to take the requisite medical tests which she needs to complete her requirements as a physician.

18. Plaintiff was not allowed to take the USMLE Clinical Knowledge Part II Examination, but her attempt was counted against her by the NBME.

19. At all times material herein, Maria Mahmood was a medical student at UIC, who has completed all academic requirements for her medical studies.

20. Plaintiff will not be awarded her M.D. unless she passes the USMLE Part II Examination.

21. When plaintiff took her last USMLE Clinical Knowledge Part II on 08/08/11, there was an incident which occurred in the ladies' room of the building where the testing center was located.

22. No harm resulted from this incident.

23. The ladies' room was a public bathroom some distance from the testing room, which was used by anyone who was in the building where the medical test was being given.

24. Plaintiff lit a small amount of toilet paper in the ladies' room which was quickly extinguished. No fire alarm was activated at any time. See plaintiff's affidavit at Exhibit "E".

25. The medical examination was in no way affected or disrupted by plaintiff's actions. Plaintiff was not allowed to take her USMLE Clinical Knowledge Part II on that day by the Prometric Testing Center at Baltimore.

26. There is no evidence that anyone who was taking any examination saw plaintiff involved in any irregular conduct or that anyone in the exam room was even aware of what plaintiff did.

27. As a result of this incident, plaintiff was arrested. The arrest of plaintiff will soon be expunged. See expungement documents attached as Exhibit "F".

28. The NBME suspended plaintiff on the basis of "irregular behavior", even though no irregular behavior occurred or was perceived in the examining room.

29. As a result of this 3-year suspension, plaintiff is unable to complete her medical education in the required 7 years, which is mandated by the University of Illinois, College of Medicine at Chicago.

30. Plaintiff is prohibited by the action of defendant from taking her United States Medical Licensing Examination, Clinical Knowledge Part II, and United States Medical Licensing Examination, Clinical Skill Part II.

31. Plaintiff is legally blind and she needed special vision equipment to take her NBME licensing examination.

32. The facility where plaintiff took her licensing examination did not have the proper disability accommodations under the ADA for plaintiff to take her examination, although Prometric was provided with prior knowledge of, and/or authorization for, accommodations to be available.

33. On several prior occasions, the NBME testing facilities lacked proper and reasonable accommodation for plaintiff's disability. See Exhibit "A".

Also, defendant has not addressed the assertion that anyone taking the test was aware of plaintiff's actions. There is no denial by defendants that the facility where plaintiff took the USMLE test did not have the proper disability accommodation under the ADA for plaintiff to take the test. There was no backup system in place. As a result of this and other factors, plaintiff was the victim of gross discrimination.

Defendant argues a good faith effort, but this is belied by the history of failed accommodations by the defendant and its agents. It is argued that the fact that plaintiff had to be interrupted during her test and relocated is part of the pattern of ADA violations.

Plaintiff was a medical student at the University of Illinois at Chicago (UIC). She is 32 years old and has successfully passed and completed all coursework for graduation. The only qualification that plaintiff needs to receive for her medical degree is to pass certain tests, USMLE Part II, which are administered under the supervision of defendant National Board of Medical Examiners (NBME). Plaintiff was provisionally dismissed from UIC because of the report sent to her university by the NBME. Plaintiff went to take an examination under the auspices of the NBME on 08/08/11.

Plaintiff is legally blind and she had asked for an accommodation of her disability, which was approved. The accommodation consisted of a large print text monitor with zoom text. However, during her tutorial she was informed that another candidate had also requested special accommodation and this very station had to be given to that other candidate and she had to move out to another location. There was no ADA accommodation available at the other station. The monitor was broken and was not in working order. Due to impaired vision, plaintiff can only view the large text on the

monitor from a distance of one inch or so and she had to keep adjusting it to her level of comfort. A broken monitor cannot be adjusted to plaintiff's level of comfort and workability. The magnifying device which she needed was not in working order. After this, plaintiff went to the public bathroom of the building. To vent her frustration, she lit a small piece of toilet paper. It was so insignificant that there was no smoke or no fire alarm. No damage of any type was done, nor were the people who were taking the examination a considerable distance away even aware of what transpired.

At the behest of the NBME, plaintiff was arrested by police and sentenced to probation and community service. She had a hearing on 08/21/12 to receive expungement of her record, and this has now been ordered by the Court in Maryland. A true and correct copy of the order has been attached as Exhibit "A". Plaintiff does not seek to make excuses for her conduct, but points out that no damage was done, there was no fire alarm, no one was injured, and her actions were unknown to the people taking the examination. As a result of this, the NBME suspended plaintiff for 3 years, and she was given a permanent admonition concerning this incident on her record.

Accordingly, with the 3-year suspension, plaintiff would be unable to graduate within the 7-year time frame required by the UIC. Because of the communication from the NBME, plaintiff was dismissed without any degree. The practical effect of this is that plaintiff will be deprived of receiving a medical license, even though she successfully passed and completed all required courses at UIC. De facto, defendant gave plaintiff a lifetime ban which is highly disproportional.

The defendants nowhere acknowledge the harshness of the penalty as a lifetime ban and a loss of all medical school achievement and approximately $400,000 in loans

for tuition. After this action by defendants, it is difficult to believe that another medical school would accept plaintiff or that she would be able to secure another loan for her schooling. It is exceedingly difficult for plaintiff to gain any employment with her disability. The NBME does not factor into the equation the frustration of a blind person who is totally dependent on them for every aspect of the testing.

### Procedural Posture of the Case

Procedurally, plaintiff filed a complaint against the NBME only. Even though the NBME may contract to a third-party to administer the test for them, it is the NBME who sets the rules and regulations for the test. As a result of the conduct of the NBME, as a practical matter, plaintiff will lose the opportunity to ever get a medical license. This virtual lifetime ban is one of the things which distinguish plaintiff's situation from the other cases cited by defendant.

The Court granted defendant's initial motion to dismiss with the exception of the cause of action under the ADA. The Court allowed filing of an amended complaint on the ADA issue, if the facts so warranted. This response is limited to the background of the controversy, plaintiff's damages, and an exposition of the facts and law pertinent to the ADA.

## II.     ARGUMENT AND CONCLUSIONS OF LAW

### Standard for Motion to Dismiss

A court should only dismiss a suit under F.R.C.P. 12(b)(6) if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, (1957). Similarly, "The district court must construe the complaint in a light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief. … When an allegation is capable of more than one inference, it must be construed in the plaintiff's favor. … Hence, a judge may not grant a Rule 12(b)(6) motion based on a disbelief of a complaint's factual allegations." *Columbia Nat Resources, Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir.1995)."

The *Conley* standard above was modified by the United States Supreme Court in the case of *Bell Atlantic Corporation v. Twombly*, 127 S.Ct. 1955, 550 (2007). *Twombly* is somewhat more restrictive but still requires that the Court take the well-pleaded allegations of the complaint as true, along with any reasonable inferences thereof. The Court is required to determine whether the complaint alleges facts which give rise to relief, as opposed to mere speculation. *See* Federal Rule of Civil Procedure 12(b)(6). Looking at the complaint itself, it is averred that plaintiff has set forth a cause of action.

Thus to survive a motion under Rule 12(b)(6), a plaintiff must allege facts that "raise a right to relief above the speculative level". *Victaulic Co. v. Tieman*, 499 F.3rd 227, 234 (Third Circuit 2007).

**Standard for Summary Judgement**

Defendant's request, in addition to their motion to dismiss, summary judgement as well. It is argued that it is premature in this case to request summary judgement before the complaint has even been answered or before any discovery has been taken.

In order to prevail on a motion for summary judgement, defendants must show, taking facts and inferences in the light most favorable to plaintiff, that no reasonable fact finder could find for the plaintiff on an issue which is a case determinative. *Thomas v. Transamerica Accidental Life Insurance Company*, 761 F. Supp. (D.Or. 1991). Summary Judgement is inappropriate when credibility is at issue or different ultimate inferences can be reached. FRCP 56 (c). In addition to the evidence cited in Rule 56 (c), a court may take into account any material that would be admissible or usable at trial. Wright and Miller, Federal Practice and Procedure Section 2721 at 40 (2d. Ed. 1983). In evaluating a summary judgement motion, the record will be viewed in the light most favorable to the plaintiff. Summary judgement is appropriate only if there is no genuine issue of material fact such that a reasonable fact finder could find for the non-moving party. (Owens decision at 373). Much of defendants' arguments actually amount to the proffer of counter-evidence on a disputed factual issue. That defendants believe that they have evidence to convince a jury to see an issue their way, is to be distinguished from the tenet that no reasonable jury can fail to see an issue as defendants do.

It would be unfair to decide this case on summary judgement, since defendant has access to all of the information concerning the NBME. Furthermore, there are factual issues under the ADA concerning the accommodation of plaintiff, and the NBME's role involving the police and plaintiff's state university.

**Cause of Action Stated Under the ADA**

Plaintiff was supposed to receive equipment with which she could comfortably view the test questions. Instead, another test-taker received the accommodation designed for plaintiff, and test officials were left trying to modify, unsuccessfully, equipment for plaintiff. Thus plaintiff was frustrated because she could not read the test. While plaintiff's response to this situation may have been incorrect, no harm resulted. See plaintiff's affidavit at Exhibit "B" to the answer to the former motion to dismiss.

The NBME admitted its failure in providing ADA accommodations on all three occasions starting in 2007, when the NBME wrote that they provided ADA accommodations, which is not true. Zoom text was not provided on that occasion and the NBME needs to explore the Prometric record. Plaintiff, being a new student, was afraid of making any complaints. Authorization of accommodations does not mean Prometric actually honored those requirements as per ADA.

There is an apparent contradiction in the timeframes and the sequence of events between Prometric and NBME. There is a disparity in the sequence of events. Prometric, in its report, put the time of the incident at 9:15 AM. This was after the test was started, but defendants, in their brief, argue that the alleged fire was started before the test. Furthermore, no employee from Prometric actually saw the fire being started. Even Prometric acknowledges in its report that all other candidates continued to test normally and no other candidates' exams were affected by the incident. A true and correct copy of the Prometric report is attached and incorporated as Exhibit "B".

Defendants seem unwilling to address application of the ADA to a legally blind person. The fact that plaintiff is interrupted during her test is extremely discomforting to

anyone, let alone a blind person. There is no indication in the record that defendant apologized to plaintiff or offered an adequate explanation as to why this problem could not have been avoided with a backup system. The NBME has not offered any explanation as to why another person who required accommodation had to take plaintiff's seat during the test.

To prove a violation of the ADA, a plaintiff must show that she is disabled, that her requests for accommodation were reasonable and that the requests were denied. *Ware v. Wyoming Board of Law Examiners*, 973 F.Supp 1339, 1356 (1977). Plaintiff's affidavit sets forth that the ADA was violated.

Looking at the requirements, it is conceded that Ms. Mahmood is both disabled and that her request for a suitable device to read the test was reasonable. Defendants deny that her requests were not reasonably accommodated. Rather, they argue that moving plaintiff during the test, while giving her seat to another candidate, complies with the ADA. This is so, even where plaintiff was given no explanation for defendant's actions.

Plaintiff, in the year 2007, in her USMLE Part I Examination, was also not provided with approved accommodations by Prometric / NBME. She was not provided with zoom text and a large monitor at that time. The statement by NBME is not factual. It is required for the candidate to get her accommodations approved, but it is never the duty of the candidate to inform or alert NBME time and again regarding test dates or locations of the testing center. Time and again NBME delayed her tests.

It is argued that an inadequate effort and failure to prepare in advance do not suffice to satisfy the ADA.  There is certainly a factual issue here, particularly where there is a long and disputed history of lack of accommodation between the parties.

Defendant, in its memorandum of law, tries to categorize what happened to plaintiff as a mere delay, and not a denial of accommodations which subjects defendant to liability under the ADA. It is argued that the issues under the ADA amount to a factual disagreement between the parties, which cannot be resolved on a motion to dismiss or on summary judgement.

Similarly, there are factual issues as to whether the defendant acted in good faith with respect to Ms. Mahmood. The facts in this case seem to be sui generis, yet defendant tries to analogize them to some cases which are distinguishable. Defendant cites the case of *Anderson v. Ross* in which a blind clothing store customer sought to have her husband come with her into the women's only dressing room. Store personnel refused based on store policy. After approximately one hour of negotiating with increasingly higher level personnel, the store accommodated plaintiff by allowing her to use the men's dressing room with her husband present. This case is not at all determinative of the key facts in the instant case. Among other factors which distinguish it, there was no negotiation involving plaintiff and the person who was given her seat at the test. A delay in taking an examination cannot be analogized to a delay in getting access to a changing room.

Similarly, defendant's citation to the case of *Delgado v. Triboro Bridge and Tunnel Authority* is not on point either. In this case, plaintiff suffered headaches that impaired her vision. She asked to keep her 19" computer monitor when the office changed to new 17" monitors. Her employer granted her request but was delayed in

providing a new large monitor. The Court held that plaintiff failed to plead a denial of accommodations under the ADA. This case is even more dissimilar to the case at bar. In both cases cited by defendant, time is not of the essence as it is in the instant case. Obviously, a 10 or 15 minute break in the test, together with the time to regain one's composure, is a different situation than the cases cited above.

### III.   SUMMARY AND CONCLUSION

Taking the well-pled facts in the complaint in the light most favorable to the plaintiff, the motion to dismiss of defendant should be denied for the following reasons:

1. Plaintiff did not receive reasonable accommodation for her legal blindness at the test center which was the agent of the NBME. She did not even receive an adequate explanation as to why her seat was given to another candidate.

2. There is a long and detailed history of lack of reasonable accommodation by the defendant toward the plaintiff.

3. The NBME administered the United States Medical Licensing Examination; its actions continue to deprive plaintiff of ever receiving a medical license, even though Ms. Mahmood's actions have been expunged by a Court in Maryland, happened a single time, and did not disturb the administration of the test.

WHEREFORE, plaintiff submits that defendant's motion be denied.

Respectfully submitted,

*William C. Reil*

William C. Reil, Esquire
Attorney for Plaintiff
09/06/12

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the attached document (s) was served upon all other parties or their counsel of record by:

|   |   |
|---|---|
| X _____ | Regular First Class Mail |
| _____ | Facsimile |
| _____ | Certified Mail |
| _____ | Hand-Delivered |
| X _____ | Electronic Filing |

*William C. Reil*
William C. Reil, Esquire
Attorney for Plaintiff
42 S. 15th Street, Suite 210
Philadelphia, PA 19102
09/06/12