# EXHIBIT 13

LAW OFFICES OF WILLIAM C. REIL
BY: William C. Reil, Esquire
Identification No. 26833
42 S. 15th Street, Suite 210
Philadelphia, PA 19102
215-564-1635                              ATTORNEY FOR PLAINTIFF

| | | |
|---|---|---|
| MARIA MAHMOOD | : | UNITED STATES DISTRICT |
| 14717 Exbury Lane | : | COURT FOR THE EASTERN |
| Laurel, MD 20707 | : | DISTRICT OF PENNSYLVANIA |
| | : | |
| vs. | : | |
| | : | |
| NATIONAL BOARD OF | : | 2:12-cv-01544-TR |
| MEDICAL EXAMINERS | : | |
| 3750 Market Street | : | |
| Philadelphia, PA 19104 | : | JURY TRIAL DEMANDED |

## AMENDED COMPLAINT – CIVIL ACTION

### PARTIES

1.   The plaintiff is Maria Mahmood, who is an adult individual residing at 14717 Exbury Lane, Laurel, MD 20707. At all times material herein, plaintiff was a medical student at the University of Illinois at Chicago ("UIC"), who was eligible to receive her M.D. degree.

2.   The defendant is the National Board of Medical Examiners ("NBME"), an educational institution or unincorporated association, and whose address for service of process is at 3750 Market Street, Philadelphia, PA 19104. The NBME, through its agents, administers tests for medical students, which are a requirement for graduation.

### JURISDICTION AND VENUE

3.   There is federal question jurisdiction based on violation of plaintiff's civil rights under the Americans with Disabilities Act ("ADA"). The Court also has jurisdiction over this matter based on diversity of citizenship, with the plaintiff being domiciled in the state of Maryland and defendant located in the state of Pennsylvania.

4.   Venue is properly before the Court, since the defendant is domiciled in the Eastern District of Pennsylvania.

### SUMMARY

5.   This case arises out of a pattern of discrimination against plaintiff by defendant's repeated violation of the ADA. See medical documentation and correspondence between the parties attached as Exhibit "A".

6.   The Court has previously issued an Opinion in this case, and dismissed all counts of the original complaint with the exception of Count IV, which is a cause of action under the ADA. See Opinion of the Court attached as Exhibit "B".

7.   This amended complaint is filed in response to the Court's Order of 06/21/12.

8.   This case arises out of the illegal suspension of plaintiff for a term of 3 years by defendant, which is de facto a lifetime ban, since plaintiff will be unable to finish her medical degree in the required 7 years. See plaintiff's transcript from UIC, attached as Exhibit "C".

9.   The only requirement which plaintiff must fulfill for her degree is the testing with the NBME. She has completed all other requirements at UIC for her medical degree.

10. The suspension in question occurred after an incident on or about 08/08/11 at the Prometric Testing Center in Baltimore.

11. Prometric is an agent of the NBME, and it administers examinations for medical students.

12. Plaintiff was suspended by defendant for "irregular behavior".

13. If plaintiff is barred from taking the USMLE CK Part II (US Medical Licensing Examination, Clinical Knowledge Part II) for three years, then she will be unable to graduate from her medical school at UIC.

14. The letter from the NBME, attached and incorporated as Exhibit "D", indicates that in addition to the 3-year suspension, the phrase "irregular behavior" will occur on plaintiff's future transcripts.

15. This designation will make it difficult, if not impossible, to obtain a medical residency.

16. Plaintiff is bringing this lawsuit for damages under the ADA and equitable relief.

17. She also requests relief which allows her to take the requisite medical tests which she needs to complete her requirements as a physician.

18. Plaintiff was not allowed to take the USMLE Clinical Knowledge Part II Examination, but her attempt was counted against her by the NBME.

## GENERAL ALLEGATIONS

19. At all times material herein, Maria Mahmood was a medical student at UIC, who has completed all academic requirements for her medical studies.

20. Plaintiff will not be awarded her M.D. unless she passes the USMLE Part II Examination.

21. When plaintiff took her last USMLE Clinical Knowledge Part II on 08/08/11, there was an incident which occurred in the ladies' room of the building where the testing center was located.

22. No harm resulted from this incident.

23. The ladies' room was a public bathroom some distance from the testing room, which was used by anyone who was in the building where the medical test was being given.

24. Plaintiff lit a small amount of toilet paper in the ladies' room which was quickly extinguished. No fire alarm was activated at any time. See plaintiff's affidavit at Exhibit "E".

25. The medical examination was in no way affected or disrupted by plaintiff's actions. Plaintiff was not allowed to take her USMLE Clinical Knowledge Part II on that day by the Prometric Testing Center at Baltimore.

26. There is no evidence that anyone who was taking any examination saw plaintiff involved in any irregular conduct or that anyone in the exam room was even aware of what plaintiff did.

27. As a result of this incident, plaintiff was arrested. The arrest of plaintiff will soon be expunged. See expungement documents attached as Exhibit "F".

28. The NBME suspended plaintiff on the basis of "irregular behavior", even though no irregular behavior occurred or was perceived in the examining room.

29. As a result of this 3-year suspension, plaintiff is unable to complete her medical education in the required 7 years, which is mandated by the University of Illinois, College of Medicine at Chicago.

30. Plaintiff is prohibited by the action of defendant from taking her United States Medical Licensing Examination, Clinical Knowledge Part II, and United States Medical Licensing Examination, Clinical Skill Part II.

31. Plaintiff is legally blind and she needed special vision equipment to take her NBME licensing examination.

32. The facility where plaintiff took her licensing examination did not have the proper disability accommodations under the ADA for plaintiff to take her examination, although

Prometric was provided with prior knowledge of, and/or authorization for, accommodations to be available.

33. On several prior occasions, the NBME testing facilities lacked proper and reasonable accommodation for plaintiff's disability. See Exhibit "A".

## FIRST CAUSE OF ACTION

34. Plaintiff incorporates all prior paragraphs as though fully set forth herein.

35. Plaintiff is filing this lawsuit for violation of the Americans with Disabilities Act.

36. Plaintiff is legally blind, and the NBME has recognized that she needs special accommodation for her visual impairment.

37. Plaintiff requires large print, zoom text, etc., to be able to read with her monocular.

38. On the date in question, plaintiff had requested special accommodations from the defendant so that she could take the examination. The NBME authorized these disability accommodations, but Prometric, their agent, failed to provide them on the testing date.

39. Defendant failed to reasonably accommodate plaintiff so that she was unable to take the test in question.  See Exhibit "A".

40. Defendant's history of failing to accommodate plaintiff's impaired vision disability is both unreasonable and a violation of the ADA.

41. As a result of defendant's actions, plaintiff was distraught when it appeared that she again would be unable to take the USMLE because of the lack of proper equipment needed to accommodate her disability.

42. On the date of the written examination in question, another candidate with disabilities came to take an examination, and plaintiff's seat at the examination was given to the other candidate. This is tantamount to discrimination and denial of equal opportunity.

43. Defendant violated the ADA by its actions in failing to reasonably accommodate plaintiff's disability on several occasions.

44. Defendant sent a letter to plaintiff dated 07/10/12, which is attached and incorporated as Exhibit "G".

45. It is noteworthy that none of the correspondence from the defendant references its failure to accommodate plaintiff's vision impairment on 08/08/11.

46. In order to show a violation of the ADA in connection with testing, the plaintiff must show 1) that she is disabled, 2) that her requests for accommodations are reasonable, and 3) that those requests were denied. *D'Amico v. State Board of Law Examiners*, 813 F.Supp. 217, 221 (W.D.N.Y. 1993).

47. There is little or no dispute that plaintiff is visually impaired and thus disabled, and her requests for a device to read her medical examination were reasonable.

48. Plaintiff sets forth in her affidavit and accompanying exhibits that there is a history and course of conduct by defendant that shows that her reasonable requests have been denied.

49. The purpose of the ADA is to "... provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. 1212(5)(A).

50. Courts apply a "... fact-specific, case-by-case inquiry that considers, among other factors, the effectiveness of the modification in light of the nature of the disability in question and the cost to the organization which would implement it." *Sharon v. McDonald's Corporation*, 51 F.3d 353, 356 (2d Cir. 1995).

51. As a result of the discrimination by defendant at the testing center, plaintiff's depression and anxiety were exacerbated, resulting in the aforementioned incident, which in no way disrupted the examination.

52. This discrimination is antithetical to the letter and spirit of the ADA, and is a clear denial of equal opportunity.

53. Defendant engaged in a course of conduct involving plaintiff which violated the ADA.

WHEREFORE, plaintiff requests damages and equitable relief, as the Court deems proper and appropriate.

Respectfully submitted,

*William C. Reil*

William C. Reil, Esquire
Attorney for Plaintiff
File ID# WCR1962
07/18/12

# EXHIBIT A

# ROCKVILLE EYE ASSOCIATES
### EYE PHYSICIANS AND SURGEONS

Arnauld F. Scafidi, MD
Mark A. Hendrix, MD
George C. Agritellis, MD

August 22, 2005

**Re: Maria Mahmood**
**DOB: 8/15/1979**

To whom it may concern,

    Ms. Mahmood has low vison nystagmus secondary to oculocutaneous albinism. Her visual acuity is 20/200 with each eye, but she can read slowly with a handheld telescope. Due to the time and effort necessary for reading, she will require at least twice the usual amount of time to complete a written test. If additional information is needed, please feel free to contact me.

Sincerely,

Mark A. Hendrix, MD

121 Congressional Lane, Suite 510, Rockville, Maryland  20852 | Phone (301) 231-5088   Fax (301) 231-5254

 **NBME**™

National Board of Medical Examiners
3750 Market Street
Philadelphia, PA 19104-3102

215-590-9500 phone
www.nbme.org

Direct phone: (215) 590-9776
Email: mpatterson@nbme.org
Fax: (215) 590-9457

September 18, 2007

Maria Mahmood
14717 Exbury Lane
Laurel, MD  20707

USMLE # 5-166-839-0

Dear Ms. Mahmood:

Your September 5, 2007, correspondence was forwarded to me for review.  In your e-mail, you reported that you had originally scheduled your USMLE Step 1 examination for August 7 and 8, 2007, but were unable to test because the test center did not have your approved accommodations.  You requested that you be allowed to retake the examination even though you achieved a passing score.

I understand that you were originally scheduled to test on August 2 and 3, 2007, at the Prometric center in Columbia, Maryland.  We shipped an LCD monitor to Columbia for that date.  However, I understand that you rescheduled the exam for August 7 and 8 at a Prometric center in Bethesda, Maryland.  Unfortunately, we were not informed of the change in test center location.  Therefore, the LCD monitor and enlarged text software were not available for you on August 7.  As a result, I understand that you were rescheduled to the Columbia test center for August 13 and 14 and tested both days with the approved accommodations.

While we very much regret any inconvenience caused by these circumstances, as you noted in your e-mail, USMLE policy does not allow, in this situation, the retake of an examination on which passing performance has been achieved.  Therefore, your request for a retest cannot be granted.

Sincerely,

Mary E. Patterson

Mary E. Patterson
Manager, Test Administration for USMLE

Gmail - Your Step 2 CK scheduling permit                                    https://mail.google.com/mail/u/0/?ui=2&ik=ccea25ea68&view...

 **by Google**

Maria Mahmood <mmahmo4@gmail.com>

## Your Step 2 CK scheduling permit

2 messages

**testadmin <testadmin@nbme.org>**                                    Mon, Oct 12, 2009 at 8:43 AM
To: mmahmo4@gmail.com

USMLE # 5-166-839-0

Dear Ms. Mahmood:

We sincerely regret the difficulties you encountered regarding your USMLE Step 2 CK examination on October 5-6, 2009.  We understand that technical problems prevented you from taking your examination.

You will receive notification via e-mail that your new Step 2 CK Scheduling Permit is available. The e-mail will be from usmlereg@nbme.org.  Please use the link included in that e-mail to view and print the Scheduling Permit.

Please follow the directions listed on the permit to schedule your new exam at a Prometric Test Center in the United States region.  Your Step 2 CK eligibility period will be extended through January 8, 2010.  Please bring the permit, along with an unexpired, government-issued photo ID with signature, for admission to the examination.  Of course, there is no charge for this retest.

As mentioned in my voice mail to you, I will look into the other concerns mentioned in your letter.

Please feel free to contact me if you have any questions.

Sincerely,

Marian D. Proctor

Test Administration Specialist, USMLE

3/14/12 7:01 AM

Gmail – Your Step 2 CK scheduling permit                    https://mail.google.com/mail/u/0/?ui=2&ik=ccea25ea68&view...

National Board of Medical Examiners

3750 Market Street

Philadelphia, PA  19104

Phone:  (215) 590-9725

Fax:  (215) 590-9457

E-mail:  testadmin@nbme.org

---

**Maria Mahmood <mmahmo4@uic.edu>**                        **Mon, Oct 12, 2009 at 10:25 AM**
To: Naveeda Mahmood <aamirmd80@hotmail.com>

[Quoted text hidden]

---



Maria Mahmood <mmahmo4@gmail.com>

# Step 2 CK CIN problem

3 messages

**Maria Mahmood <mmahmo4@gmail.com>**                    Wed, Feb 16, 2011 at 10:40 AM
To: testadmin@nbme.org

Hi,

I am a 4th year med student trying to sit for the Step 2 CK exam at
prometric center @0084, where I have taken prior tests. Today I was
scheduled for the step 2 CK, I arrived at the center promptly at 8am
and signed in to take the exam. I have approved special
accommodations which are a monitor with zoom-text software to enlarge
the on screen characters, 2 x time and use of a monocular within the
test. this morning the pc would not start at first, but about 10
minutes later the center admins were able to start it and login into
the prometric start screen, when I tried to put in my Candidate ID
number from the scheduling permit I had printed form the NBME site
earlier that morning, specifically FDZV889XDQG, i would repeatedly get
the incorrect CIN error message. I alerted the center admins to this
problem and they tried multiple times as well but were also
unsuccessful. Both the center admins and myself tried the CIN with
upper and lower case characters but were unsuccessful. At about 9am I
called 215-590-9700 and was able to speak to a customer rep who was
able to verify the number. I tried it a few more times but still no
success. At about 930am  the center admins had been talking to tech
support the whole time and were given an alternate number that worked.
I did not proceed with the test because I did not see it linked to my
name, and considering that the first day of the exam was 8h45min to 9h
long, and because of the uncertainty I felt about the new number
giving me problems later on, I was forced to defer taking the exam
until I could have verification that this would not cause any problems
down the line.

I would like to resolve this matter as soon as possible and would like
to schedule the exam at the same center before the 23rd of February,
2011. I am applying for the residency match this year and I need to
sit for the step 2CK asap. I don't think I should have to pay any
fines to reschedule the exam since this was clearly not my mistake.
The ideal scenario would be to return to the center tomorrow, feb 17th
2011, and the next day and be done with the exam.

Please help me as soon as possible, I would really appreciate an
expedient reply,
Maria Mahmood
USMLE ID: 51668390

Gmail - Step 2 CK CIN problem

https://mail.google.com/mail/u/0/?ui=2&ik=ccea25ea68&view...

**testadmin <testadmin@nbme.org>**
To: Maria Mahmood <mmahmo4@gmail.com>

Fri, Feb 18, 2011 at 12:36 PM

Dear Ms. Mahmood:

We have received your February 16, 2011 correspondence regarding your
February 16, 2011 USMLE Step 2 CK examination. Please allow at least 10
business days for a review of your concerns. You will be sent a letter
regarding the outcome of the review once completed.

Any questions regarding the status of the review of your concerns should be
addressed to the Test Administration Specialist below. Before contacting
this person for an update, please allow at least two business days from the
date of this notification for a preliminary assessment to be conducted.

Marian D. Proctor at (215) 590-9725 or testadmin@nbme.org.

Sincerely,
Test Administration for USMLE
National Board of Medical Examiners
Telephone: 215-590-9700
Fax: 215-590-9457
E-mail: testadmin@nbme.org

[Quoted text hidden]

**Maria Mahmood <mmahmo4@gmail.com>**
To: Naveeda Mahmood <aamirmd80@hotmail.com>

Fri, Feb 18, 2011 at 1:44 PM

[Quoted text hidden]



**US·MLE**

United States
Medical
Licensing
Examination ®

*Secretariat:*
3750 Market Street
Philadelphia, PA 19104
(215) 590-9500
Fax: (215) 590-9470
www.usmle.org

**Via Email and Fed Ex**
**Personal and Confidential**

August 24, 2011

Maria Mahmood                          USMLE ID#: 5-166-839-0
14717 Exbury Lane
Laurel, MD 20707

Dear Ms. Mahmood:

Individuals who proctor the USMLE are instructed to report any incident of possible irregular behavior that occurs in connection with the administration of the examination. In reference to your August 8, 2011 USMLE Step 1 test administration, the National Board of Medical Examiners (NBME) received from proctors at the Prometric Test Center in Baltimore, Maryland, where you tested, a report that you were observed attempting to light a fire in the bathroom of the testing center. Authorities were called and you were removed from the premises.

Examinees are advised in the USMLE *Bulletin of Information* that irregular behavior includes any action by applicants, examinees, potential applicants, or others when solicited by an applicant and/or examinee that subverts or attempts to subvert the examination process. The *Bulletin* further explains that disruptive or unprofessional behavior at a test center constitutes irregular behavior. In addition it advises examinees that evidence of violation of any test administration rule will result in actions being taken under USMLE policies and procedures on irregular behavior.

On the basis of the report from the proctors and the rules regarding conduct during examinations, there is reason to believe that you may have engaged in irregular behavior. I am enclosing herein a copy of the "*United States Medical Licensing Examination (USMLE) Policies and Procedures Regarding Irregular Behavior.*"

As explained in these materials, all pertinent information will be reviewed by the USMLE Committee for Individualized Review (formerly known as the USMLE Committee on Irregular Behavior). As explained in Procedure #5, you may submit an explanation and/or any other relevant information you wish the Committee to consider when it reviews this matter. Please forward any such information to me to arrive in my office by **October 12, 2011** for distribution to the Committee for Individualized Review before its meeting on October 26, 2011. You also have the opportunity to appear personally before the Committee. Please let me know by **October 12, 2011** whether or not you wish to appear personally before the Committee.

Additionally, you will not be permitted to take any USMLE exams until this matter has been reviewed. This includes the Step 2 CS which you were scheduled to take this Friday, August 26, 2011. **Your August 26, 2011 appointment at the Philadelphia CS center has been cancelled and your Step 2 CS application fee refunded.**

*A Joint Program of the Federation of State Medical Boards of the U.S., Inc. and the National Board of Medical Examiners®*


**FEDERATION OF STATE MEDICAL BOARDS**

Federation of State Medical Boards of the U.S., Inc.
400 Fuller Wiser Road, Suite 300
Euless, TX 76039
(817) 868-4000
Fax: (817) 868-4097
www.fsmb.org



National Board of Medical Examiners
3750 Market Street
Philadelphia, PA 19104
(215) 590-9500
Fax: (215) 590-9555
www.nbme.org

Marla Mahmood
August 24, 2011
Page 2 of 2

If you have any questions about this matter, please do not hesitate to contact me at
USMLESec@nbme.org.


Sincerely,

Amy Buono
Office of the USMLE Secretariat


Enclosure: *USMLE Policies and Procedures Regarding Irregular Behavior*

# EXHIBIT B

Case 2:12-cv-01544-TR   Document 28-14   Filed 01/09/13   Page 17 of 44
Case 2:12-cv-01..4-TR   Document 20-2   Filed 07/19/1.   Page 11 of 37
Case 2:12-cv-01544-TR   Document 19   Filed 06/21/12   Page 1 of 1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARIA MAHMOOD, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| NATIONAL BOARD OF | : | No. 12-1544 |
| MEDICAL EXAMINERS, | : | |
| Defendant. | : | |

### ORDER

AND NOW, this **21st** day of **June, 2012**, upon consideration of Defendant's Motion to

Dismiss (doc. 5) and the responses and exhibits thereto, as well as Plaintiff's Motion for

Permanent and/or Preliminary Injunction (doc. 4) and Defendant's response in opposition

thereto, it is hereby ORDERED that:

1.   Counts I, II, and III of Plaintiff's claim are DISMISSED.

2.   Plaintiff is granted leave to file an amended complaint with respect to Count IV within 28
     days.

3.   Plaintiff's Motion for a Permanent and/or Preliminary Injunction is DENIED.

4.   Plaintiff's request for oral argument is DENIED.


BY THE COURT:


/s/ Timothy R. Rice
HONORABLE TIMOTHY R. RICE
United States Magistrate Judge



## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MARIA MAHMOOD,  :
           Plaintiff,  :     CIVIL ACTION
                 :
           v.  :
                 :
NATIONAL BOARD OF  :     No. 12-1544
MEDICAL EXAMINERS,  :
           Defendant.  :

### MEMORANDUM

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant National Board of Medical Examiners ("NBME") seeks to dismiss Plaintiff Maria Mahmood's claims of cruel and unusual punishment, violation of due process, commingling of investigative and adjudicatory functions, and failure to accommodate a disability. Alternatively, pursuant to Rule 56(a), NBME seeks summary judgment on these claims. Mahmood, meanwhile, seeks a preliminary or permanent injunction requiring NBME to allow her to take the U.S. Medical Licensing Exam, Clinical Knowledge Part II ("USMLE CK-II"). For the following reasons, NBME's motion to dismiss is GRANTED on Counts I-III and DENIED on Count IV, and Mahmood's motion for a preliminary or permanent injunction is DENIED.

## I.   BACKGROUND[1]

Mahmood attended medical school at the University of Illinois at Chicago ("UIC"). Compl. ¶ 12, Mahmood v. Nat'l Bd. Med. Exam'rs, No. 12-1544 (E.D. Pa. Mar. 27, 2012). One

---

[1] I accept all of Mahmood's well-pled factual allegations as true. See Grammar v. John J. Kane Reg'l Ctrs.-Glen Hazel, 570 F.3d 520, 523 (3d Cir. 2009).

of UIC's graduation requirements is the successful completion of the USMLE CK-II, for which Mahmood registered.  Id. ¶ 13.

Mahmood is legally blind and required special equipment to take the examination.  Id. ¶ 26.  On the day of the examination, NBME "did not have the proper disability accommodations under the ADA" that Mahmood required.  Id. ¶ 27.  She then started a small fire in a restroom in the examination building, which led to her arrest.  Id. ¶¶ 17, 20.  She pled guilty to malicious destruction of property.[2]  NBME subsequently suspended Mahmood from taking the USMLE CK-II for three years on the basis of "irregular behavior."  Id. ¶ 23.

Mahmood filed her complaint on March 27, 2012.  In Count I, she maintains NBME violated her "constitutional rights . . . to be free from cruel and unusual punishment."  In Count II, she alleges NBME violated her Fourteenth Amendment right to procedural and substantive due process.  In Count III, she argues NBME violated her civil rights by "commingl[ing] the investigative and adjudicative functions involving the charges against" her.  Finally, in Count IV, Mahmood claims NBME violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., by failing to reasonably accommodate her blindness.  On April 19, 2012, Mahmood moved for a preliminary or permanent injunction requiring that NBME permit her to take the USMLE CK-II.

NBME maintains it is not a state actor and thus not subject to suit under 42 U.S.C § 1983 for Counts I-III.  Mot. Dismiss, Mahmood v. Nat'l Bd. Med. Exam'rs, No. 12-1544 (E.D. Pa. Apr. 24, 2012).  It further maintains Mahmood fails to state a claim under which relief can be

---

[2] This fact is not included in Mahmood's complaint but may be found in the criminal docket for her case.  Docket, Maryland v. Mahmood, No. 5B02131722 (Cir. Ct. Md. Balt. Jan. 13, 2012).

granted pursuant to the ADA. Id.

## II.     LEGAL STANDARD

### A.     Motion to Dismiss[3]

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

I must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Grammar, 570 F.3d at 523; see also Byers v. Intuit, Inc., 600 F.3d 286, 291 (3d Cir. 2010). I need not, however, credit a plaintiff's legal conclusions or "threadbare recitals of the elements of a cause of action supported by mere conclusory statements." Iqbal, 556 U.S. at 678.

---

[3] NBME moves, in the alternative, for summary judgment. No discovery has been taken in this matter, and NBME has not filed an answer to the complaint. Thus, summary judgment would be premature. See Doe v. Abington Friends Sch., 480 F.3d 252, 257 (3d Cir. 2007) ("[I]t is well established that a court is obliged to give a party opposing summary judgment an adequate opportunity to obtain discovery. This is necessary because, by its very nature, the summary judgment process presupposes the existence of an adequate record.") (quotations and citations omitted).

Case 2:12-cv-01544-TR   Document 28-14   Filed 01/09/13   Page 21 of 44
Case 2:12-cv-01⌐.4-TR   Document 20-2   Filed 07/19/1⌐   Page 15 of 37
Case 2:12-cv-01544-TR   Document 18   Filed 06/21/12   Page 4 of 10

B.  Motion for Preliminary Injunction[4]

"A plaintiff seeking a preliminary injunction must establish that [s]he is likely to succeed

on the merits, that [s]he is likely to suffer irreparable harm in the absence of preliminary relief,

that the balance of equities tips in [her] favor, and that an injunction is in the public interest."

Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008).  A mere possibility of

irreparable harm is insufficient.  "'[I]njunctive relief [is] an extraordinary remedy that may only

be awarded upon a clear showing that the plaintiff is entitled to such relief.'"  Chester ex rel.

N.L.R.B. v. Grane Health Co., 666 F.3d 87, 95 (3d Cir. 2011) (quoting Winter, 555 U.S. at 22).

## III. DISCUSSION

A.  Counts I-III

Counts I, II, and III allege constitutional violations under § 1983, which requires action

under color of state law.  See Lugar v. Edmondson Oil Co., 457 U.S. 922, 924 (1982).  Mahmood

maintains NBME acted under color of state law when it suspended her from taking the USMLE

CKE-II for three years.  Pl.'s Answer Def.'s Mot. Dismiss at 9, Mahmood v. Nat'l Bd. Med.

Exam'rs, No. 12-1544 (E.D. Pa. May 25, 2012) [hereinafter Pl.'s Answer].  She further claims

that NBME's suspension effectively will be a "lifetime ban" on her attempt to become a

physician, thus making the suspension an action under color of state law.[5]  Id. at 6.

---

[4] Mahmood moves for either a preliminary or permanent injunction.  A permanent injunction would be premature because the appropriate time for such an injunction would be after a trial on the merits.  See Univ. Tex. v. Camenisch, 451 U.S. 390, 396 (1981) ("Where . . . a federal district court has granted a permanent injunction, the parties will already have had their trial on the merits.").

[5] Mahmood also claims NBME acted under color of law when one of its employees contacted the police, which ultimately resulted in Mahmood's arrest for starting the fire.  Pl's Answer at 9.  I disagree.  Following this rationale, anyone who reports criminal activity to the

4

Case 2:12-cv-01544-TR   Document 28-14   Filed 01/09/13   Page 22 of 44
Case 2:12-cv-01⌐.4-TR   Document 20-2   Filed 07/19/1⌐   Page 16 of 37
Case 2:12-cv-01544-TR   Document 18   Filed 06/21/12   Page 5 of 10

There are various approaches to evaluate whether an action is under color of state law. First, the exclusive government function approach assesses whether a state delegated a power "'traditionally exclusively reserved to the state.'" Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 157 (1978) (quoting Jackson v. Metro. Edison Co., 419 U.S. 345, 352 (1974)). Second, the joint participation or symbiotic relationship test examines whether the "State has so far insinuated itself into a position of interdependence with [a defendant] that it must be recognized as a joint participant in the challenged activity." Burton v. Wilmington Parking Auth., 365 U.S. 715, 752 (1961). Third, the close nexus approach analyzes "whether there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." Jackson, 419 U.S. at 351.

These tests are not mutually exclusive, but the overarching requirement is "'that the defendant in a § 1983 action . . . exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" Groman v. Twp. of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995) (quoting West v. Atkins, 487 U.S. 42, 49 (1988)). This is a question of law. See Barber v. Sheppleman, No. 10-3620, 2011 WL 4465840, at *2 (E.D. Pa. Sept. 26, 2011) (describing "color of state law" requirement as a legal issue).

NBME is not a state actor. Boggi v. Med. Rev. & Accrediting Council, No. 08-4941, 2009 WL 2951022, at *5-9 (E.D. Pa. Sept. 15, 2009) (Schiller, J.), aff'd 415 F. App'x 411 (3d Cir. 2011).[6] The plaintiff in Boggi lost his medical license and sought re-licensing through

---

police becomes a potential state actor.

[6] The phrase "state actor," as used here and in Boggi for the § 1983 determination, should not be confused with the "state action" requirement of the Fourteenth Amendment. The tests for the two "are identical in most contexts," Groman, 47 F.3d at 638 n.15, but my analysis is limited

Case 2:12-cv-01544-TR   Document 28-14   Filed 01/09/13   Page 23 of 44
Case 2:12-cv-015⌐4-TR   Document 20-2   Filed 07/19/12   Page 17 of 37
Case 2:12-cv-01544-TR   Document 18   Filed 06/21/12   Page 6 of 10

NBME and MRAC, another private licensing institution. Id. at *1. The plaintiff subsequently filed a § 1983 claim, claiming both institutions violated his Fourteenth Amendment property right in his medical license. Id. The court dismissed the claim, finding NBME was not a state actor. Id. at *5-7. Applying the "close nexus" test, the court noted "[t]here is no indication that the State of Maryland, or any other state, holds sway over the policies or procedures of NBME nor is there any evidence that Maryland plays any role in devising questions or medical tests for those seeking to become doctors." Id. at *6. The court also rejected the claim of a "symbiotic relationship," explaining that, "[a]t most, NBME and MRAC are companies with which certain states deal in the realm of medical licensing. But that interaction does not render them state actors." Id. Finally, the court noted NBME was not performing a "traditionally exclusive government function" because "[t]esting and test score reporting are not tasks left solely to the state." Id. at *7; see also McKeesport v. Accreditation Council Graduate Med. Educ., 24 F.3d 519, 525 (3d Cir. 1994) ("The evaluation and accreditation of medical education in this country is neither a traditional nor an exclusive state function."). The court concluded:

> The State of Maryland, through the Board, is responsible for licensing doctors. [The plaintiff] cannot file a civil rights lawsuit seeking to reinstate his license against those not involved in the decision-making process regarding his ability to practice medicine. None of his allegations gives [sic] rise to an inference that Maryland acted with Defendants, controlled Defendants, instructed Defendants, or were even aware of Defendants interactions with [the plaintiff]. The actions of NBME and MRAC are not attributable to Maryland and thus neither Defendant, nor any of the persons working for either Defendant, can be deemed a state actor.

Boggi, 2009 WL 2951022, at *9.

NBME did not act under color of state law in suspending Mahmood. NBME does not

---

to § 1983's "color of state law" requirement.

license physicians; rather, it provides testing services and exam results that states may choose to use. See id. at *6. There is no "close nexus" because Maryland plays no role in developing NBME's exams or disciplinary procedures. Furthermore, there is no "symbiotic relationship" between Maryland and NBME. Rather, NBME acted independently in suspending Mahmood; what Maryland does with this information is another matter within the state's discretion. Finally, as described in Boggi, the medical testing services provided by NBME are not an "exclusive state function." Id. at *7. Accordingly, Counts I-III must be dismissed.

    B.    <u>Count IV</u>

    Mahmood claims NBME violated the ADA by failing to provide her an accommodation. "Any person that offers examinations or courses related to applications, licensing, certification, or credentialing for secondary or post-secondary education, professional, or trade purposes shall offer such examinations or courses in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals." 42 U.S.C. § 12189. "To succeed on a failure-to-accommodate claim, a plaintiff must prove: '(1) that she is disabled, (2) that her requests for accommodations are reasonable, and (3) that those requests have been denied.'" <u>Mucci v. Rutgers</u>, No. 08-4806, 2011 WL 831967, at *21 (D.N.J. Mar. 3, 2011) (quoting <u>D'Amico v. N.Y. State Bd. Law Exam'rs</u>, 813 F. Supp. 217, 221 (W.D.N.Y. 1993)).

    Mahmood's complaint alleges few details to support her claim that NBME failed to reasonably accommodate her blindness. She claims she is legally blind and "needed special equipment to take her licensing exam." Compl. at ¶ 26. Her claim that NBME "did not have the proper disability accommodations under the ADA," <u>id.</u> ¶ 27, however, is not supported by any factual background and resembles a mere "recitation of the elements" of a cause of action, <u>see</u>

Iqbal, 556 U.S. at 681. For example, she does not attempt to describe the accommodation she requested or NBME's response to such a request. The paucity of factual allegations supporting the ADA claim makes determination of its plausibility difficult.

Mahmood requests leave to file an amended complaint "[i]f the complaint is insufficient due to a dearth of factual allegations." Pl.'s Answer at 11. I must "permit a curative amendment unless such an amendment would be inequitable or futile." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 245 (3d Cir. 2008). Although its filings show NBME clearly disputes Mahmood's allegations, NBME cannot show that an amendment would be inequitable or futile -- especially when I must rely upon the complaint. Accordingly, I will deny NBME's motion to dismiss Count IV and grant Mahmood leave to file an amended complaint within twenty-eight days solely with respect to this count of the original complaint.[7]

C.     Preliminary Injunction

Mahmood's ADA claim does not warrant a preliminary injunction. She cannot show a likelihood of success on the merits, the likelihood of irreparable harm is speculative, and she cannot show that a balance of equities or the public interest favors granting an injunction.[8]

The merits of Mahmood's ADA claim are subject to debate. Documents provided by NBME show it was trying to repair her custom-ordered monitor when Mahmood started the fire.

---

[7] Mahmood may amend the complaint or, if she does not desire to do so, may "assert[] [her] intent to stand on the complaint." See Borelli v. City of Reading, 532 F.2d 950, 951 n.1 (3d Cir. 1976). If she does not file an amended complaint within twenty-eight days of this memorandum opinion, NBME may renew its motion to dismiss with respect to Count IV. Id.

[8] I need not address the preliminary injunction with respect to Counts I-III. See Temple Univ. Commonwealth Sys. Higher Educ. v. Brown, No. 00-1063, 2001 WL 185535, at *12 (E.D. Pa. Feb. 23, 2001) (dismissing plaintiff's motion for preliminary injunction as moot where underlying claim was dismissed).

See Mot. Dismiss at Ex. 4. Mahmood's affidavit acknowledges NBME staff attempted to prop

her monitor into position without the stand and called other offices in the building seeking a

suitable replacement monitor. See Pl.'s Answer at Ex. B. The police report and NBME internal

report both note Mahmood lit the fire at approximately 9:10 A.M. -- less than twenty minutes

after staff signed Mahmood in at 8:52 A.M. See Mot. Dismiss at Exs. 2, 4. The timing of the

fire supports NBME's position that it was attempting to provide Mahmood with an adequate

monitor and that its efforts were interrupted by Mahmood setting the fire. The police report also

notes flammable material was used to start the fire, id. at Ex. 2, largely undermining Mahmood's

claim that the fire was an impromptu response to the NBME's failure to accommodate, see Pl.'s

Answer at 5. Thus, most of the documents provided by NBME, though not applicable to the

motion to dismiss, undermine Mahmood's claim and suggest she has a low likelihood of success

on the merits. Even if I were to ignore those documents, the dearth of factual support for

Mahmood's claims in the complaint does not suggest a strong likelihood of success on the ADA

complaint.

Where the plaintiff has not shown a likelihood of success on the merits, I need not

consider the issue of irreparable harm. See The Pitt News v. Fisher, 215 F.3d 354, 366 (3d Cir.

2000). Nevertheless, Mahmood has not made a strong showing of irreparable harm. Although

she claims a three-year suspension effectively precludes her ability to graduate from medical

school within seven years, she does not fully explore or explain alternatives. For example, she

does not discuss whether her school might grant her an extension on the seven-year requirement

and provides no evidence of an inability to transfer schools. Finally, Mahmood does not discuss

the ways in which adverse decisions by her university or NBME might be appealed to higher

9

Case 2:12-cv-01544-TR   Document 28-14   Filed 01/09/13   Page 27 of 44
Case 2:12-cv-01⌴ ⌴4-TR   Document 20-2   Filed 07/19/1⌴   Page 21 of 37
Case 2:12-cv-01544-TR   Document 18   Filed 06/21/12   Page 10 of 10

adjudicatory bodies.

Additionally, delays in testing or education services do not constitute irreparable harm. See Boehm v. Univ. Pa. Sch. Veterinary Med., 573 A.2d 575, 586 (Pa. Super. Ct. 1990), app. denied, 589 A.2d 687 (Pa. 1990) (no showing of irreparable harm where two veterinary students were suspended for a year and given permanent transcript notations for cheating on examinations); Sohmer v. Kinnard, 535 F. Supp. 50, 52 (D. Md. 1982) (pharmacy school expulsion not irreparable harm where plaintiff had possibility of re-applying to the school after showing behavioral improvements). But see Jones v. Bd. Governors Univ. N.C., 557 F. Supp. 263, 266 (D.N.C. 1983) (finding student could not be adequately compensated for delay in obtaining nursing degree). Mahmood has even less of a claim to irreparable harm than the plaintiffs in Boehm and Sohmer because she has not been suspended or expelled from her university. Unlike the plaintiff in Jones, furthermore, Mahmood has not yet been suspended from her school. Rather, the alleged harm to Mahmood, i.e., that NBME's three-year suspension constitutes a "de facto ban" on her becoming a physician, remains speculative.

Although Mahmood's education likely will be harmed if NBME maintains its three-year suspension, equity undermines her claim based on the fire she started. Moreover, any public interest in qualified persons becoming physicians is inapplicable. Mahmood's subjective opinion about her own qualifications is insufficient, and NBME has a countervailing public interest in keeping its testing services professional and reliable. Answer of Def., NBME, to Pl.'s Mot. Prelim. and/or Permanent Inj. at 35-36, Mahmood v. Nat'l Bd. Med. Exam'rs, No. 12-1544 (E.D. Pa. May 25, 2012).

Accordingly, I deny Mahmood injunctive relief. An appropriate order follows.

10

# EXHIBIT C

UNIVERSITY OF ILLINOIS AT CHICAGO • UNIVERSITY OF ILLINOIS AT CHICAGO • UNIVERSITY OF ILLINOIS AT CHICAGO • UNIVERSITY OF ILLINOIS

## UIC UNIVERSITY OF ILLINOIS AT CHICAGO

Page: 1

**Name:** Mahmood , Maria

**University Number:** 673486940

**Date Issued:** 25 - JUN - 12

**Course Level:** Professional - Chicago

**Day/Month of Birth:** 15 - AUG

Current Program
   College : Coll Medicine at Chicago - CS
   Major : Medicine - Chicago
Comments:
LEAVE OF ABSENCE EFFECTIVE (06/11/08-08/01/08)

| SUBJ | NO. | COURSE TITLE | CRED | GRD | PTS R |
|------|-----|--------------|------|-----|-------|
| INSTITUTION CREDIT: | | | | | |
| Term: | Fall 2004 - Chicago | | | | |
| Coll Medicine at Chicago - CS | | | | | |
| Medicine - Chicago | | | | | |
| BMS | 644 | Med Gross Hum Anat/Embryol I | 5.00 | S | 0.00 |
| BMS | 646 | Medical Cell & Tissue Biol | 4.00 | S | 0.00 |
| BMS | 648 | Medical Biochemistry | 3.00 | S | 0.00 |
| BMS | 653 | Physiology I | 5.00 | U | 0.00 |
| BMS | 654 | Human Development | 1.00 | S | 0.00 |
| BMS | 666 | Essentials Clinical Med I | 2.00 | PR | 0.00 |
| Term: | Ehrs: 15.00 GPA-Hrs: 0.00 | QPts: | 0.00 | GPA: | 0.00 |
| Term: | Spring 2005 - Chicago | | | | |
| Coll Medicine at Chicago - CS | | | | | |
| Medicine - Chicago | | | | | |
| BMS | 645 | Med Gross Hum Anat/Embryol II | 2.00 | S | 0.00 |
| BMS | 647 | Medical Human Neuroanat | 2.00 | S | 0.00 |
| BMS | 650 | Medical Nutrition | 2.00 | S | 0.00 |
| BMS | 660 | Physiology II | 5.00 | S | 0.00 |
| BMS | 661 | Brain and Behavior | 1.00 | S | 0.00 |
| BMS | 662 | Fund of Immunol & Microbiol | 3.00 | S | 0.00 |
| BMS | 667 | Essentials Clinical Med II | 3.00 | PR | 0.00 |
| BMS | 668 | Intro to Molec Med & Gene | 2.00 | S | 0.00 |
| Term: | Ehrs: 20.00 GPA-Hrs: 0.00 | QPts: | 0.00 | GPA: | 0.00 |
| Term: | Fall 2005 - Chicago | | | | |
| Coll Medicine at Chicago - CS | | | | | |
| Medicine - Chicago | | | | | |
| BMS | 653 | Physiology I | 5.00 | S | 0.00 |
| BMS | 654 | Human Development | 1.00 | S | 0.00 |
| BMS | 666 | Essentials Clinical Med I | 2.00 | PR | 0.00 |
| Term: | Ehrs: 8.00 GPA-Hrs: 0.00 | QPts: | 0.00 | GPA: | 0.00 |

****************** CONTINUED ON NEXT COLUMN ******************

| SUBJ | NO. | COURSE TITLE | CRED | GRD | PTS R |
|------|-----|--------------|------|-----|-------|
| Institution Information continued: | | | | | |
| Term: | Spring 2006 - Chicago | | | | |
| Coll Medicine at Chicago - CS | | | | | |
| Medicine - Chicago | | | | | |
| BMS | 660 | Physiology II | 5.00 | S | 0.00 |
| BMS | 661 | Brain and Behavior | 1.00 | S | 0.00 |
| BMS | 667 | Essentials Clinical Med II | 3.00 | PR | 0.00 |
| Term: | Ehrs: 9.00 GPA-Hrs: 0.00 | GPA: | 0.00 | | |
| Term: | Fall 2006 - Chicago | | | | |
| Coll Medicine at Chicago - CS | | | | | |
| Medicine - Chicago | | | | | |
| PRCL | 624 | Preclinical Student Portfolio | 1.00 | S | 0.00 |
| PRCL | 626 | Pathology I | 5.00 | S | 0.00 |
| PRCL | 627 | Infection and Immunity | 5.00 | S | 0.00 |
| PRCL | 628 | Pharmacology I | 3.00 | S | 0.00 |
| PRCL | 641 | Clinical Pathophysiology I | 4.00 | S | 0.00 |
| PRCL | 645 | Essentials of Clinical Med III | 11.00 | PR | 0.00 |
| Term: | Ehrs: 29.00 GPA-Hrs: 0.00 | QPts: | 0.00 | GPA: | 0.00 |
| Term: | Spring 2007 - Chicago | | | | |
| Coll Medicine at Chicago - CS | | | | | |
| Medicine - Chicago | | | | | |
| PRCL | 624 | Preclinical Student Portfolio | 1.00 | S | 0.00 |
| PRCL | 630 | Psychopathology | 1.00 | S | 0.00 |
| PRCL | 633 | Pathology II | 4.00 | S | 0.00 |
| PRCL | 635 | Pharmacology II | 3.00 | S | 0.00 |
| PRCL | 643 | Clinical Pathophysiology II | 2.00 | S | 0.00 |
| PRCL | 646 | Essentials of Clinical Med IV | 12.00 | PR | 0.00 |
| Term: | Ehrs: 23.00 GPA-Hrs: 0.00 | QPts: | 0.00 | GPA: | 0.00 |
| Term: | Summer 2007 - Chicago | | | | |
| Coll Medicine at Chicago - CS | | | | | |
| Medicine - Chicago | | | | | |
| CLER | 602 | Psychiatry | 6.00 | PR | 0.00 |
| CLER | 608 | Essent of Clin Pract & Prof | 2.00 | S | 0.00 |

****************** CONTINUED ON PAGE 2 ******************

ORDER#1563726

RAISED SEAL NOT REQUIRED. This official university transcript
is contained in a secured electronic file.



*Robert R Dixon*

Robert R. Dixon, J.D., Registrar

ILLINOIS AT CHICAGO • UNIVERSITY OF ILLINOIS AT CHICAGO • UNIVERSITY OF ILLINOIS AT CHICAGO • UNIVERSITY OF

UNIVERSITY OF ILLINOIS AT CHICAGO * UNIVERSITY OF ILLINOIS AT CHICAGO * UNIVERSITY OF ILLINOIS AT CHICAGO * UNIVERSITY OF ILLINOIS

# UIC | UNIVERSITY OF ILLINOIS AT CHICAGO

Page: 2

Name:  **Mahmood , Maria**

University Number:  **673486940**

Course Level:  **Professional - Chicago**

Date Issued:  **25 - JUN - 12**

Day/Month of Birth:  **15 - AUG**

| SUBJ | NO. | COURSE TITLE | CRED | GRD | PTS R |
|------|-----|-------------|------|-----|-------|
| Institution Information continued: | | | | | |
| Term: | Ehrs: 8.00 GPA-Hrs:0.00 | QPts: | 0.00 GPA: | 0.00 | |
| Term: | Fall 2007 - Chicago | | | | |
| Coll Medicine at Chicago - CS | | | | | |
| Medicine - Chicago | | | | | |
| CLER 604 | | Surgery | 8.00 | PR | 0.00 |
| CLER 605 | | Medicine | 12.00 | PR | 0.00 |
| SPEC 626 | | Basic Specialties | 2.00 | S | 0.00 |
| Term: | Ehrs: 22.00 GPA-Hrs: 0.00 | QPts: | 0.00 GPA: | 0.00 | |
| Term: | Spring 2008 - Chicago | | | | |
| Coll Medicine at Chicago - CS | | | | | |
| Medicine - Chicago | | | | | |
| CLER 603 | | Pediatrics | 6.00 | NR | 0.00 |
| CLER 606 | | Family Medicine | 6.00 | PR | 0.00 |
| Term: | Ehrs: 6.00 GPA-Hrs: 0.00 | QPts: | 0.00 GPA: | 0.00 | |
| Term: | Fall 2008 - Chicago | | | | |
| Coll Medicine at Chicago - CS | | | | | |
| Medicine - Chicago | | | | | |
| CLER 603 | | Pediatrics | 6.00 | PR | 0.00 |
| Term: | Ehrs: 6.00 GPA-Hrs: 0.00 | QPts: | 0.00 GPA: | 0.00 | |
| Term: | Spring 2009 - Chicago | | | | |
| Coll Medicine at Chicago - CS | | | | | |
| Medicine - Chicago | | | | | |
| CELE 606 | | Critical Care Medicine | 4.00 | NR | 0.00 |
| CLER 601 | | Obstetrics and Gynecology | 6.00 | U | 0.00 |
| CLER 612 | | Medicine Sub-Internship | 4.00 | NR | 0.00 |
| SPEC 626 | | Basic Specialties | 2.00 | S | 0.00 |
| Term: | Ehrs: 2.00 GPA-Hrs: 0.00 | QPts: | 0.00 GPA: | 0.00 | |
| Term: | Fall 2009 - Chicago | | | | |
| Coll Medicine at Chicago - CS | | | | | |
| Medicine - Chicago | | | | | |
| ***************** CONTINUED ON NEXT COLUMN ***************** | | | | | |

| SUBJ | NO. | COURSE TITLE | CRED | GRD | PTS R |
|------|-----|-------------|------|-----|-------|
| Institution Information continued: | | | | | |
| CELE 606 | | Critical Care Medicine | 6.00 | PR | 0.00 |
| CELE 606 | | Nephrology (Adult) | 4.00 | PR | 0.00 |
| CLER 601 | | Obstetrics and Gynecology | 6.00 | PR | 0.00 |
| SPEC 626 | | Basic Specialties | 6.00 | S | 0.00 |
| Term: | Ehrs: 22.00 GPA-Hrs: 0.00 | QPts: | 0.00 GPA: | 0.00 | |
| Term: | Spring 2010 - Chicago | | | | |
| Coll Medicine at Chicago - CS | | | | | |
| Medicine - Chicago | | | | | |
| CELE 606 | | Critical Care Medicine | 8.00 | ADV | 0.00 |
| CLER 612 | | Medicine Sub-Internship | 4.00 | ADV | 0.00 |
| SPEC 626 | | Basic Specialties | 7.00 | S | 0.00 |
| Term: | Ehrs: 19.00 GPA-Hrs: 0.00 | QPts: | 0.00 GPA: | 0.00 | |
| Term: | Spring 2011 - Chicago | | | | |
| Coll Medicine at Chicago - CS | | | | | |
| Medicine - Chicago | | | | | |
| SPEC 656 | | Otolaryngology Specialty | 2.00 | NR | 0.00 |
| Term: | Ehrs: 0.00 GPA-Hrs: 0.00 | QPts: | 0.00 GPA: | 0.00 | |

```
***************** TRANSCRIPT TOTALS *****************
                   Earned Hrs  GPA Hrs  Points   GPA
TOTAL INSTITUTION   189.00      0.00     0.00    0.00
***************** END OF TRANSCRIPT *****************
```



RAISED SEAL NOT REQUIRED. This official university transcript
is contained in a secured electronic file.

*Robert R. Dixon*

Robert R. Dixon, J.D., Registrar

UNIVERSITY OF ILLINOIS AT CHICAGO * UNIVERSITY OF ILLINOIS AT CHICAGO * UNIVERSITY OF ILLINOIS AT CHICAGO

TRANSCRIPT EXPLANATION
University of Illinois at Chicago
Office of Registration & Records (MC 018)
Box 5220, Chicago, IL   60680-5220        Phone: (312) 996-4380

**1.        ACCREDITATION**
University of Illinois at Chicago is accredited by the North Central Association of Colleges and Secondary Schools and by many other agencies. For specific program accreditation information, refer to the University catalog.

**2.        ACADEMIC CALENDAR/UNIT OF CREDIT**
**Effective Fall 1991: Semester Calendar**
The academic year consists of the Fall and Spring semesters and an eight-week Summer Session (ten weeks in the Health Sciences Colleges). Each regular semester includes fifteen weeks of instruction and one week of final examinations. The unit of credit is the semester hour.

**September 1965 – August 1991: Quarter Calendar**
University of Illinois at Chicago operated under the quarter calendar consisting of the Fall, Winter and Spring quarters and an eight-week Summer Session (ten weeks in the Health Sciences Colleges). Each quarter consisted of ten weeks of instruction and one week of final examinations. The unit of credit was the quarter hour.
**September 1946 – September 1965: Semester Calendar**

**3.        RELEASE OF INFORMATION**
In accordance with the Family Educational Rights and Privacy Act of 1974, as amended, this transcript is released to you on the condition that you will not release any information to any other party without the written consent of the student.

**4.        AUTHENTICITY OF TRANSCRIPT**
Official transcripts are printed on red security paper and do not require a raised seal. For further authentication, call (312) 996-4380.

**5.        GRADING SYSTEM**
**Effective Fall 2004:**
University of Illinois at Chicago changed from a 5.0 GPA to a 4.0 GPA scale. In the new system, all courses, whether taken while under the quarter hour or the semester hour systems, will be converted and shown as semester hours.

| | Grade | Grade Point Value |
|---|---|---|
| A | Excellent | 4 points per hour |
| B | Good | 3 points per hour |
| C | Average | 2 points per hour |
| D | Poor but passing | 1 point per hour |
| F | Failure | 0 points per hour |
| FR | Failure by Rule | 0 points per hour |

Other Grade Symbols (Not included in GPA computation)
W - Withdrew. Officially withdrew from course without penalty.
DFR - Deferred (prior to Fall 2004 was DF). Used for thesis courses, continuing seminar, sequential courses, certain study-abroad courses, and certain courses that require extensive independent work beyond the term. At the end of the continuing course sequence, the DFR must be converted to a specific letter grade, to an I, or to an S or U.
S - Satisfactory; U - Unsatisfactory. Used in graduate thesis research courses and graduate courses given for zero credit, and in specifically approved courses.
S* - Satisfactory. Credit does not apply toward earned credit hours or graduation.
CR - Credit (prior to Fall 2004 was P). For courses taken under credit/no credit option. CR is recorded if the letter grade of A, B, C or D is assigned. A CR will not be recorded for graduate students assigned a letter grade of D.
NC - No Credit (prior to Fall 2004 was F). Used only in course taken under credit/no credit option. NC is recorded if the letter grade of F is assigned. NC is recorded for graduate students assigned a letter grade of D or F.
NR - Not Reported (prior to Fall 2004 was M). Assigned when no grade is submitted by the instructor.
I - Incomplete (prior to Fall 2004 was IN). Course work is incomplete when a student fails to submit all required assignments or is absent from the final examination. Incomplete course work will normally result in a failing grade if it is not completed within the designated time limit.
PS - Pass (Prior to Fall 2004 was P). Awarded for test-based credit applied toward passed and earned hours.

Students enrolled prior to 1991 may have a divided transcript. Part may be generated from an image of the student information system in place prior to 1991. Grading system for imaged transcripts is described below.

| | Grade | Grade Point Value |
|---|---|---|
| A | Excellent | 5 points per hour |
| B | Good | 4 points per hour |
| C | Average | 3 points per hour |
| D | Poor but passing | 2 points per hour |
| E | Failure | 1 point per hour |
| ER | E by Rule | 1 point per hour |

Other Grade Symbol from an image of the student information system in use prior to 1991 (Not included in GPA computation) that was not mentioned above.
IN - Incomplete. For undergraduate, converts to ER (E by Rule) if not removed by the end of the subsequent term of enrollment or no later than one calendar year if student is not enrolled.

**6.        UIC CUMULATIVE GRADE INFORMATION**
The UIC Cumulative Grade Information includes the total hours earned and grade point average based upon the level of the student: Undergraduate, Graduate, Nondegree and Professional. Beginning Fall 1991, all UIC cumulative grade information is recorded in semester hours. The cumulative GPA includes all courses taken at UIC in which a grade of A, B, C, D, E or F was reported. NOTE: The Graduate College uses a Degree Grade Point Average, which does not appear on the transcript, to determine academic standing and graduation. It is an average of grades earned in all 400- and 500-level courses taken while in a specified graduate degree program, as well as any UIC (only) work transferred into that program from nondegree or another program.

**7.        SPECIAL NOTATIONS OR SYMBOLS ON TRANSCRIPT**
(Immediately preceding course number, grade, or credit entry)
AH, BH, SH        Indicates honors grading for grades assigned of A, B, or S
@        Graduate Credit (prior to 1990) Note: graduate courses are also determined by course numbers. If symbol does not appear, refer to course number.
&        Honors course section or honors credit (prior to 1991)
HC        Honors course section or honors credit
DH        Departmental Honors course section
E        Extramural Courses (symbol of E prior to 1990)
X        Correspondence Courses

**8.        COURSE NUMBERING SYSTEM**
**Beginning Fall 1991**
001-099        Academic preparation.
100-199        Undergraduate Level.
200-299        Undergraduate, Intermediate Level.
300-399        Undergraduate, Advanced Level.
400-499        Graduate Level and Advanced Undergraduate. Graduate students receive graduate credit.
500-599        Graduate Level. Intended exclusively for graduate and post-baccalaureate professional degree students.
600        Courses intended for students in post-baccalaureate degree, Certificate and other special programs.

**September 1965 – August 1991**
100-199        Open to all undergraduates.
200-299        Open only to juniors, seniors and those students meeting course prerequisites.
300-399        Courses for graduate and advanced undergraduate students.
400-499        Courses for graduate students.

**9.        TRANSFER CREDIT**
The precise amount of transfer credit applicable toward a particular degree is determined by the University college and department concerned. Transfer credit is awarded for certain standardized tests and U.S. Armed Forces Institute Courses. For further information, refer to the University Catalog. Transfer credit appears on the transcript summary based on prior institution(s) of attendance, and in some cases, prior to Spring 2003, as Pre-System Transfer Summary Hours recorded as a total of transfer credit.

**10.        HONORS COLLEGE AND HONORS RECOGNITION**
A.        Beginning Spring 2005 commencement, Latin Honors of Summa Cum Laude for 3.90 GPA and above, Magna Cum Laude for GPA 3.75 to 3.89, and Cum Laude for GPA 3.50 to 3.74 are recorded on the transcript.
B.        Prior to Spring 2005 commencement, University Honors are awarded to the top 3 percent of the graduating class in each college.
C.        Membership in the Honors College and in honors societies is recorded on the transcript.
D.        Honors College participation each term is indicated on the transcript by the course HON 222, Honors Activity.
E.        College Honors are awarded by each college to its outstanding graduates.
F.        Departmental Distinction is awarded by academic departments to their outstanding graduates.
As of the Summer 1986, University of Illinois at Chicago began issuing computer-generated transcripts. Students who were enrolled prior to Summer term 1986 and who subsequently re-enrolled may have a divided transcript. Part will be computer-generated and part copied from an original hard copy.

**11.        TO TEST FOR AUTHENTICITY:**
The face of this document has a red background and the name of the institution appears in the border and upper left hand corner.

ALTERATIONS OR FORGERY OF THIS DOCUMENT IS A CRIMINAL OFFENSE! If you have additional questions about this document, contact the Records Office at (312) 996-4380.

# EXHIBIT D



**US·MLE**
United States
Medical
Licensing
Examination ®

*Secretariat:*
3750 Market Street
Philadelphia, PA 19104
(215) 590-9500
Fax: (215) 590-9470
www.usmle.org

**Via Email and Fed Ex**
**Personal and Confidential**

February 23, 2012

Maria Mahmood                                    USMLE ID#: 5-166-839-0
14717 Exbury Ln
Laurel, MD  20707

Dear Ms. Mahmood:

I am writing to inform you that the USMLE Committee for Individualized Review
has completed its review of all of the available information related to your alleged
irregular behavior.

In advance of the review, the Committee members were provided with copies of
the following materials: (a) my letter to you dated August 24, 2011; (b) your
response to my letter, dated October 10, 2011; (c) email communications between
NBME staff and Prometric staff, dated August 8 through August 18; (d) a report,
written by Prometric, outlining the events that occurred at the Baltimore, MD
Prometric Center on August 8, 2011; (e) a copy of the Baltimore Police
Department's report, dated August 10, 2011; (f) case information from the Circuit
Court for Baltimore City Criminal System; and (g) your letter to the Committee,
dated January 22, 2012 and attachments.

In its deliberations, the Committee reviewed the foregoing information and noted
the following:

- A report was received from Prometric that you were observed attempting
  to light a fire in the bathroom of the testing center.

- In your written statement to the Committee you provided information and
  documentation about matters personal to you that you believe affected
  your judgment. In addition to personal medical issues, you site familial
  and monetary pressures to succeed, pressure due to an approaching
  deadline imposed by your medical school, and the anxiety and panic you
  experienced leading up to and on your exam day. You stated you felt the
  only way to get a respite was to "create a diversion that would delay" your
  exam.

---

*A Joint Program of the Federation of State Medical Boards of the U.S., Inc. and the National Board of Medical Examiners®*


Federation of State Medical Boards of the U.S., Inc.
400 Fuller Wiser Road, Suite 300
Euless, TX 76039
(817) 868-4000
Fax: (817) 868-4097
www.fsmb.org




National Board of Medical Examiners
3750 Market Street
Philadelphia, PA 19104
(215) 590-9500
Fax: (215) 590-9555
www.nbme.org

Maria Mahmood
February 23, 2012
Page 2 of 3

Following careful consideration of all of the information available, the Committee for Individualized Review determined that you engaged in irregular behavior. In reaching this decision, the Committee made the following findings:

- In connection with your application for Steps 1, 2 CK and 2 CS, you certified that you read and were familiar with the contents of the USMLE *Bulletin of Information* and agreed to abide by the policies and procedures described therein.

- Examinees are advised in the USMLE *Bulletin of Information* that disruptive or unprofessional behavior at a test center constitutes irregular behavior.

In accordance with "*USMLE Policies and Procedures Regarding Irregular Behavior*," a copy of which was included with my August 24, 2011 letter to you, your USMLE record will include an annotation showing that the Committee for Individualized Review determined that you engaged in irregular behavior. Therefore, any USMLE transcripts sent to you or any third party will include this annotation. When you submit requests for USMLE transcripts to be sent to third parties, the transcripts will be accompanied by information regarding the decision of the Committee for Individualized Review. Such information would be based on the content of this letter and the documents referenced in it.

Further, the Committee for Individualized Review determined that information regarding its decision will be reported to the Board Action Data Bank of the Federation of State Medical Boards.

As explained in paragraph B.8 of the Policies and Procedures, in the event of irregular behavior that is egregious and/or deemed to threaten the integrity of the examination system, the Committee for Individualized Review may recommend to the USMLE Composite Committee that the examinee be barred from future examinations. The Committee found such conditions applicable in this instance and will recommend to the Composite Committee that you be barred for three years from the date of this letter (i.e. until February 23, 2015) from registering for or taking future administrations of USMLE for which you are otherwise eligible. Periods when you may be ineligible for other reasons to register or sit for USMLE will not count toward this three-year bar. This recommendation will be reviewed by the USMLE Composite Committee at its June 2012 meeting.

As explained in paragraph B.11 of the above-referenced Procedures, you have the right to appeal this decision of the Committee for Individualized Review to the USMLE Composite Committee by sending a request for appeal within 90 days of the date of this letter, if you have a reasonable basis to believe that the Committee did not act in compliance with applicable USMLE policies and/or procedures or that the decision of the Committee was clearly contrary to the weight of the evidence before it.

If you have any questions regarding the foregoing information, please do not hesitate to contact me at USMLESec@nbme.org.

Maria Mahmood
February 23, 2012
Page 3 of 3


Sincerely,

Amy Buono
Office of the USMLE Secretariat


C: NBME
    Loreen Troy, University of Illinois College of Medicine

# EXHIBIT E

PAGE 1 OF 2
Mahmood

## AFFIDAVIT

STATE OF          Maryland
COUNTY OF        Prince George's

PERSONALLY came and appeared before me, the undersigned Notary, the within
named Maria Mahmood, who is a resident of Prince George's County, State of Maryland, and makes this
his/her statement and General Affidavit upon oath and affirmation of belief and personal knowledge that
the following matters, facts and things set forth are true and correct to the best of his/her knowledge:

(Insert Statement)

On August 8th, 2011, I arrived at the Baltimore City Prometric testing center at about 7:45 a.m. I was
processed by the staff, and asked to wait in the general waiting area outside of the testing area. Generally,
since I have double time on all written exams, I was often seated first as I would still be sitting for the
exam when other examiners had left the center. However, I waited for the staff to be finished with what
they were doing, seating all other examiners, and looked in from time to time to see if they had finished. I
was then seated in the booth with a computer to start the tutorial section of the exam. I began said
tutorial. Soon after beginning, I had heard loud voices in an area that was generally supposed to be a
quiet zone for the examinees. About ten minutes into the tutorial, one of the staff came into the booth and
asked me step outside as soon as I was able, as I might need to be seated elsewhere. I finished the tutorial
without answering all the practice questions; time was used in talking to the staff member who came in
and in readjusting the monitor so I could finish the tutorial.
Once outside of the booth, I asked about why they wanted to talk to me and was informed that I was to be
relocated to a seat in the general testing area. I went back to the booth, grabbed my belongings and went
to the waiting area. I asked why I was being relocated and was told that there was another student with
testing accommodations similar to mine, and the staff had decided to allow the other student to take the
seat I had just vacated. I went back to the waiting area and hoped the new seat was not next to a window
or in an overly lit spot. Later, I overheard the staff talking about a monitor that was broken, but the senior
staff member had decided to set it up anyway. I was called back, and taken to the general testing area,
seated next to a window with a monitor that was broken. It was of the LCD flat panel variety, however
the flat panel was perched on its edge on the desk and wires were leading to its stand that was placed
nearby. There was not much room for a mouse or keyboard that are a requirement for the test. I tried to
use it but the position that was required to use it would be difficult to maintain for the eight hours and
forty-five minutes that my exam would last the first day, and just as long for the second day. I went back
outside and asked for a working intact monitor. I work on a PC with the monitor screen a few inches
from the tip of my nose, and to type, I place the keyboard behind the monitor reaching around it on both
sides to reach the keyboard to type. The monitor setup they had provided would not allow for that. The
staff tried to convince me to take the test on the broken monitor but I asked again to be provided with a
working intact monitor setup. I stepped outside again and sat in the waiting area. Another staff member
arrived and tried to think of ways to fix the broken monitor but eventually determined that it was not
possible. There were some efforts made to find a replacement in the building but found that none could
be found. There were suggestions made that I may have to postpone the test. At that point I met with



police and was asked to wait in a conference room down the hall. I noticed a very large analog clock in the room that said 11:45 a.m. At that point it was far too late to take the test that day.

DATED this the **24**th day of May, 2012

Signature of Affiant

SWORN to subscribed before me, this **24**th day of May, 2012

7.3. 2014

NOTARY PUBLIC

JANETT L. FUNSANG
NOTARY PUBLIC
ANNE ARUNDEL COUNTY
MARYLAND
MY COMMISSION EXPIRES JULY 3, 2014

# EXHIBIT F

MARYLAND JUDICIARY ☑ **CIRCUIT COURT** ☐ **DISTRICT COURT OF MARYLAND FOR** _Baltimore City_

Located at _100 Herm Courts Street Baltimore MD_  Case No. _1112 4524_
Court Address

Tracking # _II 605 24319 2_

STATE OF MARYLAND                    vs.    _NADIA MAHMUD_                          _08/06/1979_
Defendant                                              DOB

### FORM 4-504.1. PETITION FOR EXPUNGEMENT OF RECORDS

1. (Check one of the following boxes) On or about _____ I was ☑ arrested, ☐ served with a summons,
Date
or ☐ served with a citation by an officer of the _Baltimore City Police_
Law Enforcement Agency
at _Baltimore_, Maryland, as a result of the following incident _____

2. I was charged with the offense(s) of _____

3. On or about _____, the charge was disposed of as follows (check one of the following boxes):
☑ I was acquitted and either three years have passed since disposition or a General Waiver and Release is attached.
☑ The charge was dismissed or quashed and either three years have passed since disposition or a General Waiver and Release is attached.
☑ A judgment of probation before judgment was entered on a charge that is not a violation of Code*, Transportation Article, § 21-902 or Code*, Criminal Law Article, §§ 2-503, 2-504, 2-505, or 2-506, or former Code*, Article 27, § 388A or § 388B; and either (a) at least three years have passed since the disposition, or (b) I have been discharged from probation, whichever is later. Since the date of disposition, I have not been convicted of any crime, other than violations of vehicle or traffic laws, ordinances, or regulations not carrying a possible sentence of imprisonment; and I am not now a defendant in any pending criminal action other than for violation of vehicle or traffic laws, ordinances, or regulations not carrying a possible sentence of imprisonment.
☐ A Nolle Prosequi was entered and either three years have passed since disposition or a General Waiver and Release is attached. Since the date of disposition, I have not been convicted of any crime, other than violations of vehicle laws, ordinances, or regulations not carrying a possible sentence of imprisonment; and I am not now a defendant in any pending criminal action other than for violation of vehicle or traffic laws, ordinances, or regulations not carrying a possible sentence of imprisonment.
☐ The proceeding was stetted and three years have passed since disposition. Since the date of disposition, I have not been convicted of any crime, other than violations of vehicle or traffic laws, ordinances, or regulations not carrying a possible sentence of imprisonment; and I am not now a defendant in any pending criminal action other than for violation of vehicle or traffic laws, ordinances, or regulations not carrying a possible sentence of imprisonment.
☐ I was convicted of a crime specified in Code, Criminal Procedure Article, §10-105 (a)(9); three years have passed since the later of the conviction or satisfactory completion of the sentence, including probation; and I am not now a defendant in any pending criminal action other than for violation of vehicle or traffic laws, ordinances, or regulations not carrying a possible sentence of imprisonment.
☐ The case was compromised or dismissed pursuant to Code*, Criminal Law Article, § 3-207, former Code*, Article 27, § 12A-5, or former Code*, Article 10, § 37 and three years have passed since disposition.
☐ On or about _____, I was granted a full and unconditional pardon by the Governor for the one
Date
criminal act, not a crime of violence as defined in Code*, Criminal Law Article, § 14-101(a), of which I was convicted. Not more than ten years have passed since the Governor signed the pardon, and since the date the Governor signed the pardon I have not been convicted of any crime, other than violations of vehicle or traffic laws, ordinances, or regulations not carrying a possible sentence of imprisonment; and I am not now a defendant in any pending criminal action other than for violation of vehicle or traffic laws, ordinances, or regulations not carrying a possible sentence of imprisonment.

WHEREFORE, I request the Court to enter an Order for Expungement of all police and court records pertaining to the above arrest, detention, confinement, and charges.
I solemnly affirm under the penalties of perjury that the contents of this Petition are true to the best of my knowledge, information and belief, and that the charge to which this Petition relates was not made for any noncarcerable violation of the Vehicle Laws of the State of Maryland, or any traffic law, ordinance, or regulation, nor it is part of a unit the expungement of which is precluded under Code*, Criminal Procedure Article, § 10-107.
*References to "Code" in this Petition are to the Annotated Code of Maryland.

_____                    _____         _____            _____
Signature of Attorney                           Date            Signature of Defendant                    Date

_____                                _____
Name - Printed                                   Name - Printed

_____                                _____
Address                                          Address

_____                                _____
Telephone Number                                 Telephone Number

CC-DC/CR 72 (Rev. 7/2009) Print Date 1/2009



```
06/21/12  CRIMINAL  COURT  OF  BALTIMORE     PUBLIC ACCESS  CASE INQUIRY  14:02
CASE 111245004                  DCM TRACK A DATE 101311     FELONY DRUG INIT
STATUS C  DATE 061912 PREV ST A 050212     CODEF NO   LAST CHANGE 06/20/12
  DEF MAHMOOD, MARIA              ID A15395 RACE: W  SEX: F  DOB 08/15/79
  14717 EXBURY LN                LAUREL              MD  20707
   DOA 000000  COMPLAINT 2H03605`  PHYS LOC           CASE LOC CAB 082411
   DOF 090211  INCIDN DT          TRACK NO 11-6105-24319-2 DIST CASE 5B02131722
001 000 C USER MALD   CODE 3 4030 MALT DESTR PROPERTY VALUE +$5 DISP 641  061912
    ARREST/CITATION NO 0
            PLEA G    DATE 011312     VERDICT PBJ  DATE 061912
    SENTENCE TYPE P   DATE 061912 TIME          BEG             SUSP
    PROBATION TIME 00Y00M00D  TYPE         COST         FINE
EVENT DATE   OPER PART TIME ROOM REAS / EVENT COMMENT
COMM 082411   CAT SUBJECT TO THE FOLLOWING CONDITION(S) RESTRICTION(S) STAY
COMM 082411   CAT AWAY FROM MARINER BANK TOWER 1501 S CLINTON ST
CASI 090211   SCB COPIED FROM 111245002 THRU Q348 ON 09/06/2011 BY SCB
COMM 090211   SCB INDICTMENT FILED
COMM 090211   SCB FILED ASA - GREENE, SHARI              , ESQ 326153
COMM 090711   S8T LETTER TO JUDGE FLETCHER-HILL FROM ELIZABETH WINCHESTER WITH
COMM 090711   S8T ASAP  RE: DEFT IS CURRENTLY SERVING A PRETRIAL PERIOD OF
COMM 090711   S8T HOME DETENTION W/ASAP, INC.  FILED  CC:JUDGE FLETCHER-HILL
COMM 090711   CEM CSET ARRG; P12; 10/05/11; CEM

NEXT PAGE                          P/N                    PAGE 001
```

I, Frank M. Conaway, Clerk of the Circuit Court
for Baltimore City, hereby certify that this is
a true copy from the record in this court.
Witness the hand and act of the undersigned
this 21 day of _June_ 20 12

_[signature]_

Circuit Court for Baltimore City, Maryland

# EXHIBIT G



**US·MLE**

United States
Medical
Licensing
Examination ®

**Via Email and Fed Ex**
**Personal and Confidential**

*Secretariat:*
3750 Market Street
Philadelphia, PA 19104
(215) 590-9500
Fax: (215) 590-9470
www.usmle.org

July 10, 2012

Maria Mahmood                                      USMLE ID#: 5-166-839-0
14717 Exbury Ln
Laurel, MD  20707

Dear Ms. Mahmood:

This is in follow up to my February 23, 2012 letter to you in which you were
informed that the USMLE Committee for Individualized Review (CIR)
determined that you engaged in irregular behavior by lighting a fire in the
bathroom at a Prometric Testing Center. It also determined that, because the
behavior was egregious and/or deemed to threaten the integrity of the examination
system, a recommendation would be made to the USMLE Composite Committee
that you be barred from registering for or taking USMLE examinations for which
you are otherwise eligible for three years. Periods of time during which you are
ineligible for USMLE will not count toward the bar.

The Composite Committee considered the recommendations of the CIR.
Following its careful review of the information, the Composite Committee
approved the recommendations of the CIR, as set forth in my letter of February
23, 2012 and as outlined above.

Please do not hesitate to contact me at USMLESec@nbme.org if you have any
questions regarding the information above.

Sincerely,

Amy Buono
Office of the USMLE Secretariat

*A Joint Program of the Federation of State Medical Boards of the U.S., Inc. and the National Board of Medical Examiners®*



Federation of State Medical Boards of the U.S., Inc.
400 Fuller Wiser Road, Suite 300
Euless, TX 76039
(817) 868-4000
Fax: (817) 868-4097
www.fsmb.org



National Board of Medical Examiners
3750 Market Street
Philadelphia, PA 19104
(215) 590-9500
Fax: (215) 590-9555
www.nbme.org

## CERTIFICATE OF SERVICE

I certify that I will serve in accordance with P.A.R.C.P. 440 all parties not served

electronically. I further certify that a true and correct copy of the attached document (s)

was served upon all other parties or their counsel of record by:

_____     Regular First Class Mail

_____     Facsimile

_____     Certified Mail

_____     Hand-Delivered

_____X_____     Electronic Filing

Date: __7/19/12__

William C. Reil, Esquire
Attorney for Plaintiff
42 S. 15th Street, Suite 210
Philadelphia, PA 19102