| MARIA MAHMOOD | : | UNITED STATES DISTRICT |
|---|---|---|
| 14717 Exbury Lane | : | COURT FOR THE EASTERN |
| Laurel, MD 20707 | : | DISTRICT OF PENNSYLVANIA |
| | : | |
| vs. | : | |
| | : | |
| NATIONAL BOARD OF | : | 2:12-cv-01544-TR |
| MEDICAL EXAMINERS | : | |
| 3750 Market Street | : | |
| Philadelphia, PA 19104 | : | JURY TRIAL DEMANDED |

## <u>ORDER</u>

AND NOW, this _____ day of _____, 2013, upon consideration of

the Motion of Defendant National Board of Medical Examiners for Summary Judgment,

and plaintiff's response thereto, it is hereby ORDERED that the Motion is DENIED.

BY THE COURT:

_____
Magistrate Judge Timothy R. Rice
United States District Court Judge

LAW OFFICES OF WILLIAM C. REIL
BY: William C. Reil, Esquire
Identification No. 26833
42 S. 15th Street, Suite 210
Philadelphia, PA 19102
215-564-1635

| | | |
|---|---|---|
| | | ATTORNEY FOR PLAINTIFF |
| MARIA MAHMOOD | : | UNITED STATES DISTRICT |
| 14717 Exbury Lane | : | COURT FOR THE EASTERN |
| Laurel, MD 20707 | : | DISTRICT OF PENNSYLVANIA |
| | : | |
| vs. | : | |
| | : | |
| NATIONAL BOARD OF | : | 2:12-cv-01544-TR |
| MEDICAL EXAMINERS | : | |
| 3750 Market Street | : | |
| Philadelphia, PA 19104 | : | JURY TRIAL DEMANDED |

**PLAINTIFF'S ANSWER TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

   Plaintiff, Maria Mahmood, through her undersigned counsel, hereby answers

defendant's motion for summary judgment, and in support thereof, it is averred as

follows:

**I.     OVERVIEW OF THE CASE**

   The amended complaint can best be summarized through the summary and

general allegations, which are set out as follows:

   5. This case arises out of a pattern of discrimination against plaintiff by
   defendant's repeated violation of the ADA. See medical documentation
   and correspondence between the parties attached as Exhibit "A".

   6. The Court has previously issued an Opinion in this case, and dismissed
   all counts of the original complaint with the exception of Count IV, which
   is a cause of action under the ADA. See Opinion of the Court attached as
   Exhibit "B".

   7. This amended complaint is filed in response to the Court's Order of
   06/21/12.

   8. This case arises out of the illegal suspension of plaintiff for a term of 3
   years by defendant, which is de facto a lifetime ban, since plaintiff will be

unable to finish her medical degree in the required 7 years. See plaintiff's transcript from UIC, attached as Exhibit "C".

9. The only requirement which plaintiff must fulfill for her degree is the testing with the NBME. She has completed all other requirements at UIC for her medical degree.

10. The suspension in question occurred after an incident on or about 08/08/11 at the Prometric Testing Center in Baltimore.

11. Prometric is an agent of the NBME, and it administers examinations for medical students.

12. Plaintiff was suspended by defendant for "irregular behavior".

13. If plaintiff is barred from taking the USMLE CK Part II (US Medical Licensing Examination, Clinical Knowledge Part II) for three years, then she will be unable to graduate from her medical school at UIC.

14. The letter from the NBME, attached and incorporated as Exhibit "D", indicates that in addition to the 3-year suspension, the phrase "irregular behavior" will occur on plaintiff's future transcripts.

15. This designation will make it difficult, if not impossible, to obtain a medical residency.

16. Plaintiff is bringing this lawsuit for damages under the ADA and equitable relief.

17. She also requests relief which allows her to take the requisite medical tests which she needs to complete her requirements as a physician.

18. Plaintiff was not allowed to take the USMLE Clinical Knowledge Part II Examination, but her attempt was counted against her by the NBME.

19. At all times material herein, Maria Mahmood was a medical student at UIC, who has completed all academic requirements for her medical studies.

20. Plaintiff will not be awarded her M.D. unless she passes the USMLE Part II Examination.

21. When plaintiff took her last USMLE Clinical Knowledge Part II on 08/08/11, there was an incident which occurred in the ladies' room of the building where the testing center was located.

22. No harm resulted from this incident.

23. The ladies' room was a public bathroom some distance from the testing room, which was used by anyone who was in the building where the medical test was being given.

24. Plaintiff lit a small amount of toilet paper in the ladies' room which was quickly extinguished. No fire alarm was activated at any time. See plaintiff's affidavit at Exhibit "E".

25. The medical examination was in no way affected or disrupted by plaintiff's actions. Plaintiff was not allowed to take her USMLE Clinical Knowledge Part II on that day by the Prometric Testing Center at Baltimore.

26. There is no evidence that anyone who was taking any examination saw plaintiff involved in any irregular conduct or that anyone in the exam room was even aware of what plaintiff did.

27. As a result of this incident, plaintiff was arrested. The arrest of plaintiff will soon be expunged. See expungement documents attached as Exhibit "F".

28. The NBME suspended plaintiff on the basis of "irregular behavior", even though no irregular behavior occurred or was perceived in the examining room.

29. As a result of this 3-year suspension, plaintiff is unable to complete her medical education in the required 7 years, which is mandated by the University of Illinois, College of Medicine at Chicago.

30. Plaintiff is prohibited by the action of defendant from taking her United States Medical Licensing Examination, Clinical Knowledge Part II, and United States Medical Licensing Examination, Clinical Skill Part II.

31. Plaintiff is legally blind and she needed special vision equipment to take her NBME licensing examination.

32. The facility where plaintiff took her licensing examination did not have the proper disability accommodations under the ADA for plaintiff to take her examination, although Prometric was provided with prior knowledge of, and/or authorization for, accommodations to be available.

33. On several prior occasions, the NBME testing facilities lacked proper and reasonable accommodation for plaintiff's disability. See Exhibit "A".

**Deposition of Maria Mahmood**

The following excerpts from the deposition of Maria Mahmood, pages 127

through 131, on 11/19/12, attached and incorporated as Exhibit "A", indicate that there

are issues of material fact which mitigate against summary judgment.

17   BY MR. REIL:

18   Q.    Ms. Mahmood, isn't is true that you weren't

19   convicted of arson, but rather you pled to criminal

20   mischief?

21   A.    Yes.

22   Q.    Okay.  And your conviction for criminal

23   mischief misdemeanor was expunged, correct?

24   A.    Yes.

00128

1              MR. SACKS:  Object to the form of the

2   question.

3   BY MR. REIL:

4   Q.    And when you wrote to the USMLE, were you under

5   psychiatric care at that time?

6   A.    Yes.

7   Q.    I want to take a look at Mahmood 9, if I can.

8   A.    This one?

9   Q.    Yes.  Mahmood 9.  Let me put that over there

10   lest I knock it over.

11          Mahmood 9 is a memorandum from

12   Prometric dated August 16, 2011.  Okay?  Going down a

13   couple paragraphs on the first page, I want to read a

14   sentence under conclusion like the third sentence.  It

15   says, "All other candidates continued to test

16   normally.  No other candidates' exams were affected by

17   the incident."  Did I read that correctly?

18   A.    Yes, I believe so.

19   Q.    On Page 2 of that report, down at the last

20   paragraph the last bullet.  Okay?  The Prometric

21   report says -- I'll read the sentence here: "In the

22   test center Ms. Mahmood was experiencing technical

23   problems with her Special Accommodation Monitor, so

24   she had" executed "the S --

00129

1          MR. SACKS:  Exited.

2          MR. REIL:  So she had exited.  Thank

3   you, Counsel.

4   BY MR. REIL:

5   Q.    -- the S/A room."  Do you see where it says

6   that?

7   A.    Yes.

8   Q.    And going over to Page 3 of the Prometric

9   report, I want to direct your attention to where it

10   says "Details on the Technical Issue" in bold.  It

11   states, "Ms. Mahmood had arranged for an extra large

12   screen monitor and Zoom Text, but she was not actually

13   scheduled to take the test in the S/A room.  She was

14   to use this equipment at a normal workstation.

15   Another candidate had arrived who was scheduled for

16   the S/A room.  The TCAs were attempting to move

17   Ms. Mahmood's monitor to the main testing area, when

18   the monitor stand broke.  They were able to place the

19   monitor on the stand so that it was still viewable.

20   However, Ms. Mahmood said she would be moving the

21   monitor a lot and wanted a new monitor.  The TCAs

22   asked her to wait in the reception area while they

23   tried to resolve the issue."  Did I read that

24   correctly?

00130

1   A.     Yes.

2   Q.     Now, do you agree with the statement there that

3   the monitor was able to be placed on a stand so it was

4   still viewable for you?

5   A.     No.

6   Q.     Okay.  Why not?

7   A.    Because, as I said, this is like the main --

8   you know, the main thing why I couldn't continue the

9   exam.  The LCD screen was separate from the stand.  I

10   mean, there were wires and the guy -- the proctor --

11   the proctor did mention this specifically to not touch

12   the thing because it would fall over.  And, you know,

13   it was also next to a window that's -- you know, I

14   don't -- wouldn't expect them to know anything about,

15   you know, albinos, or the associated photophobia, but

16   my main contention was that the monitor was definitely

17   broken and I couldn't work it.

18   Q.    Can you summarize for the record why you

19   believe you were not reasonably accommodated by the

20   NBME on the day in question?

21   A.    Well, considering that, you know, they do keep

22   records of who's testing at what center, at least four

23   weeks in advance from my recollection of having to

24   register a month in advance for any exam, you know, to

00131

1   reschedule it anywhere else from one testing center to

2   another, that means that they had a month to prepare

3   and to have a back-up plan in case two students with

4   testing accommodations happen to be accommodated --

5    happen to be testing at the same center.

6            And so they should have had, you know,

7    at least, you know, a back-up plan for that

8    eventuality.  That they should be able to accommodate

9    more than one student at a center.  And, you know,

10   they were not able to do that.  They had prior -- they

11   had the schedule.  They had -- you know, they were

12   aware of the situation, but they failed to actually

13   adequately provide reasonable accommodations to both

14   students.

15   Q.    Was the failure to reasonably accommodate you

16   on the day in question, did that occur before the

17   tissue was lit in the bathroom?

18            MR. SACKS:  Object to the form.

19   BY MR. REIL:

20   Q.    You can answer.

21   A.    Yes, it was.

22            MR. REIL:  That's all I have.

Also, defendant has not addressed the assertion that anyone taking the test was

aware of plaintiff's actions.  There is no denial by defendants that the facility where

plaintiff took the USMLE test did not have the proper disability accommodation under

the ADA for plaintiff to take the test.  There was no backup system in place. As a result

of this and other factors, plaintiff was the victim of discrimination.

Defendant argues a good faith effort, but this is belied by the history of failed accommodations by the defendant and its agents.  It is argued that the fact that plaintiff had to be interrupted during her test and relocated was part of the pattern of ADA violations.

Plaintiff was a medical student at the University of Illinois at Chicago (UIC). She is 32 years old and has successfully passed and completed all coursework for graduation. The only qualification that plaintiff needs to receive for her medical degree is to pass certain tests, USMLE Part II, which are administered under the supervision of defendant National Board of Medical Examiners (NBME). Plaintiff was provisionally dismissed from UIC because of the report sent to her university by the NBME. Plaintiff went to take an examination under the auspices of the NBME on 08/08/11.

Plaintiff is legally blind and she had asked for an accommodation of her disability, which was approved. The accommodation consisted of a large print text monitor with zoom text. However, during her tutorial she was informed that another candidate had also requested special accommodation and this very station had to be given to that other candidate and she had to move out to another location. There was no ADA accommodation available at the other station. The monitor was broken and was not in working order. Due to impaired vision, plaintiff can only view the large text on the monitor from a distance of one inch or so and she had to keep adjusting it to her level of comfort. A broken monitor cannot be adjusted to plaintiff's level of comfort and workability. The magnifying device which she needed was not in working order. After this, plaintiff went to the public bathroom of the building. To vent her frustration, she lit a small piece of toilet paper. It was so insignificant that there was no smoke or no fire

alarm. No damage of any type was done, nor were the people who were taking the examination a considerable distance away even aware of what transpired.

At the behest of the NBME, plaintiff was arrested by police and sentenced to probation and community service. She had a hearing on 08/21/12 to receive expungement of her record, and this has now been ordered by the Court in Maryland. A true and correct copy of the order has been attached as Exhibit "B". Plaintiff does not seek to make excuses for her conduct, but points out that no damage was done, there was no fire alarm, no one was injured, and her actions were unknown to the people taking the examination. As a result of this, the NBME suspended plaintiff for 3 years, and she was given a permanent admonition concerning this incident on her record.

Accordingly, with the 3-year suspension, plaintiff would be unable to graduate within the 7-year time frame required by the UIC. Because of the communication from the NBME, plaintiff was dismissed without any degree. The practical effect of this is that plaintiff will be deprived of receiving a medical license, even though she successfully passed and completed all required courses at UIC. De facto, defendant gave plaintiff a lifetime ban, which is highly disproportional to the offense.

The defendants nowhere acknowledge the harshness of the penalty as a lifetime ban and a loss of all medical school achievement and approximately $400,000 in loans for tuition.  After this action by defendants, it is difficult to believe that another medical school would accept plaintiff or that she would be able to secure another loan for her schooling.  It is exceedingly difficult for plaintiff to gain any employment with her disability. The NBME did not factor into the equation the frustration of a blind person who is totally dependent on them for every aspect of the testing.

**Procedural Posture of the Case**

Plaintiff filed a complaint against the NBME in which she sought injunctive relief requesting that what amounted to a lifetime ban on test taking be enjoined. The NBME filed a motion to dismiss the complaint. The plaintiff answered the motion to dismiss, and the Court ruled that the only issue remaining was the violation of the Americans with Disabilities Act (ADA). Plaintiff filed an amended complaint to which defendant responded with another motion to dismiss. Plaintiff hereby responds to that motion.

## II.     ARGUMENT AND CONCLUSIONS OF LAW

### Standard for Summary Judgment

In order to prevail on a motion for summary judgment, defendants must show, taking facts and inferences in the light most favorable to plaintiff, that no reasonable fact finder could find for the plaintiff on an issue which is a case determinative. *Thomas v. Transamerica Accidental Life Insurance Company*, 761 F. Supp. (D.Or. 1991).  Summary Judgment is inappropriate when credibility is at issue or different ultimate inferences can be reached.  FRCP 56 (c).  In addition to the evidence cited in Rule 56 (c), a court may take into account any material that would be admissible or usable at trial.  Wright and Miller, Federal Practice and Procedure Section 2721 at 40 (2d. Ed. 1983). In evaluating a summary judgment motion, the record will be viewed in the light most favorable to the plaintiff.  Summary judgment is appropriate only if there is no genuine issue of material fact such that a reasonable fact finder could find for the non-moving party. (Owens decision at 373).  Much of defendants' arguments actually amount to the proffer of counter-evidence on a disputed factual issue.  That defendants believe that they have evidence to convince a jury to see an issue their way, is to be distinguished from the tenet that no reasonable jury can fail to see an issue as defendants do.

It would be unfair to decide this case on summary judgment, since defendant has access to all of the information concerning the NBME. Furthermore, there are factual issues under the ADA concerning the accommodation of plaintiff.

### Statement of Undisputed Facts

- Plaintiff was legally blind.

- Plaintiff had a bona fide disability under the ADA.

- Plaintiff was supposed to receive reasonable accommodation during the examination administered by the NBME.

- Plaintiff had already started her examination when she was interrupted by testing personnel.

- There was a malfunction in the equipment which had been assigned to plaintiff to complete her examination.

**Statement of Disputed Facts**

- There was a history of failure to accommodate plaintiff in past examinations given to her under the auspices of the NBME.

- Plaintiff's seat at the examination in question was given to another candidate.

- The monitor given to plaintiff was unusable.

- The NBME, acting through its agents, did not have an alternative plan when the monitor given to plaintiff did not operate correctly.

- Plaintiff was unable to complete the examination because of the faulty monitor.

**Cause of Action Stated Under the ADA**

Plaintiff was supposed to receive equipment with which she could comfortably view the test questions. Instead, another test-taker received the accommodation designed for plaintiff, and test officials were left trying to modify, unsuccessfully, equipment for plaintiff. Thus plaintiff was frustrated because she could not read the test. While plaintiff's response to this situation may have been incorrect, no harm resulted. See plaintiff's affidavit at Exhibit "C".

The NBME admitted its failure in providing ADA accommodations on all three occasions starting in 2007, when the NBME wrote that they provided ADA

accommodations, which is not true. Zoom text was not provided on that occasion and the NBME needs to explore the Prometric record. Plaintiff, being a new student, was afraid of making any complaints. Authorization of accommodations does not mean Prometric actually honored those requirements as per the ADA.

There is an apparent contradiction in the timeframes and the sequence of events between Prometric and NBME. There is a disparity in the sequence of events. Prometric, in its report, put the time of the incident at 9:15 AM. This was after the test was started, but defendants, in their brief, argue that the alleged fire was started before the test. Furthermore, no employee from Prometric actually saw the fire being started. Even Prometric acknowledges in its report that all other candidates continued to test normally and no other candidates' exams were affected by the incident. A true and correct copy of the Prometric report is attached and incorporated as Exhibit "D".

Defendants seem unwilling to address application of the ADA to a legally blind person. The fact that plaintiff was interrupted during her test would be extremely disconcerting to anyone, let alone a blind person.  There is no indication in the record that defendant apologized to plaintiff or offered an adequate explanation as to why this problem could not have been avoided with a backup system. The NBME has not offered any explanation as to why another person who required accommodation had to take plaintiff's seat during the test.

To prove a violation of the ADA, a plaintiff must show that she is disabled, that her requests for accommodation were reasonable, and that the requests were denied. *Ware v. Wyoming Board of Law Examiners*, 973 F.Supp 1339, 1356 (1977). Plaintiff's affidavit sets forth that the ADA was violated.

Looking at the requirements, it is conceded that Ms. Mahmood is both disabled and that her request for a suitable device to read the test was reasonable. Defendants deny that her requests were not reasonably accommodated. Rather, they argue that moving plaintiff during the test, while giving her seat to another candidate, complies with the ADA. This is so, even where plaintiff was given no explanation for defendant's actions.

Plaintiff, in the year 2007, in her USMLE Part I Examination, was also not provided with approved accommodations by Prometric / NBME. She was not provided with zoom text and a large monitor at that time. The statement by NBME is not factual. It is required for the candidate to get her accommodations approved, but it is never the duty of the candidate to inform or alert NBME repeatedly regarding test dates or locations of the testing center. Time and again NBME delayed her tests.

It is argued that an inadequate effort and failure to prepare in advance do not suffice to satisfy the ADA. There is certainly a factual issue here, particularly where there is a long and disputed history of lack of accommodation between the parties.

Defendant, in its memorandum of law, tries to categorize what happened to plaintiff as a mere delay, and not a denial of accommodations which subjects defendant to liability under the ADA. It is argued that the issues under the ADA amount to a factual disagreement between the parties, which cannot be resolved on summary judgment.

Similarly, there are factual issues as to whether the defendant acted in good faith with respect to Ms. Mahmood. The facts in this case seem to be sui generis, yet defendant tries to analogize them to some cases which are distinguishable. Defendant cites the case of *Anderson v. Ross* in which a blind clothing store customer sought to have her husband

come with her into the women's only dressing room. Store personnel refused based on store policy. After approximately one hour of negotiating with increasingly higher level personnel, the store accommodated plaintiff by allowing her to use the men's dressing room with her husband present. This case is not at all determinative of the key facts in the instant case. Among other factors which distinguish it, there was no negotiation involving plaintiff and the person who was given her seat at the test. A delay in taking an examination cannot be analogized to a delay in getting access to a changing room.

Similarly, defendant's citation to the case of *Delgado v. Triboro Bridge and Tunnel Authority* is not on point either. In this case, plaintiff suffered headaches that impaired her vision. She asked to keep her 19" computer monitor when the office changed to new 17" monitors. Her employer granted her request but was delayed in providing a new large monitor. The Court held that plaintiff failed to plead a denial of accommodations under the ADA. This case is even more dissimilar to the case at bar. In both cases cited by defendant, time is not of the essence as it is in the instant case. Obviously, a 10 or 15 minute break in the test, together with the time to regain one's composure, is a different situation than the cases cited above.

In the instant case, there is a factual issue as to whether the actions of the NBME, through its agents, were in good faith with regards to the plaintiff.

It is argued that the Court adopt the approach of the Ninth Circuit in the case of *Enyart v. National Conference of Bar Examiners*, No. 10-15286,10-16392 (9th Cir. 01/04/2011). This case involved "a legally blind law school graduate, [who] sought to take the Multistate Professional Responsibility Exam and the Multistate Bar Exam using a computer equipped with assistive technology software known as JAWS and ZoomText.

The State Bar of California had no problem with Enyart's request but the National Conference of Bar Examiners refused to grant this particular accommodation. Enyart sued NCBE under the Americans with Disabilities Act seeking injunctive relief. The district court issued preliminary injunctions requiring NCBE to allow Enyart to take the exams using the assistive software, and NCBE appealed. We hold that in granting the injunctions, the district court did not abuse its discretion. We affirm."

The *Enyart* Court adopted the "best ensures" test which is urged to be applied to the instant case. The Court wrote: "Pursuant to its authority to issue regulations carrying out the provisions of Title III, the Department of Justice has adopted a regulation interpreting § 12189. This regulation defines the obligations of testing entities: Any private entity offering an examination covered by this section must assure that ... [t]he examination is selected and administered so as to best ensure that, when the examination is administered to an individual with a disability that impairs sensory, manual, or speaking skills, the examination results accurately reflect the individual's aptitude or achievement level or whatever other factor the examination purports to measure, rather than reflecting the individual's impaired sensory, manual, or speaking skills ... [.]"

Under this test, it is argued that reassigning plaintiff to a different seat during her examination, giving her seat to another candidate, and failure to have adequate facilities for her to take the test, amount to a violation of the ADA.

The *Enyart* Court discussed the purpose of the ADA when it said: ""Congress enacted the ADA in order to eliminate discrimination against individuals with disabilities. See 42 U.S.C. § 12101(b). The ADA furthers Congress's goal regarding individuals with disabilities: "to assure equality of opportunity, full participation, independent living, and

economic self-sufficiency for such individuals[.]" 42 U.S.C. § 12101(a)(8). The ADA

contains four substantive titles: Title I relates to employment; Title II relates to state and

local governments; Title III relates to public accommodations and services operated by

private entities; and Title IV relates to telecommunications and common carriers. See

generally Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101-12213 and 47

U.S.C. §§ 225, 611."

**Defendant's Brief**

Defendant argues that it provided the accommodations to which plaintiff was

entitled under the ADA. This is not so. There was additional discrimination against

plaintiff as a result of her expulsion for a relatively minor infraction. Prometric, the agent

of NBME, failed to have sufficient backup to accommodate plaintiff.

Defendant also argues that plaintiff supposedly changed her story. Plaintiff's

testimony and affidavit are consistent. Defendant fails to specify how plaintiff allegedly

changed her story.

Plaintiff was provided with accommodation which, per defendant's contention,

was not intended for her, and she was removed from her seat without explanation. This

suggests that there was no ADA accommodation available for plaintiff. After a

substantial delay, a broken monitor was provided to her and it was not functional. There

was a pattern of NBME / Prometric being irresponsible in provisioning to plaintiff under

the ADA. This has been documented in the Exhibits. Accommodations were approved

several weeks prior to the examination which were not arranged in a reasonable time

frame. Alleging that accommodations were being arranged at the twelfth hour is in

contravention to ADA provisions and the needs of people with disabilities. Prometric has

been instrumental in inflicting injury to plaintiff and later inflating circumstances out of proportion with police.

If plaintiff was provided with an acceptable accommodation then there is no reason for it to be taken away without explanation. Such action is highly discriminatory.

The examination proctor stated that it was the best he could do. This does not meet the standard of reasonable accommodation under the ADA, when accommodations are attempted at the last minute. In order to divert this accommodation issue, a minor incident was exaggerated. The pattern of failure to provide accommodations is shown by the Exhibits.

### III.    SUMMARY AND CONCLUSION

Looking at the disputed issues of material fact, the motion for summary judgment

of defendants should be denied for the following reasons.

1.  Plaintiff did not receive reasonable accommodation for her disability at the test
    center which was administered under the auspices of the NBME. She did not even
    receive an adequate explanation as to why she was asked to vacate her seat during
    the examination.

2.  There is a lengthy and detailed history of failure to reasonably accommodate
    plaintiff by the defendant. This includes the present situation where agents for the
    NBME interrupted plaintiff during the examination and presented her with
    unusable equipment with which to take the examination.

3.  Plaintiff's seat at the examination was given to another candidate. The NBME did
    not have an alternative plan in the event that the monitor to which plaintiff was
    assigned failed to operate.

WHEREFORE, plaintiff submits that defendant's motion be denied.

Respectfully submitted,

William C. Reil, Esquire
Attorney for Plaintiff
02/11/13

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the attached document (s) was

served upon all other parties or their counsel of record by:

X
_____        Regular First Class Mail


_____        Facsimile


_____        Certified Mail


_____        Hand-Delivered

X
_____        Electronic Filing


*William C. Reil*

William C. Reil, Esquire
Attorney for Plaintiff
42 S. 15th Street, Suite 210
Philadelphia, PA 19102
02/11/13